IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, | :<br>:   CIVIL ACTION NO. _____<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| LOCAL 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | :<br>:<br>:<br>: |
| Defendant. | :<br>: |

## **COMPLAINT**

Under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481–483, union members: (1) must be given a reasonable opportunity to nominate candidates for union officer elections; (2) must be allowed to run for office if they are members in good standing and meet the union's reasonable qualifications; and (3) have the right to vote for and support the candidates of their choice, all "without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." 29 U.S.C. § 481(e).

Defendant Local 98, International Brotherhood of Electrical Workers (Defendant), by the actions of its officers and members, intimidated and threatened the livelihoods of three of its members who intended to seek or nominate others for office in its June 2020 election, causing them to withdraw from doing so. As detailed below, this included dozens of calls to the potential candidates from union members at the apparent direction of Defendant's leadership and, in one instance, a phone call directly from Business Manager John Dougherty in which he stated that,

1

"It'll be a long three years if you lose." Defendant's conduct delivered the message that running as or nominating an opposition candidate to entrenched leadership would lead to the loss of jobs.

Defendant's conduct violated its members' rights to nominate, be nominated, and vote for or otherwise support the candidates of their choice without pressure or interference from Defendant. As a result of Defendant's violations, all races were uncontested, and no election was held – instead, all incumbent officers were declared reelected without opposition.

For these reasons, Plaintiff Eugene Scalia, Secretary of Labor, brings this action under section 402(c) of Title IV of the LMRDA, 29 U.S.C. § 482(c), for a judgment voiding the June 9, 2020, election of president and five executive board members, and directing Defendant to conduct a new election, including nominations, under Plaintiff's supervision.

## PARTIES

1. Plaintiff Eugene Scalia is the duly appointed Secretary of Labor, United States Department of Labor. Plaintiff is authorized to bring this action under section 402(b) of Title IV of the LMRDA, 29 U.S.C. § 482(b).

2. Defendant is a local labor organization engaged in an industry affecting commerce within the meaning of sections 3(i) and (j) and 401(b) of the LMRDA, 29 U.S.C. §§ 402(i), (j), 481(b). Defendant maintains its principal office at 1701 Spring Garden Street, Philadelphia, PA 19130.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

4. Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

## EXHAUSTION OF OTHER REMEDIES

5. Defendant, purporting to act pursuant to its bylaws and the International Brotherhood of Electrical Workers' (IBEW International's) Constitution and Basic Laws and Policies, conducted an election of officers in June 2020, and this election was subject to the provisions of Title IV of the LMRDA, 29 U.S.C. §§ 481–483.

6. By letter dated June 16, 2020, to the Third District International Vice President, Charles Battle, a Local 98 member in good standing, filed an internal protest.

7. Battle's protest was assigned to IBEW International Representative Randy Kieffer for investigation.

8. International Representative Kieffer issued his findings to IBEW International Vice President (IVP) Michael Welsh in a report dated July 28, 2020.

9. By letter dated July 31, 2020, IVP Welsh denied Battle's complaint.

10. Having exhausted the remedies available and having received a final decision, Battle timely filed a complaint with the Secretary of Labor on August 18, 2020, within the one calendar month required by section 402(a)(1) of the LMRDA, 29 U.S.C. § 482(a)(1).

11. By three separate letter agreements, Defendant agreed to extensions of time for Plaintiff to bring suit, with the last agreement extending that time until and including January 8, 2021.

12. Pursuant to section 601 of the LMRDA, 29 U.S.C. § 521, and in accordance with section 402(b) of the LMRDA, 29 U.S.C. § 482(b), Plaintiff investigated the complaint and found probable cause that violations of Title IV of the LMRDA, 29 U.S.C. §§ 481–483, occurred that have not been remedied and that may have affected the outcome of Defendant's June 9, 2020, election. That investigation serves as the basis for the averments in this Complaint.

## DEFENDANT INTIMIDATED AND PRESSURED THREE RANK-AND-FILE MEMBERS OUT OF RUNNING FOR OFFICE IN ITS JUNE 2020 ELECTION

13. Defendant has approximately 4,000 active members.

14. Defendant's members are employed as electricians in Pennsylvania in Bucks, Chester, Delaware, Montgomery, Philadelphia, and Lehigh Counties.

15. Defendant has a job referral system that is governed by its collective bargaining agreement as supplemented by its Available for Work List Rules. Members are also typically allowed to solicit their own jobs.

16. On May 18, 2020, Defendant mailed a combined nomination and election notice to members' home addresses.

17. The notice stated, in relevant part, that "nominations shall take place on June 9, 2020, beginning at 7:00 p.m. at the Union's offices at 1719 Spring Garden Street. Acknowledgments of willingness to be nominated for office must be received by the Union no later than 5:00 p.m. on June 9, 2020."

18. The IBEW International Constitution permits local officer nominations to be made in writing.

19. Defendant's bylaws do not state that officer nominations must be made in person.

20. For its 2020 officer election, Defendant required nominations to be made by a member who was present at the nomination meeting on June 9, 2020.

21. At the nomination meeting on June 9, 2020, only the incumbent officers were nominated for office. Because all races were uncontested, no election was held. All incumbent officers were declared reelected without opposition.

### Intended Candidate Charles Battle

22. Member Charles Battle intended to run for president in Defendant's June 2020 election, and to have member Michael Coppinger nominate him for office.

23. At Defendant's membership meetings in November 2019, January 2020, and February 2020, Battle questioned Defendant's Business Manager John Dougherty and other union leadership about how the union was being run.

24. Defendant's Business Manager is an elected officer position charged with, among other duties, representing Defendant in dealing with employers, enforcing its collective bargaining agreement, administering Defendant's work referral procedures, and serving as trustee of all of Defendant's trust funds provided for in the local collective bargaining agreement. The Business Manager appoints business agents to assist in his duties. John Dougherty has served as Business Manager since 1993. Like all incumbent officers, Dougherty was up for reelection in June 2020.

25. After each of the membership meetings at which Battle asked questions, Battle received telephone calls from Defendant's business agent Robert Bark asking why Battle was so angry with Defendant's leaders.

26. At Defendant's January 2020 membership meeting, Battle questioned Dougherty about money allegedly stolen from the union.

27. After the January 2020 meeting, Bark arrived, unexpected, at Battle's house, to speak to him about why he was questioning Defendant's leaders.

28. After Bark's visit following the January 2020 membership meeting, Battle told Bark not to come to his house anymore.

29. At 8:30 p.m. on Sunday, June 7, 2020, two days prior to Defendant's nomination meeting, Bark again visited Battle's house uninvited despite Battle's admonition not to do so.

30. Bark did so because he had heard rumors that Battle was running for office and wanted to find out what Battle was so angry about.

31. On June 9, 2020, Battle went to the union hall at approximately 4:50 p.m.

32. Battle completed a nomination form stating his intention to run for the office of president, reproduced (in redacted form) below.

[Nomination slip form: NOMINATION SLIP for CANDIDATES FOR OFFICE. The undersigned member of IBEW Local 98 nominates: Charles Battle, for the office of President, in the 2020 election of Officers of Local 98. Name of Nominator: [blank]. Nominator's Signature: [blank]. Nominator's Card Number: [blank]. WILLINGNESS TO ACCEPT NOMINATION. The undersigned member of IBEW Local 98 is willing to be nominated as a candidate for the office of President in the 2020 election of Officers of Local 98. Name of Candidate: Charles Battle. Candidate's Signature: [signed]. Candidate's Card Number: [redacted].]

33. Battle submitted his nomination form to Tara Chupka, Defendant's in-house counsel and a Local 98 member, who had a clerical role in the election.

34. Chupka put Battle's nomination form in a file folder with other nomination forms, and gave the folder to Defendant's sergeant-at-arms and business agent Rodney Walker.

35. Minutes after submitting his nomination form, Battle received a call from a Local 98 member in Flourtown, Pennsylvania, asking Battle if he was running for president.

36. While Battle waited outside the union hall for the nomination meeting to begin, he heard Defendant's business agents talking to the crowd that had gathered. The business agents were trying to identify Battle's nominators and anyone else who might be intending to run for office.

37. Upon information and belief, at least 150 people, primarily supporters of Dougherty and his longstanding slate of incumbents, gathered on the grounds of the union hall on the evening of June 9, 2020.

38. Members in the crowd outside the union hall refused to speak to Battle or his supporters. To get to the union hall for the meeting, nominees and nominators had to walk through the crowd of Dougherty's supporters gathered in the parking lot and down the steps to the basement, which Battle and other witnesses described as like "walking the gauntlet." Battle and his supporters found the atmosphere imposing and felt intimidated.

39. Battle was willing to, and did, signify to Defendant in writing his willingness to be nominated for the office of president.

40. Battle believed that his supporters would be forced out of work if they went through with nominating him.

41. As a result of Defendant's conduct, Battle and his supporters did not attend the nomination meeting.

42. Defendant did not treat Battle's written nomination as a nomination for the race of president.

### Intended Candidate Timothy McConnell

43. Member Timothy McConnell intended to run for executive board in Defendant's June 2020 election.

44. In the early evening of June 8, 2020, McConnell sent a text to Defendant's Safety Director Mark Lynch to inform him that he was thinking about running for an executive board position.

45. Within a few minutes of receiving McConnell's text, Lynch called McConnell. Lynch then gave the phone to Business Manager Dougherty.

46. During their telephone call, Dougherty told McConnell, "It'll be a long three years if you lose."

47. McConnell perceived Dougherty's statement as a threat of losing jobs.

48. Near the end of the telephone call, Dougherty shouted at McConnell, "If you ain't with me, you're against me!"

49. Following his phone conversation with Dougherty on June 8, 2020, McConnell received dozens of telephone calls apparently prompted by the news that he planned to run for office. Defendant's business agent Rodney Walker was among those who called McConnell that evening.

50. On or around June 8, 2020, Philadelphia ward leader Brian Eddis called McConnell's friend and former employer, James Ryan of Par 4 Electric, to relay a message to McConnell. Eddis told Ryan that he "did not want to see anything happen to [McConnell]."

51. On or around June 9, 2020, Ryan relayed Eddis's message to McConnell. Ryan advised McConnell that it was not "worth the aggravation to run" for office.

52. McConnell understood the message relayed by Ryan to be a threat of losing jobs.

53. McConnell believed that Eddis had made the call to Ryan at Dougherty's direction because of its content and because the call was made on the same night Dougherty spoke with McConnell.

54. On or around June 9, 2020, McConnell decided not to run for office because of the threats to his job and because he did not want to jeopardize the job prospects of family members who work in the trade.

Intended Candidate Michael Coppinger

55. Member Michael Coppinger intended to run for executive board in Defendant's June 2020 election.

56. On or around June 8, 2020, Michael Coppinger received dozens of telephone calls regarding his intention to run for executive board.

57. On or around June 9, 2020, Michael Coppinger received a telephone call from his uncle, Ed Coppinger, a former business agent of Defendant. Ed Coppinger called his nephew to deliver a message from Dougherty that his career would be finished if he ran for office.

58. On or around June 9, 2020, Michael Coppinger decided not to run for office. He also decided not to nominate Battle for office.

### DEFENDANT'S HISTORY OF INTIMIDATION OF AND RETALIATION AGAINST MEMBERS SEEKING TO CHALLENGE INCUMBENT UNION LEADERSHIP

59. Defendant, controlled by a slate of officers that has not changed in years, has had a pattern of interfering with the efforts of rank-and-file members to run for local union office since at least 2014.

60. At Defendant's nominations meeting held on May 6, 2014, members Kenneth Rocks and Kevin O'Sullivan were nominated for executive board positions, challenging incumbent executive board members.

61. Defendant prevented Rocks and O'Sullivan from running for office by disqualifying them on improper bases.

62. Defendant entered into a voluntary compliance agreement with Plaintiff on August 25, 2014, to resolve Plaintiff's finding that Defendant improperly disqualified eligible candidates. Per this agreement, Defendant held a rerun election supervised by Plaintiff on November 1, 2014. In that election, Rocks and O'Sullivan unsuccessfully ran for executive board positions.

63. Beginning no later than May 2014 and continuing until at least February 2016, Defendant subjected Rocks to multiple incidents of intimidation, harassment, and retaliation based on his participation in officer nominations and running for office.

64. Defendant's officers and members who subjected Rocks to intimidation, harassment, and retaliation included Business Manager John Dougherty, and business agents Robert Bark and Rodney Walker.

65. Defendant's retaliatory actions against Rocks included encouraging employers to lay him off, discouraging employers from hiring him, and failing to refer him for jobs from at least May 2015 to February 2016.

66. On May 7, 2015, Rocks was laid off by Union Electric. Rocks was out of work for the following nine months.

67. In or around February 2016, Rocks confronted then–business agent Ed Coppinger with evidence that Defendant had failed to send Rocks to a specific job as required by the Available for Work List Rules.

68. In or around February 2016, shortly after Rocks's confrontation with Ed Coppinger, Dougherty called Rocks to tell him he would get Rocks a job.

69. The day after Dougherty called Rocks, Defendant sent Rocks to work at the Philadelphia Convention Center, where Defendant's Recording Secretary Michael Mascuilli was then the project manager.

70. In or around March 2016, Defendant sent Rocks to work for McGoldrick Electric. Rocks has been working for McGoldrick Electric since March 2016.

71. Battle, Michael Coppinger, McConnell, and their supporters were aware of the intimidation, harassment, and retaliation that Rocks experienced during and following the 2014 officer election.

72. Battle, Michael Coppinger, McConnell, and their supporters believed that Defendant would retaliate against them in a similar manner to its treatment of Rocks if they continued with their plans to nominate members and run for office.

COUNT I<br>Violation of § 401(e) of the LMRDA, 29 U.S.C. § 481(e)

73. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

74. Section 401(e) of the LMRDA provides, in relevant part, that members must be given a reasonable opportunity to nominate candidates, that members in good standing must be allowed to run for office if they meet the union's reasonable qualifications, and that members have the right to vote for and support the candidates of their choice, all "without being subject to

penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." 29 U.S.C. § 481(e).

75. Defendant is liable for violations of Title VI of the LMRDA that occurred during its officer election that Defendant failed to remedy. 29 U.S.C. § 482(b).

76. Defendant violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), when Defendant's officers, business agents, and members improperly interfered with and threatened reprisal against members in good standing who wished to run for office and nominate others for office.

77. Defendant's conduct "may have affected the outcome of the election" within the meaning of the LMRDA. 29 U.S.C. § 482(c)(2).

78. Pursuant to section 402(c) of the LMRDA, the Court must therefore declare Defendant's 2020 election void and order a new election under Plaintiff's supervision. 29 U.S.C. § 482(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant:

(a) declaring Defendant's election for the offices of president and executive board (five positions) to be void pursuant to 29 U.S.C. § 482(c);

(b) directing Defendant to conduct a new election, including new nominations, for the offices of president and executive board (five positions) under Plaintiff's supervision under 29 U.S.C. § 482(c);

(c) awarding Plaintiff the costs of this action; and

(d) awarding Plaintiff such other and further relief as the Court deems just and appropriate.

                                                                                                Respectfully submitted,

Dated: January 8, 2021                    JEFFREY BOSSERT CLARK
                                                                            Acting Assistant Attorney General


*/s/ Jennifer Arbittier Williams*
JENNIFER ARBITTIER WILLIAMS
First Assistant United States Attorney


*/s/ Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division


*/s/ Charlene Keller Fullmer*
CHARLENE KELLER FULLMER
Assistant United States Attorney
Deputy Chief, Civil Division


*/s/ Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8492
Lauren.DeBruicker@usdoj.gov


OF COUNSEL:

KATE S. O'SCANNLAIN
Solicitor of Labor

BEVERLY DANKOWITZ
Associate Solicitor

JEFFREY LUPARDO
Counsel for Labor-Management and Civil Rights Enforcement

ANNA LAURA BENNETT
Senior Attorney

U.S. Department of Labor