**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTIN J. WALSH, Secretary of Labor, | : | |
| United States Department of Labor, | : | CIVIL ACTION NO. 21-0096 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LOCAL 98, INTERNATIONAL | : | |
| BROTHERHOOD OF ELECTRICAL | : | |
| WORKERS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>AMENDED COMPLAINT</u>

Under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481–483, union members: (1) must be given a reasonable opportunity to nominate candidates for union officer elections; (2) must be allowed to run for office if they are members in good standing and meet the union's reasonable qualifications; and (3) have the right to vote for and support the candidates of their choice, all "without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." 29 U.S.C. § 481(e).

Defendant Local 98, International Brotherhood of Electrical Workers (Defendant), by the actions of its officers and members, intimidated and threatened the livelihoods of three of its members who intended to seek or nominate others for office in its June 2020 election, causing them to withdraw from doing so. As detailed below, this included dozens of calls to the potential candidates from union members at the apparent direction of Defendant's leadership and, in one instance, a phone call directly from Business Manager John Dougherty in which he stated that,

"It'll be a long three years if you lose." Defendant's conduct delivered the message that running as or nominating an opposition candidate to entrenched leadership would lead to the loss of jobs.

Defendant's conduct violated its members' rights to nominate, be nominated, and vote for or otherwise support the candidates of their choice without pressure or interference from Defendant. As a result of Defendant's violations, all races were uncontested, and no election was held – instead, all incumbent officers were declared reelected without opposition.

For these reasons, Plaintiff Martin J. Walsh, Secretary of Labor, brings this action under section 402(c) of Title IV of the LMRDA, 29 U.S.C. § 482(c), for a judgment voiding the June 9, 2020, election of president and five executive board members, and directing Defendant to conduct a new election, including nominations, under Plaintiff's supervision.

## PARTIES

1.      Plaintiff Martin J. Wash is the duly appointed Secretary of Labor, United States Department of Labor. Plaintiff is authorized to bring this action under section 402(b) of Title IV of the LMRDA, 29 U.S.C. § 482(b).

2.      Defendant is a local labor organization engaged in an industry affecting commerce within the meaning of sections 3(i) and (j) and 401(b) of the LMRDA, 29 U.S.C. §§ 402(i), (j), 481(b). Defendant maintains its principal office at 1701 Spring Garden Street, Philadelphia, PA 19130.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

4.      Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

<u>EXHAUSTION OF OTHER REMEDIES</u>

5.      Defendant, purporting to act pursuant to its bylaws and the International

Brotherhood of Electrical Workers' (IBEW International's) Constitution and Basic Laws and

Policies, conducted an election of officers in June 2020, and this election was subject to the

provisions of Title IV of the LMRDA, 29 U.S.C. §§ 481–483.

6.      By letter dated June 16, 2020, to the IBEW Third District International Vice

President, Charles Battle, a Local 98 member in good standing, filed an internal protest with the

union (the "Internal Protest"). *See* Exhibit "1."

7.      Battle's Internal Protest was assigned to IBEW International Representative

Randy Kieffer for investigation.

8.      International Representative Kieffer issued his findings to IBEW International

Vice President (IVP) Michael Welsh in a report dated July 24, 2020. *See* Exhibit "2."

9.      International Representative Kieffer issued additional findings to IVP Welsh in a

separate report dated July 28, 2020. *See* Exhibit "3."

10.     By letter from IVP Welsh dated July 31, 2020, the IBEW denied Battle's Internal

Protest. *See* Exhibit "4."

11.     Having exhausted the remedies available and having received a final decision

from the union, Battle timely filed a complaint with the Secretary of Labor on August 18, 2020,

within the one calendar month required by section 402(a)(1) of the LMRDA, 29 U.S.C. §

482(a)(1).

12.      By three separate letter agreements, Defendant agreed to extensions of time for

Plaintiff to bring suit, with the last agreement extending that time until and including January 8,

2021.

13.     Pursuant to section 601 of the LMRDA, 29 U.S.C. § 521, and in accordance with section 402(b) of the LMRDA, 29 U.S.C. § 482(b), Plaintiff investigated Battle's complaint and found probable cause that violations of Title IV of the LMRDA, 29 U.S.C. §§ 481–483, occurred that have not been remedied and that may have affected the outcome of Defendant's June 9, 2020, election. That investigation serves as the basis for the averments in this Complaint.

<u>DEFENDANT INTIMIDATED AND PRESSURED THREE RANK-AND-FILE MEMBERS OUT OF RUNNING FOR OFFICE IN ITS JUNE 2020 ELECTION</u>

14.     Defendant has approximately 4,000 active members.

15.     Defendant's members are employed as electricians in Pennsylvania in Bucks, Chester, Delaware, Montgomery, Philadelphia, and Lehigh Counties.

16.     Defendant has a job referral system that is governed by its collective bargaining agreement as supplemented by its Available for Work List Rules. Members are also typically allowed to solicit their own jobs.

17.     On May 18, 2020, Defendant mailed a combined nomination and election notice to members' home addresses.

18.     The notice stated, in relevant part, that "nominations shall take place on June 9, 2020, beginning at 7:00 p.m. at the Union's offices at 1719 Spring Garden Street. Acknowledgments of willingness to be nominated for office must be received by the Union no later than 5:00 p.m. on June 9, 2020."

19.     The IBEW International Constitution permits local officer nominations to be made in writing.

20.     Defendant's bylaws do not state that officer nominations must be made in person.

21.     For its 2020 officer election, Defendant required nominations to be made by a member who was present at the nomination meeting on June 9, 2020.

4

22.     At the nomination meeting on June 9, 2020, only the incumbent officers were nominated for office. Because all races were uncontested, no election was held. All incumbent officers were declared reelected without opposition.

<p align="center">Intended Candidate Charles Battle</p>

23.     Member Charles Battle intended to run for president in Defendant's June 2020 election, and to have member Michael Coppinger nominate him for office. *See* Ex. 1 at D 00055; *see also* statement of Charles Battle signed Oct. 13, 2020 (Exhibit "5"); statement of Timothy McConnell signed Oct. 15, 2020 (Exhibit "6"); statement of Philip Borthwick signed Oct. 15, 2020 (Exhibit "7").

24.     At Defendant's membership meetings in November 2019, January 2020, and February 2020, Battle questioned Defendant's Business Manager John Dougherty and other union leadership about how the union was being run. Ex. 5 at DOL_Local 98_00408; *see also* Ex. 7 at DOL_Local 98_00414.

25.     Defendant's Business Manager is an elected officer position charged with, among other duties, representing Defendant in dealing with employers, enforcing its collective bargaining agreement, administering Defendant's work referral procedures, and serving as trustee of all of Defendant's trust funds provided for in the local collective bargaining agreement. The Business Manager appoints business agents to assist in his duties. John Dougherty has served as Business Manager since 1993. Like all incumbent officers, Dougherty was up for reelection in June 2020.

26.     After each of the membership meetings at which Battle asked questions, Battle received telephone calls from Defendant's business agent Robert Bark asking why Battle was so angry with Defendant's leaders. Ex. 5 at DOL_Local 98_00408.

<p align="center">5</p>

27.     At Defendant's January 2020 membership meeting, Battle questioned Dougherty about money allegedly stolen from the union. Ex. 5 at DOL_Local 98_00408.

28.     After the January 2020 meeting, Bark arrived, unexpected, at Battle's house, to speak to him about why he was questioning Defendant's leaders. Ex. 5 at DOL_Local 98_00408; *see also* Ex. 1 at D 00055.

29.     After Bark's visit following the January 2020 membership meeting, Battle told Bark not to come to his house anymore. Ex. 5 at DOL_Local 98_00408; *see also* Ex. 1 at D 00055.

30.     At 8:30 p.m. on Sunday, June 7, 2020, two days prior to Defendant's nomination meeting, Bark again visited Battle's house uninvited despite Battle's admonition not to do so. Ex. 1 at D 00055; Ex. 5 at DOL_Local 98_00408.

31.     When interviewed during the Secretary's investigation, Bark stated that he visited Battle's house on the evening of June 7, 2020, because he had heard rumors that Battle was running for office. Bark wanted to find out what Battle was so angry about. Ex. 5 at DOL_Local 98_00408.

32.     On June 9, 2020, Battle went to the union hall at approximately 4:50 p.m. Ex. 5 at DOL_Local 98_00409.

33.     Battle completed a nomination form stating his intention to run for the office of president, reproduced (in redacted form) below. Ex. 5 at DOL_Local 98_00409.

NOMINATION SLIP for CANDIDATES FOR OFFICE

The undersigned member of IBEW Local 98 nominates:

_Charles Battle_
(please print)

for the office of _President_

in the 2020 election of Officers of Local 98.

Name of Nominator: _____
(please print)

Nominator's Signature: _____

Nominator's Card Number: _____

WILLINGNESS TO ACCEPT NOMINATION

The undersigned member of IBEW Local 98 is willing to be nominated as a candidate

for the office of _President_ in the 2020

election of Officers of Local 98.

Name of Candidate: _Charles Battle_
(please print)

Candidate's Signature: _Charles Battle_

Candidate's Card Number: ███████████

34.     Battle submitted his nomination form to Tara Chupka, Defendant's in-house

counsel and a Local 98 member, who had a clerical role in the election. Ex. 5 at DOL_Local

98_00409.

35.     When interviewed during the Secretary's investigation, Chupka stated that she put

Battle's nomination form in a file folder with other nomination forms and gave the folder to

Defendant's sergeant-at-arms and business agent Rodney Walker.

36.     Minutes after submitting his nomination form, Battle received a call from a Local

98 member in Flourtown, Pennsylvania, asking Battle if he was running for president. Ex. 5 at

DOL_Local 98_00409.

37.     While Battle waited outside the union hall for the nomination meeting to begin, he heard Defendant's business agents talking to the crowd that had gathered. The business agents were trying to identify Battle's nominators and anyone else who might be intending to run for office. Ex. 5 at DOL_Local 98_00409.

38.     At least 150 people, primarily supporters of Dougherty and his longstanding slate of incumbents, gathered on the grounds of the union hall on the evening of June 9, 2020. Ex. 7 at DOL_Local 98_00415; *see also* Ex. 1 at D 00060–61. On a local radio show on July 11, 2020, Dougherty stated there were "seven, eight, nine hundred people there" that night. *Saturday Night Live with Philly Labor*, Talk Radio 1210 WPHT (July 11, 2020), https://www.audacy.com/1210wpht/podcasts/labor-show-257/july-11-2020-philly-labor-347693816, at min. 5:00.

39.     To get to the union hall for the meeting, nominees and nominators had to walk through the crowd of Dougherty's supporters gathered in the parking lot and down the steps to the basement, which Battle described as like "walking the gauntlet." Ex. 5 at DOL_Local 98_00409. Battle and his supporters found the atmosphere imposing and felt intimidated. Ex. 5 at DOL_Local 98_00409; Ex. 7 at DOL_Local 98_00415; *see also* Ex. 1 at D 00060.

40.     Battle was willing to, and did, signify to Defendant in writing his willingness to be nominated for the office of president. Ex. 5 at DOL_Local 98_00408–09.

41.     Battle believed that his supporters would be forced out of work if they went through with nominating him. Ex. 5 at DOL_Local 98_00408–09.

42.     As a result of Defendant's conduct, Battle and his supporters did not attend the nomination meeting. Ex. 5 at DOL_Local 98_00409–10.

43.     Defendant did not treat Battle's written nomination as a nomination for the race of president.

44.     In its letter denying Battle's Internal Protest, Defendant denied that Battle even submitted a nomination form, despite having the form in its possession. Ex. 4 at DOL_Local 98_00257.

45.     Less than one month after Battle filed his Internal Protest, Local 98 sued Battle in the Philadelphia Court of Common Pleas over statements relating to the election. *See* Complaint in *IBEW, Local 98 et al. v. Charles Battle et al.*, July 2020 Term No. 001106, attached as Exhibit "8."

<u>Intended Candidate Timothy McConnell</u>

46.     Member Timothy McConnell intended to run for executive board in Defendant's June 2020 election. *See* Ex. 2 at DOL_Local 98_00249; Ex. 6 at DOL_Local 98_00412.1.

47.     Shortly after McConnell announced his intention of running for office to friends and others on the job he was working, McConnell began hearing that the incumbent officers did not want him to run for office. Ex. 2 at DOL_Local 98_00249.

48.     In the early evening of June 8, 2020, McConnell sent a text to Defendant's Safety Director Mark Lynch to inform him that he was thinking about running for an executive board position. Ex. 6 at DOL_Local 98_00412.1.

49.     Within a few minutes of receiving McConnell's text, Lynch called McConnell. Lynch then gave the phone to Business Manager Dougherty. Ex. 6 at DOL_Local 98_00412.1–.2; *see also* Ex. 7 at DOL_Local 98_00415.

50.     During their telephone call, Dougherty told McConnell, "It'll be a long three years if you lose." Ex. 2 at DOL_Local 98_00249; Ex. 6 at DOL_Local 98_00412.2.

51.     McConnell perceived Dougherty's statement as a threat of losing jobs. Ex. 6 at DOL_Local 98_00412.2–.3; *see also* Ex. 7 at DOL_Local 98_00415–16.

9

52.     Near the end of the telephone call, Dougherty shouted at McConnell, "If you ain't with me, you're against me!" Ex. 6 at DOL_Local 98_00412.2; Ex. 7 at DOL_Local 98_00415.

53.     Following his phone conversation with Dougherty on June 8, 2020, McConnell received dozens of telephone calls apparently prompted by the news that he planned to run for office. Defendant's business agent Rodney Walker was among those who called McConnell that evening. Ex. 6 at DOL_Local 98_00412.2.

54.     On or around June 8, 2020, Philadelphia ward leader Brian Eddis called McConnell's friend and former employer, James Ryan of Par 4 Electric, to relay a message to McConnell. *See* statement of James Ryan signed Oct. 26, 2020 (Exhibit "9"). When interviewed during the Secretary's investigation, Ryan stated that Eddis told Ryan that he "did not want to see anything happen to [McConnell]." *See also* Ex. 6 at DOL_Local 98_00412.2–.3; Ex. 7 at DOL_Local 98_00416.

55.     On or around June 9, 2020, Ryan relayed Eddis's message to McConnell. Ryan advised McConnell that it was not "worth the aggravation to run" for office. Ex. 9 at DOL_Local 98_00427; *see also* Ex. 6 at DOL_Local 98_00412.2–.3; Ex. 7 at DOL_Local 98_00416.

56.     McConnell understood the message relayed by Ryan to be a threat of losing jobs. Ex. 6 at DOL_Local 98_00412.2–.3.

57.     McConnell believed that Eddis had made the call to Ryan at Dougherty's direction because of its content and because the call was made on the same night Dougherty spoke with McConnell. *See* Ex. 6 at DOL_Local 98_00412.2.

58.     On or around June 9, 2020, McConnell decided not to run for office because of the threats to his job and because he did not want to jeopardize the job prospects of family members who work in the trade. Ex. 6 at DOL_Local 98_00412.3.

59.     International Representative Kieffer interviewed McConnell on July 22, 2020, and documented his findings relating to McConnell in his report dated July 24, 2020. *See* Ex. 2.

60.     Approximately one week after he provided the Secretary with a signed statement in connection with the investigation of Battle's allegations, McConnell was laid off from his job where he had worked for approximately two years.

<u>Intended Candidate Michael Coppinger</u>

61.     Member Michael Coppinger intended to run for executive board in Defendant's June 2020 election. Ex. 5 at DOL_Local 98_00406; *see also* Ex. 1 at D 00055; Ex. 6 at DOL_Local 98_00412.2; Ex. 7 at DOL_Local 98_00414.

62.     On or around June 7–9, 2020, Michael Coppinger received dozens of telephone calls regarding his intention to run for executive board. *See* Ex. 6 at DOL_Local 98_00412.2.

63.     On or around June 9, 2020, Michael Coppinger received a telephone call from his uncle, Ed Coppinger, a former business agent of Defendant. Ed Coppinger called his nephew to deliver a message from Dougherty that his career would be finished if he ran for office. Ex. 5 at DOL_Local 98_00409; *see also* Ex. 6 at DOL_Local 98_00412.2.

64.     On or around June 7–9, 2020, Michael Coppinger decided not to run for office. Ex. 5 at DOL_Local 98_00409.

65.     On or around June 9, 2020, Michael Coppinger decided not to nominate Battle for office. Ex. 5 at DOL_Local 98_00409; Ex. 7 at DOL_Local 98_00415.

66.     The intimidation of Michael Coppinger and the involvement of his uncle Ed Coppinger were noted on a public website in June or early July 2020. *See* Ex. 8 at Ex. B thereto. Defendant made this comment and others the subject of the defamation lawsuit Defendant initiated against Battle on July 17, 2021.

11

<u>DEFENDANT'S HISTORY OF INTIMIDATION OF AND RETALIATION AGAINST
MEMBERS SEEKING TO CHALLENGE INCUMBENT UNION LEADERSHIP</u>

67.     Defendant, controlled by a slate of officers that has not changed in years, has had a pattern of interfering with the efforts of rank-and-file members to run for local union office since at least 2014. *See* Ex. 1 at D 00061; *see also* statement of Kenneth Rocks, Jr., signed Oct. 26, 2020 (Exhibit "10").

68.     At Defendant's nominations meeting held on May 6, 2014, members Kenneth Rocks and Kevin O'Sullivan were nominated for executive board positions, challenging incumbent executive board members. Ex. 10 at DOL_Local 98_00419; *see also* Ex. 1 at D 00061.

69.     Defendant prevented Rocks and O'Sullivan from running for office by disqualifying them on improper bases. *See* Ex. 10 at DOL_Local 98_00419.

70.     Defendant entered into a voluntary compliance agreement with Plaintiff on August 25, 2014, to resolve Plaintiff's finding that Defendant improperly disqualified eligible candidates. Per this agreement, Defendant held a rerun election supervised by Plaintiff on November 1, 2014. In that election, Rocks and O'Sullivan unsuccessfully ran for executive board positions. Ex. 10 at DOL_Local 98_00419; *see also* Ex. 1 at D 00061.

71.     Beginning no later than May 2014 and continuing until at least February 2016, Defendant subjected Rocks to multiple incidents of intimidation, harassment, and retaliation based on his participation in officer nominations and running for office. Ex. 10 at DOL_Local 98_00419–21; *see also* Ex. 1 at D 00061.

72.     Defendant's officers and members who subjected Rocks to intimidation, harassment, and retaliation included Business Manager John Dougherty and business agents Robert Bark and Rodney Walker. Ex. 10 at DOL_Local 98_00420.

12

73. Defendant's retaliatory actions against Rocks included encouraging employers to lay him off, discouraging employers from hiring him, and failing to refer him for jobs from at least May 2015 to February 2016. Ex. 10 at DOL_Local 98_00419–20.

74. In or around May 2015, Rocks was laid off by Union Electric. *See* Participant Monthly History of Kenneth Rocks ("Exhibit 11") at D 00262.

75. Defendant's work history records confirm that Rocks was out of work for the following nine months, from May 2015 to February 2016. Ex. 11 at D 00262; *see also* Ex. 10 at DOL_Local 98_00419–20.

76. In or around February 2016, Rocks confronted then–business agent Ed Coppinger with evidence that Defendant had failed to send Rocks to a specific job as required by the Available for Work List Rules. Ex. 10 at DOL_Local 98_00420.

77. In or around February 2016, shortly after Rocks's confrontation with Ed Coppinger, Dougherty called Rocks to tell him he would get Rocks a job. Ex. 10 at DOL_Local 98_00420.

78. The day after Dougherty called Rocks, Defendant sent Rocks to work at the Philadelphia Convention Center, where Defendant's Recording Secretary Michael Mascuilli was then the project manager. Ex. 10 at DOL_Local 98_00420; *see also* Ex. 11 at D 00262.

79. In or around March 2016, Defendant sent Rocks to work for McGoldrick Electric. Rocks has been working for McGoldrick Electric since March 2016. Ex. 10 at DOL_Local 98_00420; *see also* Ex. 11 at D 00262.

80. Battle, McConnnell, Michael Coppinger, and their supporters were aware of the intimidation, harassment, and retaliation that Rocks experienced during and following the 2014

officer election. Ex. 1 at D 00061; Ex. 6 at DOL_Local 98_00412.1–.3; Ex. 7 at DOL_Local 98_00415.

81.     Battle, McConnell, Michael Coppinger, and their supporters believed that Defendant would retaliate against them in a similar manner to its treatment of Rocks if they continued with their plans to nominate members and run for office. Ex. 6 at DOL_Local 98_00412.1–.3; Ex. 7 at DOL_Local 98_00415.

<u>DEFENDANT HAD NOTICE OF KNOWLEDGE OF, AND THE OPPORTUNITY TO INVESTIGATE THE ALLEGATIONS OF INTIMIDATION</u>

82.     Defendant had notice of, knowledge of, and a full and fair opportunity to investigate these allegations of intimidation.

<u>Battle's Internal Protest Put Defendant on Notice of His Allegations</u>

83.     In his Internal Protest, Battle stated: "Just to be clear, the exact events that I talked about in my letter to the DOL [Attachment B to Battle's Internal Protest] happened on election night. Members are scared of intimidation and they would not run on their own or support my candidacy." Ex. 1 at D 00055.

84.     Battle's Internal Protest included the following details:

        a.     In the weeks leading up to Defendant's nomination meeting, Battle spoke with two other members who were going to run for executive board positions, one of whom planned to support Battle by nominating him for president. *Id*.

        b.     On the evening of June 7, 2020, the Sunday before the nomination meeting, Bark showed up at Battle's house uninvited, scaring Battle's family so much that they sought guidance from the FBI. *Id*.

14

c.      The member who planned to run for executive board and nominate Battle for president notified Battle just prior to the nomination meeting that he could not nominate Battle "out of fear." *Id*.

d.      Also prior to the nomination meeting, Battle learned that the other member who planned to run for executive board had received a telephone call from Lynch, who then gave the phone to Dougherty. Dougherty "began to intimidate" Battle's fellow candidate, telling him "something to the effect that: if you go through with this, it will be a long three years." *Id*.

e.      Based on Defendant's combined nomination and election notice, Battle had understood that the only requirement to nominate himself for office was to express his willingness to do so in writing at the union hall prior to the nomination meeting. When he arrived at the union hall to submit his nomination form, Battle was intimidated by signs and a form indicating that he and his nominators would have to appear in person to meet the nomination requirements. *Id*. at D 00054–55.

f.      Battle submitted his nomination form to Defendant's in-house counsel and member Tara Chupka before the deadline. *Id*.; *see also* Battle's nomination form, *supra*.

g.      Waiting outside the union hall for the nomination meeting to begin, Battle was "deflated, scared and alone," afraid that the same thing that happened to his fellow candidates would happen to him, and remembering the fear his family felt from Bark's visit. Because of these concerns, Battle left the union hall before the nomination meeting began. *Id*. at D 00055.

15

85.     Battle attached to his Internal Protest an undated letter that he had sent to the Department of Labor on June 6, 2020, with copies to IBEW officials received on June 8, 2020. *Id*. at D 00059–63.

86.     In his Internal Protest, Battle explained that in the June 6 letter he had "assumed concerns" about the upcoming election, and "every one of my fears [described in the June 6 letter] came true." *Id*. at D00053. Battle described in his June 6 letter the "fear" that would be created by "[t]he intimidating atmosphere of the election site," reflecting that "members MUST vote for a candidate backed by the Business Manager or face reprisal." *Id*. at D 00060.

87.     In his June 6 letter, Battle stated that "members have complained of schemes that go as far back as . . . over 25 years ago. In older members [sic] opinions the Business Managers' intimidation has gone unchecked and has progressed steadily over the years." *Id*. at D 00061.

88.     In his June 6 letter, Battle also noted that there had been "allegations of intimidation and election trickery" during Defendant's 2014 officer election, in which member "Kenny Rocks [ran] for a spot on the executive board without the Business Manager's approval." *Id*. Battle further stated in his June 6 letter that the Department of Labor had supervised a rerun of the 2014 election but that Rocks subsequently suffered violations of his rights. *Id*.

<u>Defendant's Internal Investigation of Battle's Internal Protest Confirms It Had Notice of the Allegations of Intimidation</u>

89.     International Representative Kieffer interviewed Battle in connection with his Internal Protest and had the opportunity to inquire about each statement therein. *See* Ex. 3.

90.     In his report of his investigation of Battle's Internal Protest, International Representative Kieffer acknowledged Battle's allegation that "his two supporters were intimidated by some members and business agents not to support his candidacy." *Id*. at 2.

16

91.     International Representative Kieffer determined that the notice of Defendant's 2020 officer election "may not have been clear to some people." *Id.*

92.     International Representative Kieffer acknowledged Battle's claim that signage posted at the site of the nomination meeting "may have been a ploy to intimidate him not to enter the building because it said that he would need three people present." *Id.*

93.     Upon conclusion of his review, International Representative Kieffer reported that "Battle may have felt intimidated," but nonetheless found that "[t]he claim of intimidation is still not clearly proven." *Id*. at 4.

94.     International Representative Kieffer interviewed McConnell on or about July 22, 2020. *See* Ex. 2.

95.     International Representative Kieffer documented that McConnell told him that "business manager Dougherty said [to McConnell] if you lose the election it could be a long three years . . . ." McConnell said that while he did not know "exactly what that meant[,] it made him reconsider running for office." As International Representative Kieffer reported, McConnell confirmed Dougherty's statement "could have been taken as intimidation." *Id*.

96.     International Representative Kieffer also confirmed that McConnell told him of the call that Dougherty, Eddis, and Ryan had regarding McConnell running for executive board "and how that may not be good for the Local Union." International Representative Kieffer documented McConnell's statement that the conversation "made him feel uncomfortable" and "he felt that it would be best for him not to run for office."  *Id*.

97.     As documented in International Representative Kieffer's report, McConnell said that he "worried there might be some reprisal against himself and his friends and family [such as his brother-in-law, a Local 98 apprentice] if he continued to pursue office." *Id*.

17

98.     International Representative Kieffer reported that based on the conduct of Defendant, "McConnel [sic] told me that even though there were no direct threats he felt that it would be best for him not to run for office." *Id.*

<u>Defendant's July 17, 2020, Defamation Suit Against Battle Confirms It Had Notice of the Allegations of Intimidation of Michael Coppinger and the Intimidating Atmosphere of the Site of the Nomination Meeting</u>

99.     On July 17, 2020, while Defendant was investigating Battle's Internal Protest, Defendant filed a defamation lawsuit against Battle in the Philadelphia Court of Common Pleas through a Praecipe to Issue a Writ of Summons. Defendant served Battle and his wife with a Writ of Summons on July 21, 2021.

100.    In its complaint, which it filed in August 2020, Defendant asserted that Battle made, or was otherwise responsible for, allegations of interference by Defendant in its June 2020 officer election, including the following statement posted on a website in late June or early July 2020:

> John Dougherty, Bobby Bark, Mark Lynch and others intimidated potential candidates into not going thru with the nomination process.
> you remember when you got on the phone with mark and said if you go through with this the next three years will be hell .... really you had to get ed cop off his couch to indimidate [sic] his own nephew PATHETIC John.

Ex. 8 at DOL_LOCAL 98_02718 (yellow highlights in original); *see also id.* at ¶ 18(g).

101.    Additional comments Defendant attached to its defamation complaint stated the election was not held in a "neutral place," *id.* at DOL_LOCAL 98_02717, at post dated June 28, 2020, and noted the actions of Bark and Defendant's intimidation of Rocks in 2014. *Id.* at DOL_LOCAL 98_02704 and 2717, at posts dated June 15 and July 2, 2020. *See also id.* at ¶¶ 15(a) and (e).

18

102.    Defendant alleged these statements "represent[ed] that Local 98 encourages and condones election results obtained through unlawful intimidation and fear." *Id*. at ¶ 18(g).

<u>Plaintiff, in His Investigation of Battle's Election Complaint, Found Probable Cause to Believe a Violation of the LMRDA Occurred Which Defendant Did Not Remedy</u>

103.    Over the course of his investigation, Plaintiff gathered documents from Defendant, including Battle's signed nomination form which he submitted to Defendant prior to the nominations meeting, and International Representative Kieffer's report of his interview of McConnell during his investigation of Battle's Internal Protest.

104.    Plaintiff also interviewed over two dozen witness, including rank-and-file union members, members of Defendant's leadership, and third parties believed to have information pertinent to the issues raised in Battle's complaint.

105.    Based on the evidence gathered over the course of the investigation, which included the sworn statements of multiple witnesses and Defendant's own documentation, Plaintiff found probable cause to believe that a violation of the LMRDA occurred and was not remedied by the union. Having so found, Plaintiff brings this civil action, as required by the LMRDA. 29 U.S.C. § 482(b).

106.    Plaintiff makes no allegation in this civil action that Defendant deprived members of their LMRDA rights by the use of physical force or violence or by threatening the use of physical force or violence.

107.    Plaintiff found probable cause to believe that Defendant intimidated the intended candidates by threatening reprisal through economic, reputational, and other unwelcome consequences.

<u>COUNT I</u>
<u>Violation of § 401(e) of the LMRDA, 29 U.S.C. § 481(e)</u>

108.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

109.    Section 401(e) of the LMRDA provides, in relevant part, that members must be given a reasonable opportunity to nominate candidates, that members in good standing must be allowed to run for office if they meet the union's reasonable qualifications, and that members have the right to vote for and support the candidates of their choice, all "without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." 29 U.S.C. § 481(e).

110.    Defendant is liable for violations of Title VI of the LMRDA that occurred during its officer election that Defendant failed to remedy. 29 U.S.C. § 482(b).

111.    Defendant violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), when Defendant's officers, business agents, and members improperly interfered with and threatened reprisal against members in good standing who wished to run for office and nominate others for office.

112.    Defendant's conduct "may have affected the outcome of the election" within the meaning of the LMRDA. 29 U.S.C. § 482(c)(2).

113.    Pursuant to section 402(c) of the LMRDA, the Court must therefore declare Defendant's 2020 election void and order a new election under Plaintiff's supervision. 29 U.S.C. § 482(c).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendant:

(a)      declaring Defendant's election for the offices of president and executive board

(five positions) to be void pursuant to 29 U.S.C. § 482(c);

(b)      directing Defendant to conduct a new election, including new nominations, for the

offices of president and executive board (five positions) under Plaintiff's supervision under 29

U.S.C. § 482(c);

(c)      awarding Plaintiff the costs of this action; and

(d)      awarding Plaintiff such other and further relief as the Court deems just and

appropriate.

<div style="margin-left: 50%;">

Respectfully submitted,

</div>

Dated: July 1, 2021

<div style="margin-left: 50%;">

VANITA GUPTA
Assistant Attorney General

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

<u>/s/ Gregory B. David</u>
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

<u>/s/ Charlene Keller Fullmer</u>
CHARLENE KELLER FULLMER
Assistant United States Attorney
Deputy Chief, Civil Division

<u>/s/ Lauren DeBruicker</u>
LAUREN DeBRUICKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8492
Lauren.DeBruicker@usdoj.gov

</div>

OF COUNSEL:

ELENA GOLDSTEIN
Deputy Solicitor of Labor

BEVERLY DANKOWITZ
Associate Solicitor

JEFFREY LUPARDO
Counsel for Labor-Management and Civil Rights Enforcement

ANNA LAURA BENNETT
Senior Attorney

U.S. Department of Labor

# Exhibit 1

Charles Battle
2548 Brooke Road
Pennsburg, PA 18073

June 16, 2020

IBEW IVP Michael Welsh
IBEW Third District Office
500 Cherrington Parkway
Suite 325
Coraopolis, PA 15108

VP Welsh,

My name is Charles Battle, a dues paying member of Local Union #98, Card # D862584, Phila. PA.

I am appealing the current election cycle as I claim that the nomination process was fraudulently manipulated to secure a guaranteed outcome for the current administration. This was not an election process it was a SELECTION process.

My appeal is based off of the guidelines and rules set forth in the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), guidance from the U.S. Department of Labor sources, the IBEW Constitution, the IBEW Basic Laws & Policies and my Local union 98 Bylaws.

It is my belief that "members of the IBEW are afforded the most fundamental of democratic rights... which include the right to vote for representatives of THEIR choice who will lead THEIR union... This freedom to vote is a continuation of the principles of the IBEW, guaranteed by our Constitution and local bylaws..."

Enclosed, you will find a Notice of Nominations and Election of Officers and Election Board of IBEW Local 98 dated May 18, 2020 (*Attachment A*).

This document, in conjunction with all other considered materials and statements, will be the basis of my appeal.

In addition, I am attaching my letter to the U.S. Department of Labor (*Attachment B*) which was sent out on June 6, 2020, which I believe that you received on June 8, 2020.

**In this letter I plead for assistance in the upcoming election cycle and my assumed concerns.**

Mr. Welsh, every one of my fears came true. **Every single one**.

I read the Notice of Nominations and Elections and Election of Officers and Election Board of IBEW Local 98 very carefully. I followed every guideline set forth within the notice carefully. I am including the following excerpt below for your reference.

"NOMINATION FOR ELECTION OF OFFICERS OF THE LOCAL 98 AND NOMINATION AND ELECTION OF ELECTION BOARD – Nominations shall take place on June 9, 2020, beginning at 7:00p.m. at the Union's offices at 1719 Spring Garden Street. Acknowledgements of willingness to be nominated for office must be received by the Union no later than 5:00 pm on June 9, 2020. Election of the Election Board, if required, will take place at the conclusion of the nominations. One (1) Election Judge and 4 tellers will be elected."

**RECEIVED**

**JUN 2 2 2020**

**IBEW THIRD DISTRICT**

According to the Department of Labor "Nomination Notice" requirements, "the nomination notice should specify the offices to be filled in the election (and identify any offices for which the officer is a delegate by virtue of election to office). It should also include the date, time, place and method for submitting nominations (by mail, petition, or orally at a meeting including details such as whether a nomination must be seconded, number of signatures required on a petition, etc."

As you can confirm by reading the "NOTICE OF NOMINATIONS..." (*Attachment A*) Within the notice that was provided to me by the current Local 98 administration there were no specifics with regards to seconding or nominating. To the contrary, it stated vaguely that "Acknowledgements of willingness to be nominated for office must be received by the Union no later than 5:00 pm on June 9, 2020. I took this as the only requirement for nominations.

The Department of Labor guidelines are quite specific. "The state...and method for submitting nominations...including details such as whether a nomination must be seconded...etc."

This nomination notice in my opinion was drafted to be intentionally vague, to deceive the membership and to thwart any competition to the current administration. **It appears to me, to be in direct violation of the Department of Labor's guidelines.**

I appeared at 1719 Spring Garden Street at 4:50 pm on June 9, 2020 to express my willingness to run for office. Unfortunately, I was met at the door with a sign that read " IBEW Local 98 Nominations 2020,** The ONLY Members allowed into the building will be: the Nominated Candidate, the Member nominating the Candidate, the Member seconding the nomination, please see the Door Worker to be granted access" (*Attachment C*).

Looking back at that sign, I think it must have been a ploy by the administration to intimidate me into not entering the building. The notice did not mention anything about needing "three people" present so that I could nominate myself for office.

Once I entered the building, I was directed to a window. I went to the window where I was eventually met by Tara Chupka, the attorney representing local 98 who is also the Business Manager's adopted daughter or something of that nature. I respectfully requested to nominate myself for office.

Tara did not provide her official capacity. She was in possession of a stack of papers when she acknowledged me. Tara informed me that I, the Nominated Candidate, along with a member nominating the Candidate, and a member seconding the nomination must appear before her to fill out paperwork in order to be considered for nomination.

I asked Tara if the stack of papers she was holding were additional members who were seeking office, and she told me they were. I then asked Tara if I could see the members' names that were running for office and what offices they were running for. In an in-person election, I would have been able to see who else was running for the variety of positions. However, with this process, the Business Manager took transparency out of the nomination process and was the only one who knew who the competition was. Thus, creating an unfair advantage to the Business Manager.

Tara asked me to wait, and that she had to ask someone if it was okay to show me the names of the additional members seeking office. She left my presence, I am not sure where she went. Upon her return, she informed me that I am not entitled to review or have knowledge of the names of the

2

members seeking office. This inherently does not seem right to me since these "nominations" are supposed to be transparent.

So, I began to fill out the "newly required" nomination paperwork. I came across a part where I was required to list a member in good standing to nominate me. Then I had to list a member in good standing to second my nomination. At this point, it was clear to me, that the rules changed and that this was a pure attempt to intimidate me not to follow through with running for office. I was told that the member in good standing that was going to nominate me also had to register with Tara in person and sign a form indicating their intention. I was not notified that I needed this, nor was I notified that the meeting format had changed. I was completely blindsided by the fact that we even had the nomination in complete defiance of the Governor of Pennsylvania's COVID-19 State order as well as the City of Philadelphia's COVID-19 City order to limiting gatherings. In addition to the lockdown measures, Philadelphia was dealing with civil unrest in which civilians were being harmed and properties were being damaged.

For the life of me I cannot understand the rush for this "nomination" schedule other than to ram the current administration back down our throats.

This "new" requirement was not mentioned in the Nomination notice and should be grounds by itself to require a new IO or Department of Labor controlled election process.

In the weeks prior to me showing up, to run for office at Local 98, I garnered support from fellow members and friends. I spoke with a couple of guys that also wanted to make a difference and were going to run for positions on the Executive Board. Collectively, we thought that we could help make changes to our Local Union.

Unfortunately, prior to my showing up at 1719 Spring Garden to fill out the paperwork, I was notified by one of my fellow candidates, that was also going to nominate me on the floor, that he was unable to nominate me out of fear.

I was floored and totally blindsided. Less than an hour ago we had a plan and now this. After speaking to my fellow candidate, he told me that he got a call from Mark Lynch, the Safety Coordinator at Local 98. Mark gave the phone to the Business Manager who began to intimidate him. The Business Manager told my fellow candidate something to the effect that: if you go through with this, it will be a long three years.

Just to be clear, the exact events that I talked about in my letter to the DOL happened on election night. Members are scared of intimidation and they would not run on their own or support my candidacy.

So, while I was in the office filling out the paperwork I no longer had anyone to sign the papers as the Nominating member. I was deflated, scared and alone. If this could happen to my fellow candidates, what could happen to me? At that moment, I reflected on my family and the fear that they have endured so far. My mind immediately went to the Sunday night before the nomination when a Local Union 98 Business Representative named Bob Bark showed up at my house uninvited. He put the fear of God into my wife and family. This is not the first time that Agent Bark has showed up at my house uninvited. On the last occasion, I told him to never show up at my house uninvited again because he is scaring my family. **This is such a concern of ours, that we have reached out to the FBI for guidance.** I cannot believe that in today's day and age that a Union can get away with threatening and intimidating their membership. Due to my concerns about the safety of my family, I then left the building, disgraced and let down.

3

In my opinion this **unlawfully**, ended my candidacy.

President Welsh, no member, **ever** should have to endure what I did just to be nominated to run for an elected office.

Page ii of the INTERNATIONAL BROTHERHOOD of ELECTRICAL WORKERS CONSTITUTION states:

Declaration of the INTERNATIONAL BROTHERHOOD of ELECTRICAL WORKS

Our cause is the cause of human justice, human rights, human security.
We refuse, and will always refuse, to condone or tolerate dictatorship or oppression of any kind.
We will find and expel from our midst any who might attempt to destroy, by subversion, all that we stand for.
This Brotherhood will continue to oppose communism, Nazism or any other subversive "ism." We will support our God, our Nations, our Union.

Brother Welsh, I implore you to do the right thing. Our Local Union needs to know that this Declaration is worth more than the paper it is written on. My human rights, security, and justice have been violated.

**This election process must be thrown out and a new IO or DOL controlled election process must be implemented.**

*Charles Battle*

Charles Battle

4

**D 00056**

Cc:

| Mr. Lonnie Stephenson | IBEW International President | USPS Certified | 7018 1130 0000 1004 4709 |
|---|---|---|---|
| Mr. Kenneth Cooper | IBEW International Sectary | USPS Certified | 7018 1130 0000 1004 4716 |
| Mr. John Newman | IBEW Counsel | USPS Certified | 7018 1130 0000 1004 4723 |
| Mr. Michael Welsh | IBEW 3rd District VP | USPS Certified | 7018 1130 0000 1004 4730 |
| Mr. Randy Keifer | IBEW 3rd District Rep. | USPS Certified | 7018 1130 0000 1004 4747 |
| Crystal L. Guy | U.S. Department of Labor | USPS Certified | 7018 1130 0000 1004 4754 |
| Bindu George | U.S. Department of Labor | USPS Certified | 7018 1130 0000 1004 4761 |

5

Attachment "A"

## Local Union No. 98

### INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

1701 Spring Garden Street
Philadelphia, Pennsylvania 19130

Phone: 215-563-5592
Fax:    215-561-2168

**NOTICE OF NOMINATIONS AND ELECTION
OF OFFICERS AND ELECTION BOARD
OF IBEW LOCAL 98**

**May 18, 2020**

Dear Brothers and Sisters:

We are writing to provide you with notice, as well as the details of the nomination procedures for the nomination of officers, and nomination and election of the Election Board, to be held at 1719 Spring Garden Street on Tuesday, June 9, 2020, as well as the election of officers, to be held on Saturday, July 11, 2020.   The nomination of officers and the nomination and election of the Election Board, if needed, will be the only order of business on June 9.

Due to the limitations placed upon us by the City of Philadelphia and Commonwealth of Pennsylvania, and to conform with CDC guidelines, strict protocols will be in place for the nomination meeting.   The Union Hall and our surrounding property will be thoroughly cleaned and disinfected before the meeting, members will be required to wear masks to the meeting, admission of members to the meeting will be staggered to assure that social distancing is maintained and the meeting room will be set up so as to assure that all members can maintain a social distance of at least 6 feet at all times. Hand sanitizer will be available. Members should not congregate in the parking lot or on the sidewalks before or after the meeting. Members who have symptoms that may be related to COVID-19 (such as fever, cough, or shortness of breath) should not attend the meeting.

NOMINATION FOR ELECTION OF OFFICERS OF LOCAL 98 AND NOMINATION AND ELECTION OF ELECTION BOARD - nominations shall take place on June 9, 2020, beginning at 7:00 p.m. at the Union's offices at 1719 Spring Garden Street. Acknowledgments of willingness to be nominated for office must be received by the Union no later than 5:00 p.m. on June 9, 2020. Election of the Election Board, if required, will take place at the conclusion of the nominations. One (1) Election Judge and 4 tellers will be elected.

ELECTION OF LOCAL 98 OFFICERS – the election of Local 98 Officers shall take place on July 11, 2020 at 1719 Spring Garden Street, between the hours of 8:00 a.m. and 4:00 p.m. The officers to be elected are: Business Manager/Financial Secretary, President, Vice President, Recording Secretary, Treasurer, 5 Executive Board positions and 3 Examining Board positions. If you will be unable to visit the polls on election day, you may apply for an absentee ballot by writing to the Election Board at 1719 Spring Garden Street.  Your application must be received by the Election Board between June 12 and July 6, 2020. Installation of officers will take place at the July 28, 2020 membership meeting. If needed, a run-off election will be held at the same times and at the same location on August 1, 2020.

ELIGIBILITY FOR OFFICE OR FOR ELECTION BOARD – no member shall be eligible for office or for the Election Board unless he/she has been a member of Local 98 in continuous good standing for at least two (2) years prior to June 9, 2020. No candidate for office will be eligible to serve on the Election Board.

Michael Masciulli, Recording Secretary

U.S. Department of Labor                                    Attachment "B"
170 S. Independence Mall West
Suite 600
Philadelphia, PA 19106
Regional Administrator
Crystal L. Guy

Regional Administrator Guy,

We are requesting your immediate intervention to our Local Union 98 elections. We need your assistance NOW, as time is of the essence. We were recently notified that union nominations will be held on Tuesday, June 9th at 7:00 pm. Our current administration is under federal indictment for corruption, and the corruption flows through many offices, boards, committees and joint committees with contractors. Our hard-earned money is being stolen from our union's funds, including but not limited to: our general fund, apprentice training fund and our COPE fund, which is optional but MANDATORY upon further review.

**Due to an ongoing corruption investigation, global pandemic, and civil unrest in our city, we request you to force a postponement of this election.**

The Business Manager is rushing this election cycle to once again guarantee himself ultimate control of our union finances. We the paying members have no idea how our money is being spent and are not even allowed to question the Business Manager without fear of reprisal. After being indicted on stealing from union funds he made himself the Unions Financial Secretary. This is not right.

In the recent 116 count indictment, the lead prosecutor used phrases like, falsified documentation, abuse of trust, embezzlement of union assets, falsification of annual financial reports etc. These instances directly implicate Local 98's Business Manager in abusing his position of power for his own benefit. As Michael Harpster, FBI Special Agent in Charge, stated, "This indictment is NOT a case against local 98... John Dougherty is not pro union and does not honestly represent the interests of all of 98's membership." **This statement by agent Harpster indicates that the Business Manager is unfit to hold any position within Local Union 98.**

It is my understanding that multiple letters outlining the wide-spread corruption within Local Union 98 have been distributed to the International Union, The Department of Labor, The Federal Bureau of Investigation, The Department of Justice and other organizations. It appears, from prior indictments, and recent sealed indictment pleas, that the Department of Labor, the Federal Bureau of Investigation and the Department of Justice are trying to do the right thing to protect the "blue collar" workers of Local Union 98, and we the members of Local Union # 98 IBEW are extremely appreciative.

Despite the recent investigation and charges by the FBI, IRS and DOJ against the Business Manager and his Administration, nothing has been done by the International Union.

It is appalling that the International Electrical Union, who has been notified of all of these allegations for over FIVE years, has not, is not and will not do anything to protect OUR workers. This is a pure dereliction

D 00059

of their international responsibility to oversee its local unions and protect the very workers that they mandate union dues from.

Additionally, LM-2 reports are required to be filed by every union across the country for the protection of their workers' funds. I find it abhorrent that the International Union has neglected its fiduciary responsibility in properly auditing Local 98's filings of these LM-2 reports. It is our understanding that Local-98 has not filed an LM-2 report for 2018, 2019 and 2020. In other words, the International Union is looking the other way. We need accountability now before all of our funds are misappropriated.

Instead of leading by example, the international is waiting for federal agencies to do their jobs. With all of the known information about the Business Manager from the Federal indictment, why hasn't he been removed from office? We constantly ask ourselves if this is because the corruption runs deeper than the local union.

Hawaii's IBEW local 1260 Business Manager Brian Ahakuelo was dismissed from his duties by IBEW International Vice President John O'Rourke for similar, but LESSER allegations. This is LEADERSHIP. VP O'Rourke received the complaints reviewed the LM-2's and executed his sworn duty to protect the Electrical workers of Hawaii.

Again why did the former 3rd District Vice President protect Local 98's Business Manager by not auditing this local union as required? Why is the current IBEW International administration including but not limited to the 3rd District Vice President protecting him?

If this local union election is allowed to be held, the Department of Labor will be, in effect, endorsing the current corrupt administration. The members of Local Union 98, respectfully request that you, the Department of Labor immediately postpone this election until after the federal trial or completely regulate, formulate and oversee the entire election process since the International Union is turning a blind eye.

With the current COVID-19 pandemic, the current administration will stifle the election count and rig the results. They will make excuses as to why voters should not come to the polls due to social distancing, which will mentally discourage our members from participating in a fair election process. No one wants to wait in line for five hours to vote, especially during these times.

Our members are afraid. Not only are they afraid of the issues plaguing our society currently, but also they are concerned about in person voting, which could increase their likelihood of becoming sick or affecting their family. The intimidating atmosphere of the election site creates fear as members MUST vote for a candidate backed by the Business Manager or face reprisal.

We need a fair election. We need an election free from personal intimidation and fraud. We need an election with as many members participating as are willing and feel safe. An election that has the full oversight of the Department of Labor will ensure a fair election occurs.

**As you can see, we NEED YOU the Department of Labor!**

With the current events it appears that you have our back. Please reaffirm it with this election. If you give us a fair, safe voting method, we will vote our choice into office. Good, bad or indifferent, the election will be the will of the full membership, not the dictatorship of the Business Manager and his current administration.

Below is our proposal for a fair election run by the Department of Labor:

DOL postponement of the election due to COVID-19 challenges, civil unrest and the current federal investigation.

DOL structuring of the nomination process, collecting the nominees, and publishing of the nominees to the membership.

DOL structuring of the campaign process and oversight of an independent firm (not the current printer) to provide safe and timely mailing of campaign literature to the members of Local Union 98.

DOL structuring the mail in voting process, collection and counting of votes, and reporting the vote count to the membership.

We ask for a process run by the Department of Labor for many reasons. Our main complaint stems from the fact that during the current administrations reign, we the members feel like the "system" has been stacked against us.

The Business Manager has relationships with the union's current printer. As a result, a new printing company must be responsible for all mailings and election related material.

There are concerns that literature from opponents of the Business Manager can be "leaked" to the Business Manager's team. If this is the case, the Business Manager's team would have an advantage and know what their competitor's issues were. With this information the current administration can make similar assertions or claims about their opponent, in affect rendering the opposition claims moot. It is also possible that there could be delays in the mailings of the opponents' literature until the Business Manager has time to formally send out his own mailings in advance of his opponents.

It is important to note that members have complained of schemes that go as far back as the Ed Foley and Paul Gilmore era, which is over 25 years ago. In older members opinions the Business Managers' intimidation has gone unchecked and has progressed steadily over the years.

In addition to the possibilities of rigging the voting process through his relationships, the Business Manager has unfairly used the law enforcement and judicial systems to his advantage in elections. In the 2014 election the DOL was asked to oversee the election after allegations of intimidation and election trickery and the DOL provided guidance in this instance.

The election saw Kenny Rocks run for a spot on the executive board without the Business Manager's approval.

During this futile attempt to run against the Business Manager's Team, Kenny Rocks' rights were violated. There are accusations that the Business Manager's Team pulled strings in the law enforcement and judicial systems to unseal Mr. Rocks' court records to use this information against him. This information, that was previously sealed, was used to accuse him of domestic violence. This information then was used by the Business Manager's Team and mailed out or conveyed to local 98 members in an effort (which worked) to paint this poor man as a spouse abuser. It was then that the Department of Labor was called in during the 2014 election.

Unfortunately, the election process favors the incumbent party. The judge of elections is voted in, (in reality selected by "the Business Manager") and is supposed to be in sole custody of the balloting system.

Unfortunately, the election process favors the incumbent party. The judge of elections is voted in, (in reality selected by "the Business Manager") and is supposed to be in sole custody of the balloting system. Due to the Business Manager's sphere of influence most members are intimidated into not participating in the voting process. It is also alleged that the Business Manager on many occasions has stated that "there is not an election that we cannot win since we count the votes".

Purportedly, the Vice President, his lead intimidator, makes sure that the count goes as planned. This Local Union administration is ripe with corruption. Once again the fox is watching the hen house. We need independent oversight, Transparency, Honesty.

EVERY VOTE SHOULD COUNT, OUR MEMBERS SHOULD FEEL THEIR VOICES ARE BEING HEARD.

Additionally, the Business Manager was named in a recent newspaper article. The article stated that Local Union 98 paid a convicted felon with union funds, who was a former City of Philadelphia councilman and is infamous for his role in accepting bribe money in the ABSCAM case. The same person mentioned in the article is believed to be currently involved in an election fraud case, where Dominick DeMuro fixed elections and pled guilty to federal charges.

We, the members of IBEW Local Union # 98, have contacted our International Union numerous times to no avail. All of our complaints have fallen on deaf ears.

Our International Union is complicit in the corruption that has beset our Local Union, and we request that you open a formal investigation into the International, specifically former the 3rd District Vice President. The 3rd District Vice President has recently retired from the international and is now receiving a hefty monthly stipend from Local Union 98. We presume this is "hush money" for the many misdeeds that occurred on his watch, or a gift from the Business Manager for former VP Siegel's current influence peddling to keep the heat off of the Business Manager. If LM-2 forms were filed properly by the Local 98, these payments would appear on record.

I am sure that when you investigate, you will find items like payments to the former 3rd District Vice President commonplace. For example, payments to operatives being disguised as "consultants fees", member intimidation, union charges to cover up federal crimes and ghost employees.

Moreover, the recent indictment of the Business Manager Dougherty indicated theft from union funds to fix properties owned by the Business Manager, the President and the Director of Apprentice Training. All under the guidance and approval of the Apprentice Training Committee members and co-conspirators. The people with a fiduciary responsibility to the organization have failed our Local Union.

Please help us right our ship, as the load is too heavy to bear! We truly need your help.

**Postpone the election and structure an unbiased mail in election process to deliver a fair vote without the Business Manager's thumb on the scale.**

Thank you for any assistance that you can provide.

Charles Battle

Cc:

| | | | |
|---|---|---|---|
| Mr. Lonnie Stephenson | IBEW International President | USPS Certified | 7020 0640 0000 6202 0072 |
| Mr. Kenneth Cooper | IBEW International Sectary | USPS Certified | 7020 0640 0000 6202 0096 |
| Mr. John Newman | IBEW Counsel | USPS Certified | 7020 0640 0000 6202 0102 |
| Mr. Michael Welsh | IBEW 3rd District VP | USPS Certified | 7019 1640 0001 6792 7208 |
| Mr. Randy Keifer | IBEW 3rd District Rep. | USPS Certified | 7020 0640 0000 6202 0065 |
| Crystal L. Guy | U.S. Department of Labor | USPS Certified | 7019 1640 0001 6792 7192 |
| Bindu George | U.S. Department of Labor | USPS Certified | 7019 1640 0001 6792 7215 |



# Exhibit 2



**Randy L. Kieffer**
9 Ridge Crest Drive
Fleetwood, PA. 19522
(610) 207-2215
Randy_Kieffer@ibew.org

July 24, 2020

RE: Assignment –   Interview Local Union #98 member Tim McConnel
regarding nomination of officers.

Mr. Michael D. Welsh
International Vice President
International Brotherhood of Electrical Workers
500 Cherrington Pkwy., Suite 325
Coraopolis, PA 15108

Dear Sir and Brother:

After an investigation of this matter and conversation with Local Union #98 member Tim McConnel,
I offer the following report.

While investigating the complaint from Local Union #98 member Charles Battle regarding his claim
of intimidation from Business Agents of Local Union #98 prior to Local Union nominations Brother
Battle alluded to the fact that he was not the only member that was being bullied into not running for
office. Brother Battle told me there were two other members that were considering running for office
at the upcoming elections but did not because of intimidation from officers and members.  I asked
Brother Battle if these two members would be willing to talk to me about their experiences. At first
Brother Battle told me that it is not likely they would talk to me because of fear of reprisal from the
sitting officers but he would contact these members to see if they would be willing to speak to me.

This conversation with Brother Battle regarding me speaking to other members about their
experiences regarding the nomination process took place on July 6,2020. Not hearing back from
Brother Battle for quite a long time I took for granted the other members were not interested in
speaking to me. However, on July 20, 2020 Charles Battle called me and told me that a Local Union
#98 member that felt intimated to run for office would speak to me and Brother Battle gave me the
phone number of member Tim McConnel.

I spoke to Brother McConnel on July 22, 2020. Brother McConnel told me that he considered running for an executive board position in the Local Union #98 elections. He told me he was not running with a ticket and was not assisting Charles Battle with his campaign. Brother McConnel stated he considered running for an e-board position because he just thought he could help Local Union #98 move forward. Brother McConnel announced his intention of running for office to his friends and other on the job he was working.

Brother McConnel said it was about that time he started to hear that the sitting officers did not want him to run for office. Brother McConnel said he got a phone call from Local Union #98 Business Manager John Dougherty and they spoke about 45 minutes about upcoming nominations. Brother McConnel said Business Manager Dougherty did not directly threatened him not to run for office, but the conversation made him "Feel Funny." This conversation consisted of things like why change officers when things are so good and working well. Brother McConnel said the only thing that could have been taken as intimidation was Business Manager Dougherty said "if you lose the election it could be a long three years, not knowing exactly what that meant it made him reconsider running for office.

Brother McConnel is personal friends with Jim Ryan who is the owner of a Local Union #98 signatory contractor Par 4 Electric. Brother McConnel also works for Par 4 Electric quite often. Brother McConnel told me that Business Manager Dougherty and Local Union #98 Agent Brian Eddis had a conference call with Jim Ryan regarding Tim McConnel running for e-board and how that may not be good for the Local Union. Again, Brother McConnel said there were no direct threats but again made him feel uncomfortable.

Brother McConnel told me that even though there were no direct threats he felt that it would be best for him not to run for office. Brother McConnel said his brother in-law was a Local Union #98 apprentice and he was good friends of Par 4 Electric owner Jim Ryan and even tough there were no direct threats he was worried there might be some reprisal against himself and his friends and family if he continued to pursue office.

DOL_LOCAL 98_00249

I asked Brother McConnel if our conversation was an official complaint claiming intimidation of a candidate running for office. Brother McConnel said he personally made the decision not to run and does not want to file an official complaint and is not interested in pursuing any type of charges. Brother McConnel told me he was not apart of the complaint from Charles Battle but apparently, he just wanted to discuss the issue with someone.

If you have any questions or require additional information regarding this matter please contact me.

Best wishes,

Fraternally yours,

*Randy L. Kieffer*

Randy L. Kieffer

International Representative IBEW

# Exhibit 3



**Randy L. Kieffer**
9 Ridge Crest Drive
Fleetwood, PA. 19522
(610) 207-2215
Randy_Kieffer@ibew.org

July 28, 2020

RE: Assignment – Case Flow # 58437, Charles Ballie, a member of
IBEW Local Union #98, complains about the manner in which the
nominations of officers for Local Union #98 was handled.

Mr. Michael D. Welsh
International Vice President
International Brotherhood of Electrical Workers
500 Cherrington Pkwy., Suite 325
Coraopolis, PA 15108

Dear Sir and Brother:

After an investigation of this matter and several conversations with Local Union #98 member Charles
Battle, Local Union #98 President Brian Burrows, Local Union Business Agent Bob Bark and Local
Union #98 council Tara Chupka, I offer the following report.

Because of the nationwide pandemic and restrictions of gatherings in Pennsylvania it became the
responsibility of the Local Union #98 executive board to monitor conditions and abide by restrictions
set by the State and the City of Philadelphia to safely conduct Local Union nominations and elections.
Local Union #98 had to cancel the normal May nomination to a date and time when the Local Union
can comply to all State mandates and CDC guidelines to have a safe nomination and election process.

The Local Union #98 Executive Board designed a nomination meeting that was set for June 9, 2020
that they felt would be safe for all participants and comply with all CDC and the City of Philadelphia
guidelines. The nomination notice (Attached) was sent in a timely manner. The special nomination
meeting was designed that only candidates and members that want to nominate a candidate should be
present at the meeting for safety. No one was denied access to the meeting.

The notice may not have been clear to some people since no one ever designed a nomination meeting during a pandemic. The executive board tried to design a nomination meeting so someone running for office could fill out a nomination form that would be read at the meeting and or just get nominated at the special nomination meeting. The nomination form is attached.

In my conversation with Brother Battle he told me he arrived at the union hall with the belief of having a few members there to support his candidacy but when he arrived these members no longer wanted to support his candidacy. Brother Battle said his two supporters were intimidated by some members and business agents not to support his candidacy. I asked Brother Battle if these members would be willing to talk to me regarding the allegations of intimidation, but none are willing to speak to me.

At the nomination meeting Brother Battle was given the nomination paper (attached) and on this paperwork there is a line that lists nominee and nominator. Brother Battle stated to me in our discussion that he intended to nominate himself for President. After he read the notice, he thought he might need a nominator to run for office but after discussing this with him he told me he didn't ask anyone, nor did anyone tell him he had to have a nominator to run for office. He was relatively sure he could nominate himself but not positive. No officer gave him any advice, nor did he ask anyone for advice, and he questioned himself if self-nomination was satisfactory. Brother Battle left the union office with the nomination paperwork and sat in his vehicle contemplating what to do and he decided not to return with the paperwork and decided not to attend the 7:00 PM meeting. Brother Battle left the premises.

Brother Battle also claims that he should have been able to review all the nomination paperwork that others seeking office submitted. He claims that if it had been a normal in-person nomination meeting he would have been able to see who else was running for office and for what office they were seeking. If Brother Battle filled out the nomination form he would have been given admission to the meeting and at the meeting he could have seen who was nominated, no differently than any other meeting. The only difference is admission to the nomination meeting was limited and candidates had to, consistent with the nomination notice, complete an acknowledgement indicating a willingness to run in advance. This was done so the Local Union could attempt to control the size of the meeting in light of the COVID-19 crisis and City of Philadelphia regulations.

Brother Battle asserts that a sign at the door may have been a ploy to intimidate him not to enter the building because it said that he would need three people present. The sign said that only the candidate, nominator and member seconding the nomination would be allowed into the building. That sign did not mean that a candidate must have had a nominator and a second to enter, but rather only that all three types of individuals, and only those, would be admitted. The nomination form did not require a second, and if Brother Battle had any question whether he could nominate himself, he could have inquired. But he chose not to do so and left the building.

DOL_LOCAL 98_00252

Brother Battle may have been confused but he could have self-nominated himself on the nomination paperwork or just attended the meeting and nominated himself. If he would have done either he would have been an official candidate for office. Brother Battle assumed on his own he wasn't eligible because he had no one listed as a nominator. He should have at least appeared at the meeting and asked for clarification from the chair where he could have self-nominated at that time.

In Brother Battles complaint letter and our talks, he claimed that he was intimidated not to run for office by several members and Local Union #98 Business Agent Bob Bark. I interviewed Agent Bark regarding the claims of intimation.

Several months ago, Brother Battle started voicing disapproval with the present officers and local union practices at General Meetings. Members voicing their opinion at General Union meetings is a very normal practice but after speaking to several officers it was unusual and out of character for Brother Battle to be so confrontational at general meetings.

Brother Battle portrayed that at about the same time he started voicing his opinion that a Local Union #98 Business Agent Bob Bark started showing up at his house unannounced to intimidate him. After speaking to Agent Bark, I found that Bob Bark and Charles Battle were personal friends for years. They went fishing together, went out to bars together and Agent Bark considered Brother Battle as a friend. The first time Agent Bark drove to Brother Battles house and called him from outside he asked Brother Battle to go out and have a beer together, Brother Battle went and had drinks with Agent Bark and they talked about what Brother Battle was so distressed about. Agent Bark told me he met Brother Battle as a friend and tried to understand his recent anger towards the Local Union #98 officers.

The second time Agent Bark went to the house of Brother Battle he was accompanied by Local Union #98 member Rich Kee. Agent Bark thought that he and Kee could talk to Brother Battle to find out why he was so upset at the officers and wanted to assist in resolving his concerns. Brother Kee accompanied agent Bark because several years ago, brother Kee and Agent Bark were living alone together and Brother Battle found out there both of them had nowhere to go for thanksgiving, he invited both Kee and Bark to have thanksgiving dinner with him and his family at his house. So portraying Bark and Kee to be just strangers showing up at Brother Battles house is misleading. But when Agent Bark and Brother Kee stopped at the house this time, they were met by Brother Battle who was very distraught and told them to get off his property. Agent Bark told me he apologized to Brother Battle and told him he thought they knew one another good enough to stop at each other's house and that he will never do it again. Agent Bark told me he never raised his voice and never threatened Brother Battle ever.

Agent Bark told me he believes Brother Battle is mad at the current officers since Brother Battle has a stepson that tried to become an apprentice in Local Union #98 but did not qualify for several years. Then after several years his stepson qualified and was accepted into apprenticeship then unfortunately failed a drug test and was terminated. The JACT told him he can apply again after a year and when he applied after a year he didn't qualify for that class. Brother Battle did mention this issue but assured me this has nothing to do with any of his complaints.

In closing, the COVID 19 pandemic has changed everything about our lives as we knew it. The world including the IBEW is working out how to live somewhat normally within our new confines. Most Local Unions that were scheduled to have nominations and elections in 2020 had to adjust to new policies and regulations to protect our members. Every Local Union had the ability to decide how and when to have nomination and election of officers if it was CDC compliant and safe for our members. None of my serviced Local Unions had normal election of officers' procedures this year and all had to adjust to the current conditions. I personally fielded complaints from members complaining about just about every aspect that was outside the normal procedure but it was necessary to keep our members safe.

I believe that if Charles Battle would have just asked someone about the out of the ordinary nomination procedures or attend the actual meeting. He then could have self-nominated and have ran for any office of his choice. Brother Battle may have felt intimidated, but the definition of intimidation can be subjective, and each individual has a different prospective of what is intimidation and what is just normal non threating interaction. The claim of intimidation is still not clearly proven and could have taken normal communication between members out of context and thought it may have been an attempt to intimidate.

If you have any questions or require additional information regarding this matter please contact me.

Best wishes,

Fraternally yours,

*Randy L. Kieffer*

Randy L. Kieffer

International Representative IBEW

# Exhibit 4



# International Brotherhood
# of Electrical Workers



**Michael D. Welsh,** International Vice President
500 CHERRINGTON PARKWAY, SUITE 325
CORAOPOLIS, PA 15108
(412) 269-4963  •  Fax (412) 269-4964

**Lonnie R. Stephenson,** International President
**Kenneth W. Cooper,** International Secretary-Treasurer

| New York | New Jersey | Pennsylvania | Delaware |
|---|---|---|---|

July 31, 2020

**By Certified Mail**
Charles Battle
2548 Brooke Road
Pennsburg, PA 18073

Dear Brother Battle:

This is in response to your letter dated June 16, 2020, in which you protest the election of officers for IBEW Local Union #98. Nominations for officers of Local #98 occurred on June 9, 2020. Because there was no more than one nominee for each office, the election scheduled for July 11, 2020, was not held, and those nominated were deemed elected.

In accordance with the IBEW U.S. Local Union Election Guide, p.7, "[a]ny member, including a defeated candidate, may challenge an election by filing a written protest with the appropriate International Vice President . . . within 30 days of the certification of the election results." Your June 16, 2020, letter was received by my office on June 22, 2020, and is a timely protest.

As you know, I assigned International Representative Randy Kieffer to investigate your protest. He has reported to me, and for the reasons set forth below, I deny your protest. Your protest raises six issues, each of which is addressed below:

1) You allege that Local #98's nomination notice was unlawfully vague and did not provide specifics with respect to seconding or nominating. You state that the Department of Labor's (DOL) guidelines state that whether a nomination is required to be seconded must be included in the notice.

DOL's regulations, rather than its guidelines, are binding. Those regulations state that the notice for nominations must be "reasonably calculated to inform members of the offices to be filled in the election as well as the time, place, and form for submitting nominations." 29 CFR § 452.56. Local# 98's notice unquestionably sets forth the offices to be elected, and the time and place for nominations. It also clearly stated that nominees would have to submit an acknowledgement of their willingness to be nominated, and when the acknowledgement needed to be received. I read your protest to contend that the notice needed to do more and was required specifically to set forth that you could self-nominate. I disagree.

Charles Battle
July 31, 2020
Page 2

First, the IBEW U.S. Local Union Election Guide does not require that the notice for nominations state that a member can self-nominate. Indeed, the Election Guide contains a model notice, which does not state whether a second is required, or whether a member can self-nominate.

Second, your contention regarding the guidance given in DOL's election guide is mistaken. That guidance states that the notice "should" include "details such as whether a nomination must be seconded . . . See Figure 3 – Nomination Notice." DOL's own model nomination notice that is referred to in the quote upon which you rely – " (Figure 3)" – does not state anything about whether a second is required. Therefore, at best, the guidance means that where a second is, in fact, required, that requirement should be set forth in the notice. But where, as here, a second is not required, and a member can self-nominate, those details need not be included in the notice.

2) You contend that Local #98's form required you to list a member who would nominate you, and another member who would second. Your protest states, "at this point it was clear to me that the rules had changed and that this was a pure attempt to intimidate me not to follow through with running for office."

First, if as you contend, "the rules had changed," then you can hardly contend that the notice was inadequate because you must have thought that you could self-nominate. Second, the form did not require a second. In fact, there is no place on the form to list anyone who would be seconding the nomination. Instead, the form sought the identity of the nominator and the candidate to be nominated. Although there are separate spaces for each, nowhere does the form indicate that the nominator and candidate have to be different people. Instead, if you wanted to self-nominate, you could have listed yourself in both spaces. You indicated to International Representative Kieffer that, although you were pretty sure you could nominate yourself, you questioned your own judgment. Then, rather than ask someone for clarification, you took the paperwork, went to your car to contemplate what to do, and then left. You did not return the paperwork, nor attend the meeting. Nor did you ask for clarification from anyone. If you had any questions about the forms, there were Local #98 officials present to answer them. But, instead of asking any questions, you simply left.

3) You assert that the sign that Local #98 placed on its door on the day of nominations, "was a ploy . . . to intimidate [you]" because it said that you would need three people present. The sign did not say that. Instead, it stated that only the candidate, nominator and member seconding the nomination would be allowed in. That doesn't mean that a candidate must have had a nominator and a second to enter, but rather only that all three types of individuals -- and only those – would be admitted. Again, if you had any question whether you could nominate yourself, you could have inquired. But you chose not to do so and left.

DOL_LOCAL 98_00262

Charles Battle
July 31, 2020
Page 3

4) You also contend that you should have been able to see who had filled out a form seeking office. You claim that if it had been an "in-person election," you would have been able to see who else was running. Presumably, you mean that if the nominations were in person, you would have been able to see who else had been nominated.

The nominations were conducted in person. If you had filled out the form, you would have been given admission to the meeting, and at the meeting you could have seen who was nominated, no differently than at any other meeting. Here, the only difference is that admission was limited, and candidates had to – consistent with the notice – complete an acknowledgement indicating a willingness to run in advance so Local #98 could control the size of the meeting in light of the COVID-19 crisis and City of Philadelphia rules.

5) You also claim that the member who was going to nominate you was intimidated by Local #98. That member, however, would not speak with International Representative Kieffer, and therefore, this allegation is without evidence. At your request, Representative Kieffer did speak to a member who said that he had contemplated running for office but had decided not to do so. That member said that he had considered running on his own, not as a part of a ticket, and did not assist you with your campaign. He also stated that he was not part of your protest, did not want to file his own, and had made his own personal decision not to run.

6) Finally, you allege that Local #98 business agent Bob Bark tried to intimidate you into not running, and when you thought about Brother Bark's actions, you left Local #98 on the day of nominations. The investigation showed that Brother Bark and you were, at one-point, personal friends for years. The first time Brother Bark came to your house, the two of you went and had drinks together. During that time together, Brother Bark tried to understand why you had become upset at recent general membership meetings. There is no evidence that Brother Bark tried to intimidate you into not running during that encounter. Subsequently, on another occasion, Brother Bark came to your house with Brother Rich Kee. At one point in the past, you invited Brothers Bark and Kee to your home for Thanksgiving dinner, and thus, you clearly knew Brother Kee. Regardless, when Brothers Bark and Kee came to your home to speak with you, you became angry and directed them to leave. They did so, and I do not find that either Brother Bark or Brother Kee came to your house to intimidate you into not running for office.

Charles Battle
July 31, 2020
Page 4

Accordingly, for the reasons set forth above, I am denying your election protest.  Pursuant to the IBEW U.S. Local Union Election Guide, this is a final internal union decision.

Best wishes.

Fraternally,

Michael D Welsh
International Vice President

MDW:jm

cc:     Randy Kieffer, International Representative

# Exhibit 5

<u>STATEMENT</u>

I, Charles Battle, residing at 8710 Lykens Lane, Philadelphia, PA 19128, make the following voluntary statement to Angela B. Menges and *Megan Underwood* who have identified themselves to me as Investigators of the Office of Labor-Management Standards, U.S. Department of Labor. Investigators Menges and *Underwood* have advised me that they are conducting an official investigation for the U.S. Department of Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).

I, Charles Battle, have personal knowledge of all of the facts in this statement.

I am employed as an electrician for Shaeffer Electric. I have been a member of IBEW Local 98 for 30 years.

I was going to run for president on a slate with Timothy McConnell and Michael Coppinger, both of whom intended to run for the executive board positions. I did not campaign because I did not want to tip my hand and get blowback from the local. My family would have been harassed, and I would have received phone calls from members and officers asking, "What are you doing?"

I have stood up during membership meetings and said some hard words for Business Manager John Dougherty. It's a disgrace the way the union is being run. It's a problem when members don't have a voice or say and are told 'Do as I say and shut up.'" Business Agent Bobby Bark has called me numerous times in the past after membership meetings asking, "What are you doing? Why are you asking questions?"

I got calls from Bark after the November 2019 membership meeting and after the January and February 2020 meetings. Bark also came to my job site and harassed me on two occasions. Bark showed up at my home after a membership meeting in January 2020 where I stood up and asked Dougherty if the local was going to get back money it had donated to a man who actually stole it. I was working in my garage when I received a phone call from Bark saying he wanted to speak with me. Bark told me he was standing in my driveway. My wife was scared because a union officer showed up at our house. I agreed to go out with Bark to get him away from the house.

One week before the nomination meeting, Bark wanted to talk with me over beers and I told him no. I kept asking Bark what he wanted, but Bark would not say. On Sunday, June 7, 2020 — two days prior to the nomination meeting — my doorbell rang at 8:30 p.m. Bark showed up unannounced and uninvited. I asked him, "What are you doing? I made it clear do not come to my house for this B.S.!"

Bark wants to know why I'm so upset with the union. I've said to Bark, "I can't ask questions without being harassed." Bark wants to know why I'm questioning their leaders, and I've told him I'm a dues-paying member and I have a right to do so. Ask any person in the local — they're afraid to stand up and ask questions. They're petrified of what's going to happen because you're not going to work. I'm currently working because my contractor knows Dougherty and

Initials: C B

Page 1 of 3

how he operates. However, I know guys who have been out of work two years because of Dougherty. One such member is Rob Mission. Once the unemployment rate gets so high, we go to a 50/50 list and solicit our own job (SOJ). You can't take a job unless the hall hires four guys off the list. If you take it, the contractor is going to pay a price, so the contractor is not going to hire you.

On June 7, 2020, the Sunday before the nomination meeting, I learned that McConnell and Coppinger, my intended running mates, were not going to run for office. McConnell told me that Dougherty talked to McConnell on the phone and said, "You're either with us or against us. If you're against us, it'll be a long three years."

I entered the union hall at 4:50 p.m. on June 9, 2020, and was handed a nomination slip by Local 98 Attorney Tara Chupka. The nomination slip asked for the name of the nominee and the office for which he was being nominated; the name, signature, and card number of the nominator; and the name, signature, and card number of the nominee. I completed the slip with my own information and gave the slip to Chupka. Coppinger, who was supposed to nominate me, had not yet arrived at the union hall to complete the nominator portion of the form. I told Chupka when my nominator arrived, he would fill out his portion. I did not tell Chupka the name of my nominator.

Word quickly spread that I had submitted my nominating slip. After I submitted the slip, I sat in my truck to wait until the nomination meeting began at 7:00 p.m. Ten minutes after submitting my slip, member David Kelly called and asked me if I was running for president. Kelly lives in Flourtown, Pennsylvania. I was blown away that the news had reached Flourtown so quickly. *CB* Sitting in my truck, I saw business agents going around talking to the crowd that had gathered. Member Dominic Bassiano said the business agents told him they heard he was going to nominate me for office. Bassiano had no idea I intended to run for office. I think the agents were fishing to find out who was doing what.

I sat in my truck until 6:40 p.m. and then went to the hall to meet up with members John Kerr and Phil Borthwick, who were among those gathered outside the union hall. At 6:50 p.m., *CB* Coppinger called Borthwick and told him he was not coming to nominate me. It was at that point → I learned that Coppinger had been intimidated out of running for office. Sometime between 5:00 *Nominating* and 6:50 p.m. on June 9, 2020, Coppinger received a phone call from his uncle, Ed Coppinger. Ed Coppinger used to be a Local 98 business agent. Dougherty had called Ed Coppinger, who relayed the message to his nephew Mike Coppinger. Mike Coppinger was told his career would be finished if he ran. Mike Coppinger is young and has a wife, child, and mortgage — a lot at stake.

When we learned Coppinger was not coming, Kerr and Borthwick expressed willingness to nominate me instead. However, I was scared for them. I told Borthwick, "We're cows walking to the slaughterhouse." We would have to walk the gauntlet, down a walkway past 300 guys to the hall. With this in mind, as well as both of my running mates now out of the race and having just learned Coppinger was not coming to nominate me, I was intimidated. I saw how aggressively they were trying to find out who nominated me. Out of 3,500-4,000 members in the local, they zeroed in that fast. I told Kerr and Borthwick, "Let's just leave and deal with this another day." Kerr later told me he was glad I decided not to run. I didn't know at the time that I could

Initials: *CB*

Page 2 of 3

nominate myself. If I'd known that, there's not a chance I'd put anyone else or their career in jeopardy. They'd already be out of work by now if they had gone through with nominating me.

I left at 7:05 p.m. without attending the meeting or attempting to do so. The local has a pattern of intimidating people out of running. If they're on the outs with a guy, the hall will tell the contractor, "The next five guys we send you are bums," so the contractor fires the guys. The owner of contractor Par 4 is good friends with McConnell and told McConnell this.

I declare under penalty of perjury that the foregoing statement consisting of three pages, each of which I have initialed, is true and correct.

| | |
|---|---|
| 10-13-2020 | _Charles Batts_ |
| Date | Signature |
| 10-13-2020 | _Ny (illegible)_ |
| Date | Witness Signature |
| 10/13/2020 | _Angela Menges_ |
| Date | Witness Signature |

Signed at: _OLMS - 170 S. Independence Mall West, Suite 760u_
                        Location          _Philadelphia, PA 19106_

Initials: _CB_

Page 3 of 3

DOL_LOCAL 98_00410

# Exhibit 6

STATEMENT

I, Timothy McConnell, residing at 119 Thorndike Road, Philadelphia, PA 19115, make the following voluntary statement to Megan Underwood and Angela B. Menges who have identified themselves to me as a District Director and an Investigator of the Office of Labor-Management Standards`, U.S. Department of Labor.  District Director Underwood and Investigator Menges have advised me that they are conducting an official investigation for the U.S. Department of Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).

I, Timothy McConnell, have personal knowledge of all of the facts in this statement.

I am an electrician and have been employed by the Gordon Group for a little over two years. I have been a member of IBEW Local 98 since 2004.

Everything was hush hush in the beginning with names as far as who was running for office. I knew from member Phil Borthwick that other members were thinking of running, including Charles Battle. I did not attend any of the meetings those members held because I wanted to keep to myself. I didn't want it getting back to the union. I tried to keep my intention to run to myself until the very end. There were times I had guys calling me asking, "Who's running? Who do you know?" I said nothing.

Initially, I was not completely certain I was going to run. I know a few of the Local 98 business agents and Local 98 Safety Director Mark Lynch. For that reason, I thought it might have caused some tension if I ran. I am a committeeman in the City of Philadelphia. I see the way things are handled if you go against John Dougherty.

My uncertainty also stemmed from what I heard other members endured in the past. Two terms ago in 2014 or 2015, two members tried to run for office and one of them, Ken Rocks, went through a lot of allegations against him because of it. It was hard for Rocks to find jobs after the election because there would have been repercussions if a company hired him. They'll put a steward on the job who will make the job harder to finish, and that costs the company. It's 50/50 — for every guy you hire, they give you one more who's bad. It's one thing after another. They figure out a way. Rocks had a good reputation and then couldn't find jobs after that. After that election, Rocks was brought up on internal union charges and was fined $50,000 for whatever they said he did. Rocks appealed the charges to the IBEW International and won — his charges were overturned. Local 98 has never had an election. Ken Rocks was the only one who ever ran for office in the years I have been a Local 98 member.

I had been thinking of running for an executive board position for about six months. I made my final decision to run on June 8, 2020, the day before the nomination meeting. I sent a text message to Safety Director Lynch on June 8, 2020, to let him know I was going to run. I have known Lynch since he was about 10 or 11 years old. I texted Lynch because I knew the business agents were going to be having a meeting at the union hall that night to discuss their potential opponents and their nominators and to try to devise a strategy for eliminating the opposition. I

Initials: *T.M*

told Lynch if anyone had questions they could call me. Five seconds later, Lynch called me from the union hall. I was in my backyard when I received the call.

Business Manager Dougherty got on the phone and talked with me for about 45 minutes. It was unusual because I had never talked with Dougherty like that before. I had only shaken his hand and exchanged a brief greeting with Dougherty a few times over the years. Dougherty asked me who I worked for. We talked about jobs, past business agents, politics, and who I was friends with. I don't even talk to any of the people he mentioned. I thought Dougherty was just trying to figure out where I was coming from. I knew the business agents were there and were probably listening. I heard one of the business agents say, "I never would've thought it was him."

Dougherty began the conversation by saying, "Tim, why are you running? Why do you want to fix something that isn't broken?" I told him, "John, obviously something is broken. There are federal charges against five or six people." Dougherty responded, "Don't worry about it. I'm gonna beat it."

Dougherty told me, "It'll be a long three years if you lose." Every time Dougherty would say a roundabout threat, I would tell him, "John, I get it." It got bad toward the end. Dougherty told me, "They're just trying to use you to run because they started this website." Dougherty was referring to a website called "Know the Truth About Your Union.com." I did not know about the website at that time. At some point Dougherty handed the phone back to Lynch. I then heard Dougherty screaming in the background. I thought Dougherty was reading a comment on the website. Dougherty took the phone back and shouted at me, "If you ain't with me, you're against me!" Dougherty went on screaming for 30 seconds and then hung up the phone before I had a chance to say anything. Despite this, I still planned to go through with running.

T.M. Got back on Phone ~~go~~ gave mark the Phone T.M.
Lynch ~~called me back~~ after Dougherty ~~hung up on me~~. After that call, my phone blew up. I sat in my backyard for four hours fielding non-stop phone calls. I received a phone call from Business Agent Rodney Walker later in the evening. I probably received 100 calls that night.

I called Battle and Borthwick to tell them what happened. They told me to get in touch with member Mike Coppinger. I did not know Coppinger but knew he was thinking of running for office. Coppinger told me he was taking a nap and woke up to 50 calls. Coppinger told me, "I'm out. It ain't worth it." I was surprised because all along Battle and Borthwick said Coppinger was 100% in. I'm not certain why Coppinger did not run, but I'm sure Coppinger got a call. Coppinger's uncle was a Local 98 business agent for years and was around the office a long time. I guess Dougherty probably reached out to the uncle who probably called Coppinger. Coppinger has young children, and that may have factored into his decision not to run. Once Coppinger was out, it was down to me, Battle, and the other guy I did not know. The other guy also dropped out, but I did not know anything about it. Once everyone else dropped out, I did too.

Dougherty also got to me through my friend James Ryan, who owns a company called Par 4 Electric. I have worked for Ryan six or seven times. On the same night as my call with Dougherty, Ryan was contacted by Brian Eddis, who is a Local 98 member and a local politician. According to Ryan, Eddis called Ryan and while on the phone with Ryan, Dougherty got on the phone. Dougherty told Ryan, "Call Timmy. We don't want to see Timmy get hurt by doing this." I took that as losing jobs — not physically hurt, but I more or less knew he meant

Initials: T. M

financially. I think Dougherty probably started looking up what jobs I had worked. I talked with Ryan the following morning, June 9, 2020. Ryan said to me, "I guess you decided to run." Ryan said he told them, "Timmy's a grown man. There's nothing I can say to change his mind." They also called Paul Diaz, a steward with whom I worked for three years.

I ultimately decided not to run because I did not want to jeopardize my job. Business Agent Bobby Thompson runs the downtown Philadelphia area, where I work along with 40 to 50 other members. They can always whisper in the foreman's or owner's ear, "I want you to lay this guy off." This has happened to many members, but Rocks is the one who went through it the most. People have been removed from different jobs at some points, but there's no way to prove that it happens — you'll never be able to. Dougherty sends people to do it. I cannot afford to lose my job because I have four young children. I would have a financial hardship. They would take my job if I ran.

I was also thinking about my brother-in-law who is a second period apprentice. I just got him into Local 98 one or two years ago. Safety Director Lynch and Business Agent Rodney Walker helped me. I knew that Dougherty knew about my brother-in-law. My brother-in-law is still in school, and I thought Dougherty could possibly fail him or somehow figure out how to get to him too. My other brother-in-law works for Hatzel & Buehler, an electrical company. I was more afraid for my brothers-in-law than for myself. That's pretty much what held me back from coming out earlier about running for office.

Sometime between lunch and the end of the day on June 9, 2020, I received a text message from an unknown number. I was included in a group text with 13 other phone numbers I did not recognize. The text contained a link to the website, "Know the Truth About Your Union.com." I did not know the site existed until I received the text. Safety Director Lynch sent a text message to me asking, "Why did someone send you this website?" Someone in that group obviously already sent the message back to them.

I sent a text message to Safety Director Lynch and told him, "I don't want it to be personal. I'm out because I don't agree with what's on that website." After Dougherty screamed at me about the website, I went onto the site to see what it was about. Someone had made a comment about Dougherty's wife to the effect of, "John hides behind his sick wife." I believe Dougherty looked at the website and thought of me as "You're with them, so you're a part of it."

I am out because of how nominations went and because multiple people told me the same story, that they know Dougherty — he's bigger than all of them. He'll go above them. He'll find a way. Everyone knows how it is. No one's going to run. Once Dougherty is gone, you'll see 100 people running for office.

Initials: T. M.

DOL_LOCAL 98_00412.3

I declare under penalty of perjury that the foregoing statement consisting of four pages, each of which I have initialed, is true and correct.

10 / 15 / 2020
Date

_Signature_

10-15-20
Date

Witness Signature

10/15/2020
Date

Angela Menges
Witness Signature

Signed at: _OLMS - 1835 Market St, 21ˢᵗ Fl, Philadelphia, PA_
Location

P103

Initials: _T.M._

Page 4 of 4

DOL_LOCAL 98_00412.4

# Exhibit 7

<u>STATEMENT</u>

I, Philip Borthwick, residing at 4002 Pechin Street, Philadelphia, PA 19128, make the following voluntary statement to Angela B. Menges and _Megan Underwood_ who have identified themselves to me as Investigators of the Office of Labor-Management Standards, U.S. Department of Labor.  Investigators Menges and _Underwood_ have advised me that they are conducting an official investigation for the U.S. Department of Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).

I, Philip Borthwick, have personal knowledge of all of the facts in this statement.

I am employed as an electrician for the Gordon Group. I have been a member of IBEW Local 98 since October 1996.

After Charles Battle began asking questions at membership meetings in November 2019, people began to talk. Battle, Timothy McConnell, and Mike Coppinger all wanted to see change in the union. About six months before the nomination meeting, little garage meetings were held. In our neighborhood, we might've had 15 people at our garage meeting. Coppinger told me he had 60 to 80 guys show up at his garage meeting. McConnell was in the middle like me. McConnell eventually said, "Maybe I'll jump in," meaning run for office. McConnell is more knowledgeable than most members and understands politics.

Someone leaked about the garage meetings and it got back to Dougherty. Dougherty said, "Stop everything. I want to know what's going on." Dougherty sent his business agents to Coppinger and they asked him, "What's going on? Why are you having these meetings?" They did not realize Coppinger was thinking of running for office. _or Coppinger PB._

I was trying to keep Battle and McConnell a secret, but eventually I decided to connect them with each other. When Battle appeared to be moving ahead with his plans to run for office, I said to him, "Mike's in. Why don't you guys talk to each other? You know, strength in numbers." I did not know which position Battle wanted until the last minute. You have to keep quiet because Dougherty will put the fire out before it even starts. You're better off leaving it until the very end because they'll discredit you right off the bat. It happened so fast — Dougherty got to Battle through other guys. That's how far he'd go to make sure these guys didn't run.

No one was going to try to take Dougherty's position. Battle was going to run for president. The president and vice president positions are the weakest; they rubber stamp everything. Dougherty has them all in his pocket. McConnell was going to run for an executive board position. I thought Coppinger was also going to run for an executive board position, but Coppinger never really said it. Coppinger was the key because he and Battle have great reputations. Everyone thought, If Coppinger runs, that's the game changer. Coppinger is a great guy and is very funny. If anyone scares the union the most, it's him because he's so well-liked — he comes with votes. He was the biggest one they wanted to shut down because of those votes. McConnell knows a lot of people, but not as many as Coppinger and Battle.

Initials: _PB_.

Page 1 of 3

I arrived at the union hall on June 9, 2020, around 5:00 or 5:30 p.m. There were about 150 people on the grounds of the union hall that night, all from Dougherty's neighborhood. That's what Dougherty does — he fills the hall with his supporters. I knew from the nomination notice that members had to give advance notice if they wanted to attend the meeting. They had to go into the building where all the business agents were. Battle entered the building and filled out a paper. They knew he was coming; they expected it. After he filled out the paperwork, Battle was nervous and pacing, wondering what was coming.

I stayed on the grounds of the union hall until about 7:30 or 8:00 p.m. I was waiting for Coppinger to arrive, as it was still up in the air with guys going in to get nominated. I knew at that point McConnell was not coming. Coppinger showed up minutes before the meeting started. Battle was really counting on Coppinger to nominate him. If there was anyone they couldn't shake, it would be Coppinger. Coppinger knows everyone. When Coppinger showed up, he called McConnell and told him, "I'm out," meaning he was not going to run for office. Coppinger never put his paperwork in to run.

I called Battle, who was in his car, and told him Coppinger was out. Battle was angry that they had gotten to Coppinger. The only saving grace was only a few people knew who was nominating Battle. I told Battle, "We're like lambs going to slaughter." Battle told me, "I don't want to put you or your job in jeopardy," and I respected him for that. If OLMS were to supervise a rerun election, I would nominate Battle.

Kerr also backed out of nominating Battle because Kerr was scared. I did not know who was going to nominate McConnell or Coppinger. I would have nominated them until I saw what happened to Coppinger. Coppinger looked scared to death. ~~I'd never have thought~~. ~~If someone jumped me or wanted to fight me, Coppinger would be all in~~. But Coppinger does not have a lot of money. He's got three kids, a mortgage. What would he do without benefits? I wondered why Coppinger even put up a fight to begin with. *P.B.*

I thought about Kenny Rocks. I thought, What'll happen to me in a month or six months down the line? I'm usually the last to be laid off, then suddenly I'd be the first — like Kenny Rocks. Rocks suffered retaliation after an OLMS-supervised election in 2014. Rocks had protested the initial election to OLMS and was ultimately a defeated candidate in the supervised election. Rocks was out of work for quite a bit and had a hard time getting work. This was a retaliatory measure by the union. Dougherty doesn't care about you or your family. He chokes you off financially and lets everyone know. No one has ever opposed Dougherty. Rocks was the only one ~~in 20 years.~~ *SINCE I WAS IN the local to ever challenge DOC. P.B.*

McConnell and Coppinger were both intimidated out of running for office. The union figured out who was who by calling around. McConnell told me he got a phone call one or two days before the nomination meeting from Dougherty. Dougherty never calls from his own phone. They all have burner phones. We joke and call them the "Bat phones." When McConnell got the phone call, he called Coppinger. McConnell said he was on the phone with Dougherty for about an hour. He said at first the call was cool — everything was fine. They were talking politics and Dougherty was talking about what direction he was going. He was talking to McConnell because McConnell knows people. McConnell said Dougherty was reading the website "The Truth About Your Local.com" and suddenly started cursing. He said to McConnell, "Make your effing mind up — you're either with me or against me!"

Initials: *P. B.*

Page 2 of 3

Brian Eddis, a politician, delivered a message to McConnell from Dougherty: "You've got a lot of years left and you won't be working for a lot of them." McConnell is also friends with an electrical contractor who owns a company called Par 4. They said we'll run this guy out of business if McConnell runs for office. I could tell McConnell was shaken — I could hear it in his voice he was scared. I asked McConnell, "You're not even going to *try* to run?" McConnell said, "Nope. I'm out."

I called Coppinger after the nomination meeting. I know who talked Coppinger out of it and what they said. Coppinger has been with a contractor for nine years, which is unheard of, and he could not risk losing that. I have never had anything happen to me personally. I don't feel physically threatened because I can handle a physical altercation. But you don't do it to a guy financially.

I declare under penalty of perjury that the foregoing statement consisting of three pages, each of which I have initialed, is true and correct.

| Date | Signature |
|---|---|
| 10/15/20 | _Phillip Borthnest_ |
| 10-15-20 | _(Witness Signature)_ |
| 10/15/2020 | _Angela Menges_ (Witness Signature) |

Signed at: OLMS- 1835 Market St., 21st Fl., Philadelphia, PA
19103
_Location_

Initials: _P.B._

Page 3 of 3

# Exhibit 8

**LAMB McERLANE PC**
Joseph R. Podraza, Jr., Esquire (ID No. 53612)
William H. Trask, Esquire (ID No. 318229)
One South Broad Street – Suite 1500
Philadelphia, PA  19107
(215) 609-3170
(610) 430-8000



*Filed and Attested by the*
*Office of Judicial Records*
*20 AUG 2020 04:18 pm*
*M. RUSSO*

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| IBEW, LOCAL 98, ROBERT BARK, And ROBERT THOMPSON, | : : : | |
| | : | IN THE COURT OF COMMON PLEAS |
| *Plaintiffs*, | : : | OF PHILADELPHIA COUNTY |
| v. | : : | Trial Division |
| CHARLES BATTLE,  JEANETTE BATTLE, ADMINISTRATOR www.thetruthaboutyourlocal.com www.truthaboutyourlocal.com, COMMENT, www.thetruthaboutyourlocal.com www.truthaboutyourlocal.com, *et al.*, | : : : : : : : : : | July 2020 Term No. 001106 |
| *Defendants*. | : : | |

## NOTICE TO DEFEND

### NOTICE

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**
*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

### AVISO

**Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**
*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
TTY (215) 451-6197

*pagar tal servicio. Vaya en persona o llame por*
*telefono a la oficina cuya direccion se encuentra*
*escrita abajo para averiguar donde se puede conseguir*
*asistencia legal.*
**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
TTY (215) 451-6197

**DOL_LOCAL 98_02688**   Case ID: 200701106

**LAMB McERLANE PC**
Joseph R. Podraza, Jr., Esquire (ID No. 53612)
William H. Trask, Esquire (ID No. 318229)
One South Broad Street – Suite 1500
Philadelphia, PA  19107
(215) 609-3170
(610) 430-8000                                           *Attorneys for Plaintiffs*

| | | |
|---|---|---|
| IBEW, LOCAL 98, ROBERT BARK, And ROBERT THOMPSON, | : | |
| | : | |
| | : | IN THE COURT OF COMMON PLEAS |
| *Plaintiffs*, | : | OF PHILADELPHIA COUNTY |
| | : | |
| v. | : | Trial Division |
| | : | |
| CHARLES BATTLE,  JEANETTE BATTLE, ADMINISTRATOR | : | July 2020 Term |
| www.thetruthaboutyourlocal.com | : | No. 001106 |
| www.truthaboutyourlocal.com, | : | |
| COMMENT, | : | |
| www.thetruthaboutyourlocal.com | : | |
| www.truthaboutyourlocal.com, *et al.*, | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

**COMPLAINT – CIVIL ACTION**
(***Tort – 2L: Libel and Slander***)

Plaintiffs, International Brotherhood of Electrical Workers, Local 98 ("Local 98"),

Robert Bark and Robert Thompson, bring this action for defamation against Defendants, Charles

and Jeanette Battle, H/W, and Administrator(s) and Anonymous Commenters of the websites

www.thetruthaboutyourlocal.com  and/or www.truthaboutyourlocal.com, and in support thereof,

aver as follows:

1

 Case ID: 200701106

*Introduction*

1.     This defamation action arises out of false and defamatory statements concerning Local 98 and Messrs. Bark and Thompson, officers of Local 98, published by and on www.thetruthaboutyourlocal.com and/or www.truthaboutyourlocal.com, websites created for the stated purpose of disparaging Local 98 and its officials. The pertinent statements, detailed below, lack any basis in fact and were published in disregard for their falsity and for the good reputations of the private individuals and organization whom the posters attacked. These statements were accessible through the Internet and did reach individuals in Pennsylvania and throughout the United States and the world. These statements tarnished the Plaintiffs' reputations and caused the individual Plaintiffs distress and embarrassment. The egregious nature of the Defendants' conduct is exacerbated by the fact that these Defendants have hidden behind a veil of anonymity to defame these Plaintiffs and have boasted of their anonymity and taken steps to further conceal their identities. Plaintiffs now seek to fully redress the harm caused by the Defendants' cowardly and unconscionable acts.

*Parties*

2.     Plaintiff Local 98 is a local affiliate of the International Brotherhood of Electrical Workers labor union, with its principal offices located at 1701 Spring Garden Street, Philadelphia, Pennsylvania 19130. Its mission is to provide electrical contractor partners with the best trained and skilled workforce in the electrical industry.   It additionally is actively involved in the communities of its members and, through its members, supports many diverse community activities ranging from park clean-ups to church-sponsored outreach programs.

DOL_LOCAL 98_02690          Case ID: 200701106

3.      Plaintiff Robert Bark ("Bark") is an adult citizen and resident of Pennsylvania, and is an officer of Local 98, serving for several years as its Business Agent. Bark maintains a business address at 1701 Spring Garden Street, Philadelphia, Pennsylvania 19130.

4.      Plaintiff Robert Thompson ("Thompson") is an adult citizen and resident of Pennsylvania, and is an officer of Local 98, serving for many years on its Examining Board and as its Business Agent. Thompson maintains a business address at 1701 Spring Garden Street, Philadelphia, Pennsylvania 19130.

5.      Defendants Charles and Jeanette Battle, husband and wife, ("Battles"), are adult citizens and residents of Pennsylvania. Charles Battle is a member of Local 98 and he and his wife are creators and/or administrators of the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com.  The Battles have deliberately concealed their identities and the identities of others with whom they have collaborated and conspired to publish defamatory statements on both websites. The Battles reside at 8710 Lykens Avenue, Philadelphia, Pennsylvania 19128.  It is believed and therefore averred that at least one act of collaboration and conspiracy involving each administrator of the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com was completed in June 2020 at the Battles' residence located at 8710 Lykens Avenue, Philadelphia, Pennsylvania 19128.

6.      Defendant Administrator is/are individual(s) and/or entity(ies) who, along with the Battles, have administered the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com. Each administrator has deliberately concealed his/her/its identity and the identifies of others with whom they have collaborated and conspired to publish defamatory statements on both websites.  Upon information and belief, the Battles know the identities of each

3

Case ID: 200701106

co-administrator of the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com.

7.      Defendant Comment(s) posted defamatory statements about one or more Plaintiffs as more fully hereinafter described under the pseudonymous designation "Anonymous."  Upon information and belief, the Battles know the identities of the authors of each comment on the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com upon which this action is based as discussed below. Further, upon information and belief, the defamatory statements posted about one or more Plaintiffs upon which this action is based were done in collaboration and conspiracy with the Battles and each other administrator of the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com.

8.      "Anonymous" is the designation given to identify the commenter or commenters, the Battles, and each administrator of the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com who collaborated and conspired to post defamatory statements on the websites www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com as discussed in greater detail below.

### *Jurisdiction and Venue*

9.      Jurisdiction over the Defendants in the Courts of the Commonwealth of Pennsylvania is proper pursuant to 42 Pa.C.S.A. §§ 5301, 5308 and 5322.

10.      Venue is proper as to the Defendants in the Court of Common Pleas of Philadelphia County pursuant to Pennsylvania Rules of Civil Procedure 1006 (a) and (c) inasmuch as Defendants caused the aforesaid defamatory publications to be published, republished and/or read in Philadelphia County and at least one unlawful conspiratorial act upon which liability is based was completed in Philadelphia County.

4

Case ID: 200701106

*Facts*

11.     In or about June 2020, the Battles and their anonymous co-administrators created and published websites under the domains www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com. *See* Email dated June 4, 2020 from Jeanette Battle to Icon Media Works, LLC, the company retained to provide web design services, confirming the Battles' involvement in the creation of the websites, a true and correct copy of which is attached hereto as Exhibit "A."

12.     The websites also solicited comments from others, assuring would-be commenters that the identities of any who posted would remain anonymous.

13.     Moreover, the websites encouraged commenters to post comments which were disparaging of Local 98 and its officials, including Bark and Thompson, and the websites were edited to remove comments favorable to Local 98 and its officials, while retaining those comments which impugned Local 98 and its officials.

14.     Published on the websites were several false and defamatory statements about Local 98 and its officers. A collection of representative defamatory representations referenced in this pleading is attached and incorporated herein as Exhibit "B."

15.     Upon information and belief, the Defendants collaborated and conspired to author and post false and defamatory statements about Bark on the websites, including:

        a.      Falsely representing he committed a crime ("Dude!  I was on the job today and [a person] told me Local 98 Business Agent Booby Bark showed up at a members [sic] house on the front lawn and threatened him!  What the F%#$!  I knew Barkie was dum [sic] just not stupid!  He better get a lawyer.  What a dumb ass!  Is this where our local [sic] is going!  I am hearing Federal charges are coming…");

5

Case ID: 200701106

b.      Falsely accusing him of a crime ("Barkie you better get a lawyer.  You

crossed the line this time.  Federal intimidation charges.");

c.       Falsely representing he used extortion to sell tickets to a function ("Hey

Barkie didn't you tell me that if I didn't buy a ticket to the Land down under party [sic] at

Your[sic] buddy['s] place for 35 cash, that I would never get a job from [Local 98] again?

Even after I told you that was my kids [sic] birthday that day!  Just ASKING!  Turn about

[sic] is fair play.");

d.      Falsely representing he is an alcoholic with an extensive DUI history

("Barkie is too busy tying on a load.  How many DUI's [sic] are we up to now?");

e.      Falsely accusing him of rigging the results of a Local 98 election through

unlawful acts of intimidation ("… Bark and others intimidated potential candidates into

not going thru [sic] with the nomination process … ");

f.      Falsely representing that he is an unfit father ("Happy Fathers day [sic]

Bark.  Oh wait [sic] do you even see or interact with your kids any more [sic]?  From what

I hear they hate your guts.  Hope you have a great Father's [sic] Day by yourself loser").

16.      Upon information and belief, the Defendants also collaborated and conspired to

author and post false and defamatory statements about Thompson on the websites, including:

a.      Falsely representing that he hires, with the approval of Local 98's other

leaders, non-Union workers for his personal business ("Is this roofer Bobby Thompson

uses?  I heard he goes to non-union job sites to hire contractors for his house flipping

business.  ALL NON UNION [sic] of course… He's making a fortune off of the local [sic]

You can't make this shit up.  They Must [sic] have pictures of the 3rd district [sic] Vice

President fucking chickens or something.  SMH.");

DOL_LOCAL 98_02694      Case ID: 200701106

b.      Falsely representing he fraudulently misappropriates wages from Local 98 by pursuing personal financial opportunities during Union working hours ("Bobby Thompson is rumored to be our Business Representative trying to secure fair working and standards [sic] on all job sites but his own.  With the permission of the Business Manager Bob hires Mexicans to dig out basements and non union [sic] contractors to renovate flip houses [sic] while charging his time to the Local Union.").

17.     As officers of Local 98, the above-quoted false and defamatory representations posted about Barker and Thompson, while allegedly acting in their capacity as representatives of the Union, reflect on and have equally harmed the reputation and business standings of Local 98 in the community.

18.     Upon information and belief, the Defendants additionally collaborated and conspired to directly defame Local 98 on the websites by, *inter alia*:

a.      Falsely contending Local 98 is "Fuckin Doc Nazis;"

b.      Falsely representing that Local 98 "[n]ow [] employ[s] crooks;"

c.      Falsely disparaging Local 98 members as "South Philly Thugs;"

d.      Falsely representing that Local 98 discriminates against minorities (Local 98 "wouldn't let a man of color in [its] house" and "… doesn't understand that we are all human");

e.      Falsely vilifying Local 98's leadership as the "thief team;"

f.      Falsely representing that a longstanding Local 98 Business Representative "… stole 240k from the financial office;"

g.      Falsely representing that Local 98 encourages and condones election results obtained through unlawful intimidation and fear ("If there were ever a fair election

7

DOL_LOCAL 98_02695      Case ID: 200701106

where candidates could be nominated without intimidation and voters could vote without

fear [Local 98's present leadership] would be on the out of work list" and Local 98

leaders including "… Bark and others intimidated potential candidates into not going thru

[sic] with the nomination process … really you had to get ed [sic] off his couch to

intimidate his own nephew PATHETIC [sic]");

       h.    Falsely representing that the work environment at Local 98 condones

"rape" of female journeymen by its officials ("It's hard to be a woman trades member.

Do you want to know how hard?  [Former Union official] raped me in 2002.  I'm going

to tell my story");

19.    The above-quoted posts, and others since removed but nevertheless should be

preserved given the Defendants' pre-removal receipt of a preservation of evidence letter, plainly

and simply criminally and otherwise falsely stigmatize Bark, Thompson, and/or Local 98.  Each

of these posts is of a defamatory character.

20.    Moreover, the substance of each representation in the quoted posts is provably and

categorically false.

21.    It is clear that the Defendants' false and defamatory publications apply to Bark or

Thompson and Local 98, and the Defendants intended that they refer to these Plaintiffs.  The

anonymous postings specifically refer to one or more Plaintiffs by name.

22.    Persons reading the false statements in the anonymous posts would understand the

statements' defamatory meaning and would know that the defamatory statements were intended

to be applied to Bark or Thompson and/or Local 98.

DOL_LOCAL 98_02696                    Case ID: 200701106

23.     The publication of these loathsome statements falsely accusing one or more Plaintiffs of criminal, immoral or otherwise wrongful misconduct constitutes defamation *per se* for which harm is presumed.

24.     There is no conditional privilege applicable here, behind which the anonymous posters might hide to avoid liability for their loathsome, false and defamatory statements.

### Count I – Defamation
**(*All Plaintiffs v. All Defendants*)**

25.     Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 24 of plaintiffs' Complaint as though fully set forth at length herein.

26.     Defendants authored and published the above-mentioned statements, innuendos and implications concerning one or more Plaintiffs on the website www.thetruthaboutyourlocal.com and www.truthaboutyourlocal.com in June 2020, and Plaintiffs commenced this action by Writ of Summons in July 2020.

27.     The above-mentioned statements, innuendoes and implications concerning one or more Plaintiffs in the anonymous postings were totally false and defamatory.

28.     The above-mentioned false and defamatory statements, innuendoes and implications concerning one or more Plaintiffs were published to individuals, including individuals in Philadelphia County, who understood said statements, innuendos and implications to refer to, and defame, one or more Plaintiffs.

29.     Defendants knew that the vicious statements, innuendoes and implications concerning one or more of the Plaintiffs in the above-quoted portion of their posted comments were totally false or, if not, Defendants' avoidance of the truth was in reckless and/or negligent disregard of their truth or falsity.

9

Case ID: 200701106

30.     Defendants' false and defamatory statements, innuendoes and implications have severely injured each Plaintiff in that they have tended to: (a) blacken and besmirch each Plaintiff's reputation;  (b) expose each Plaintiff to public contempt, ridicule or hatred; (c) convey the impression that each Plaintiff engages in illegal conduct, (d) detract from each Plaintiff's respect in the community, (e) subject the individual Plaintiffs to severe emotional distress, mental anguish, embarrassment and humiliation; and (f) interfere with the individual Plaintiffs' professional life.

31.     Each of the aforementioned false and defamatory statements, innuendoes and implications was understood by third parties, including readers in Philadelphia County, to pertain to, and defame, one or more Plaintiffs.

32.     Defendants' refusal to identify themselves in disparaging the Plaintiffs underscores that Defendants knew they wrongfully defamed one or more Plaintiffs and sought to cowardly hide their identities to evade the consequences of these vile acts through anonymity.

33.     Defendants' anonymous defamatory publications and their extraordinary efforts to maintain their anonymity were so outrageous and malicious as to warrant the imposition of punitive damages.

34.     As a proximate result of Defendants' malicious, intentional and reckless conduct as set forth above, Plaintiffs are entitled to such damages as will compensate them for the injury to their reputations, and for the individual Plaintiffs' severe emotional distress, and punitive damages to punish the Defendants for their conduct and deter them and others similarly situated from like acts in the future.

WHEREFORE, Plaintiffs International Brotherhood of Electrical Workers, Local 98, Robert Bark, and Robert Thompson demand judgment, jointly and severally, against Defendants in an amount of compensatory damages in excess of Fifty Thousand Dollars ($50,000.00) together

DOL_LOCAL 98_02698    Case ID: 200701106

with interest and costs, and punitive damages in an amount which will punish the Defendants for their conduct and deter them and others similarly situated from like acts in the future.

Respectfully submitted:

**LAMB MCERLANE, PC**


Date: 8/20/2020                    By:    */s/ Joseph R. Podraza, Jr.*
                                          Joseph R. Podraza, Jr., Esquire (ID No. 53612)
                                          *jpodraza@lambmcerlane.com*
                                          William H. Trask, Esquire (ID No. 318229)
                                          *wtrask@lambmcerlane.com*

                                          *Attorneys for Plaintiffs*

**DOL_LOCAL 98_02699**   Case ID: 200701106

# EXHIBIT A

**DOL_LOCAL 98_02700** Case ID: 200701106



**From:** JEANETTE BATTLE <magapie@comcast.net>
**Sent:** Thursday, June 4, 2020 10:58 AM
**To:** Anthony@iconmediaworks.com
**Subject:** design



Ant I want this pic to be th
e whole page faded in the backround



and this one in one of the top corners

that should do

# EXHIBIT B

**DOL_LOCAL 98_02702** Case ID: 200701106

For the guy who said he had a story to tell and asked for the FBI number here it is, 215-418-4000 then hit 0. You will directed to and speak to a live person. It works....

**Anonymous**

15 JUN 2020   REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/TICK-TOCK-TICK-TOCK-JOHNNY-DOC-YOUR-ON-THE-CLOCK/?REPLYTOCOM=271#RESPOND)

Is this the roofer Bobby Thompson uses? I heard he goes to non-union job sites to hire contractors for his house flipping business. ALL NON UNION of course.... He's making a fortune off of the local You can't make this shit up. They Must have pictures of the 3rd district Vice President fucking chickens or something. SMH.

**Anonymous**

15 JUN 2020   REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/TICK-TOCK-TICK-TOCK-JOHNNY-DOC-YOUR-ON-THE-CLOCK/?REPLYTOCOM=264#RESPOND)

In 1860 – slavery was the key issue:
2 Democrats ran as Pro-Slavery Candidates:
John Breckinridge: 848,019 votes received
Stephen Douglas: 1,330,202 votes received
Totals: 2,178,221 votes
1 Republican Anti-Slavery Candidate:
Abraham Lincoln: 1,865,908 votes received
Total votes cast in the 1860 Presidential Election:
4,635,030 votes
(John Bell ran as the Constitutional Party candidate.
He received 590,901 votes and carried 3 states (Tenn.,
Ky, Va.)
Percentage of Vote:
Republican: 39.8%
Democrat: 47.6% (Douglas 29.5%; Breckenridge 18.1%)
By today's logic –

Today's MSM would wonder if Lincoln was a legitimate
President-Elect. When compared to the total
Democrat slave supporting vote, Lincoln lost the
popular election vote – but did win the Presidency
based on that pesky Electoral College thing (Lincoln

DOL_LOCAL 98_02703   Case ID: 200701106

speak to a live person. It works....

Anonymous on This one is for you Brian (https://thetruthaboutyourlocal.com/local98/this-one-is-for-you-brian/#comment-309)

Anonymous on OK JD here's two questions you can answer (https://thetruthaboutyourlocal.com/local98/ok-jd-heres-two-questions-you-can-answer/#comment-308)

## Anonymous

16 JUN 2020    REPLY (HTTPS://THETRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=301#RESPOND)

How could this guy embarrass us so much by getting pinched for buying Lucky Charms.

## Anonymous

16 JUN 2020    REPLY (HTTPS://THETRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=302#RESPOND)

I guess there not that lucky ha ha

## Anonymous

16 JUN 2020    REPLY (HTTPS://THETRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=287#RESPOND)

Barkie you better get a lawyer. You crossed the line this time. Federal intimidation charges.

## Anonymous

15 JUN 2020    REPLY (HTTPS://THETRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=284#RESPOND)

Who is this guyThompson with the non union buisness

## Anonymous

15 JUN 2020    REPLY (HTTPS://THETRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=275#RESPOND)

Dude! I was on the job today and Phender told me Local 98 Business Agent Bobby Bark showed up at a members house on the front lawn and threatened him! What the F%#$! I knew Barkie was dum just not stupid. He better get a lawyer. What a dumb ass! Is this where our local is going! I am hearing Federal charges are coming....

## Anonymous

15 JUN 2020    REPLY (HTTPS://THETRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=270#RESPOND)

His ex bookie here. I got 500:1 he doesn't answer any of your questions.

DOL_LOCAL 98_02704    Case ID: 200701106

**Anonymous**

20 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-
THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=711#RESPOND)

Hey Barkie didn't you tell me that if I didn't buy a
ticket to the Land down under party at Your buddy
Scott "KEENANS" place for 35 cash, that I would never
get a job from John again?
Even after I told you it was my kids birthday that day!
Just ASKING! Turn about is fair play.

**Anonymous**

20 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-
GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=728#RESPOND)

It's called quid pro quo

**Anonymous**

20 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-
GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=737#RESPOND)

Sounds like Barkie
Is barking up the wrong tree now

**Anonymous**

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=793#RESPOND) **DOL_LOCAL 98_02705**: 200701106

Barkie is too busy tying on a load. How many



**Anonymous**

20 JUN 2020   REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=687#RESPOND)

Me too

**Anonymous**

20 JUN 2020   REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=738#RESPOND)

YES WE ARE VERY INTERESTED
YOU HAVE THOUSANDS BEHIND YOU
WE ARE ELECTRICIANS
NOT SOUTH PHILLY THUGS

**Anonymous**

20 JUN 2020   REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-
THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=681#RESPOND)

6. During the time period at issue in this Indictment,
defendant JOHN DOUGHERTY used his control over

DOL_LOCAL 98_02706   Case ID: 200701106

his house!

He selectively lets them into the building trades.

You will always see a token in a publicity photo.

John doesn't understand that we are all human!

**Anonymous**

20 JUN 2020   REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=665#RESPOND)

BRIAN BURROWS

willfully made and subscribed United States income

DOL_LOCAL 98_02707   Case ID: 200701106

I doubt Larry is homosexual. But who gives a shit. Really he worked his ass off for the good of the local. Take the shirt off his back for ya. Take shots at work ethic but really u attach if someone is different than u. Guessing ur not a fan of African Americans either. Smh

## Anonymous

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=884#RESPOND)

Can someone please explain why the infatuation w fumo

## Anonymous

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=879#RESPOND)

Happy Fathers day Bark. Oh wait do you even see or interact with your kids any more? From what I hear they hate your guts. Hope you have a great Father's Day by yourself loser

## Anonymous

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=880#RESPOND)

Nice. Are you always this angry?

## Anonymous

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=883#RESPOND)

Damm. C'mon guys not the guys kids. Low shit is ok. Not the kids

Anonymous on CLICK ON GET THE TRUTH TO SEE ALL PAGES (https://www.truthaboutyourlocal.com/local98/click-on-get-the-truth-to-see-all-pages/#comment-884)

Anonymous on CLICK ON GET THE TRUTH TO SEE ALL PAGES (https://www.truthaboutyourlocal.com/local98/click-on-get-the-truth-to-see-all-pages/#comment-883)

Anonymous on Dear Mr. Business Manager (https://www.truthaboutyourlocal.com/local98/dear-mr-business-manager/#comment-882)

Anonymous on Dear Mr. Business Manager (https://www.truthaboutyourlocal.com/local98/dear-mr-business-manager/#comment-881)

DOL_LOCAL 98_02708    Case ID: 200701106

**Anonymous**

21 JUN 2020    REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=793#RESPOND)

Barkie is too busy tying on a load. How many
DUI's are we up too now?

**Anonymous**

20 JUN 2020    REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-
THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=703#RESPOND)

If you know anyone having trouble connecting to site
it is now truthaboutyourlocal.com

**Anonymous**

20 JUN 2020    REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-
GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=705#RESPOND)

Let's be clear this site doesn't come from
members.
It comes from Larry Despeccio who is a known
homosexual.
Fumo who lies to everyone about being Mensa...
ever seen proof?
And Brady who saved his OWN ass sending his
OWN staff to prison.
This is political plain and simple.
Everyone is innocent until proven guilty and
everyone will have their opportunity in court.
Cowards.

**Anonymous**

20 JUN 2020    REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-
THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=702#RESPOND)

Lots of eye opening conversation here. I'm not for
calling Agents out by name in an Anonymous fashion

DOL_LOCAL 98_02709    Case ID: 200701106

call Doc and his codefendants crooks, thiefs and liars, guilty of crimes. Less comments say Doc is a good guy and made the union great. Then other comments are off point about Brady, Fumo and Larry. The first group are adamant about their comments and provide passion with documentation and proof to back up their comments. The second group are also adamant with their comments but they are abstract comments. What is a good guy..where is the innovation ...what did he do another couldn't have that makes him a great leader ? What the second group has rairly said and not so adamant about is that Doc is innocent. This to me is very telling. Early on we did hear from Doc but no claim of innocence or explaination of the tough questions. Another telling sign. Give an explanation why 2 years worth of lm2s are late and Ganter. What is Doc's plan...give an explanation to the Feds and not the membership. We deserve the explanation before the Feds. If your explanation won't fly with us it most certainly will never fly with the Feds or jury. Now about the third group. The third group is a spin off of the second group using the time proven Doc tactic of talking and saying nothing relevant. We have caught this act for years. It gets boring and only helps convince people more they are really trying to run from and hide something. More hits, more comments, more questions., more pressure will definitely drain the swamp and make Local 98 great again

**Anonymous**

22 JUN 2020    **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/HEY-SHIT-
MITTS/?REPLYTOCOM=936#RESPOND)

What the Fuck is Mensa?

**Anonymous**

21 JUN 2020    **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/HEY-SHIT-MITTS/?
REPLYTOCOM=899#RESPOND)

Bobby Thompson, is rumored to be our Business Representative trying to secure fair working and

DOL_LOCAL 98_02710    Case ID: 200701106

standards on all job sites but his own. With the permission of the Business Manager Bob hires Mexicans to dig out basements and non union contractors to renovate flip houses while charging his time to the Local Union.

He's proud to tell members that he along with his partner, whose wife works in the unions business office, are making upwards of 400k on a flip!

Things are good in this Union, but only for a select few!

**Anonymous**

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/HEY-SHIT-MITTS/?REPLYTOCOM=900#RESPOND)

That's so funny, I have a buddy that lived next door to one of Bobby Thompson's flips. What you read is true.

His non union contractors drilled holes in Bobby's party wall and they came right through to my buddies house.

**Anonymous**

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/HEY-SHIT-MITTS/?REPLYTOCOM=901#RESPOND)

I know that Tin Knocker also, he complained to Bobby, and Bobby pulled the don't you now who the fuck I am card! I work for John Dougherty, go ahead and call L & I, John owns L&I and Jim Kenny! What a blowhard this guy is. If it were me I would have kicked his ass.

**Anonymous**

21 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/HEY-SHIT-MITTS/?REPLYTOCOM=888#RESPOND)

Nico Rodriguez, is it true that you have been stealing time and money from the General Fund and the PAC

DOL_LOCAL 98_02711   Case ID: 200701106

23 JUN 2020    REPLY

BUSINESS-MANAGER-/?REPLYTOCOM=1250#RESPOND)

True Naxis at work.

## Anonymous

23 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/DEAR-MR-

BUSINESS-MANAGER-/?REPLYTOCOM=1208#RESPOND)

Keep it up DOC- THIS IS WHAT THE MEMBERS NEED
TO SEE!
GOOD WORK FRANKIE!! GOOD WORK

## Anonymous

23 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/DEAR-MR-

BUSINESS-MANAGER-/?REPLYTOCOM=1148#RESPOND)

LETS SEE IF WE CAN HAVE 100,000 HITS OF THIS SITE
BY THE END OF THE MONTH

## Anonymous

23 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/DEAR-MR-

BUSINESS-MANAGER-/?REPLYTOCOM=1205#RESPOND)

Fuckin Doc Nazis

## Anonymous

23 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/DEAR-MR-

BUSINESS-MANAGER-/?REPLYTOCOM=1206#RESPOND)

Another Dougherty lowlight blocking free speech.
First elections. Now this

DOL_LOCAL 98_02712    Case ID: 200701106

## Anonymous

17. The following overt acts are representative of expenditures in which defendant JOHN DOUGHERTY used and approved the use of Local 98 funds to purchase concert and sporting event tickets for family members, friends, and favored associates without any legitimate Local 98 business-related justification:

**Anonymous**

23 JUN 2020   **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=1115#RESPOND)

I'm one of the few women journeyman. This website is awful. It's hard to be a woman trades member. Do you want to know how hard? Ed Neilson raped me in 2002. I'm going to tell my story.

**Anonymous**

23 JUN 2020   **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=1117#RESPOND)

I would believe you, but Ed is a great guy! Eddie Neilson, couldn't rape a doughnut! Move on, didn't you hear ME TOO is cancelled and we are on to BLM! Fight the fight sista!

**Anonymous**

23 JUN 2020   **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=1116#RESPOND)

YOUR EXECUTIVE BOARD APPROVED THIS !
DISGRACEFUL

DOL_LOCAL 98_02713   Case ID: 200701106

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/BE-PATIENT-COMING-BACK-SOON/?REPLYTOCOM=1858#RESPOND)

The Dougherty thief team is scared shitless of you....the more you know the dirtier he gets that why all the effect to shut free speech down

Anonymous on **What JOHN DOUGHERY doesn't want you to KNOW!** (https://www.truthaboutyourlocal.com/local98/hey-lyin-brian/#comment-2185)

Anonymous on **What JOHN DOUGHERY doesn't want you to KNOW!** (https://www.truthaboutyourlocal.com/local98/click-on-get-the-truth-to-see-all-pages/#comment-2184)

Anonymous on **What JOHN DOUGHERY doesn't want you to KNOW!** (https://www.truthaboutyourlocal.com/local98/click-on-get-the-truth-to-see-all-pages/#comment-2183)

Anonymous on **What JOHN DOUGHERY doesn't want you to KNOW!** (https://www.truthaboutyourlocal.com/local98/click-on-get-the-truth-to-see-all-pages/#comment-2182)

**Anonymous**

21 JUN 2020   **REPLY**

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/BE-PATIENT-COMING-BACK-SOON/?REPLYTOCOM=925#RESPOND)

This site is averaging around 4000 hits a day. I don't know how many comments but a lot of comments

DOL_LOCAL 98_02714   Case ID: 200701106

**Anonymous**

25 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-
GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=2141#RESPOND)

This guy is hurting the entire IBEW nationwide by
hanging around. His bullshit is going to be
brought up by every non union contractor
nationwide on why they don't join unions.
Organizers hear this shit everyday and it just
makes it so much harder. He is aiding and abetting
the non union with his actions

**Anonymous**

25 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=2148#RESPOND)

The only person responsible for all of the is
JOHN J. DOUGHERTY JR.
TRUTH REALLY DOES HURT
Be kind, spay or neuter your animals!

**Anonymous**

25 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=2151#RESPOND)

Todd neilson stole 240k from the financial
office

**Anonymous**

25 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-
ON-GET-THE-TRUTH-TO-SEE-ALL-PAGES/?
REPLYTOCOM=2177#RESPOND) **DOL_LOCAL 98_02715** Case ID: 200701106

John set the Union movement back a hundred

consultants harassing someone for their sexuality I
have the fucking pics I'll go to NBC ur fucking pissing
me off.

**Anonymous**

25 JUN 2020   **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/JOHN-ITS-
RUMORED-THAT-YOUR-A-BIG-GAMBLING-MAN/?
REPLYTOCOM=1968#RESPOND)

Now we employ crooks and people who hate
homosexuals....this is disgusting

**Anonymous**

25 JUN 2020   **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/JOHN-ITS-
RUMORED-THAT-YOUR-A-BIG-GAMBLING-MAN/?
REPLYTOCOM=1965#RESPOND)

If it was Frank Keel who made those comments while
working for 98 we need to know...that sht best be
made public.

**Anonymous**

25 JUN 2020   **REPLY**
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/JOHN-ITS-
RUMORED-THAT-YOUR-A-BIG-GAMBLING-MAN/?
REPLYTOCOM=1959#RESPOND)

DOL_LOCAL 98_02716   Case ID: 200701106

Dear FBI.

**Anonymous**

28 JUN 2020    **REPLY**
**(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CON-TO-CON/?
REPLYTOCOM=2316#RESPOND)**

60k hits by the end of the day. All started by one text
message between 3 or 4 guys. Power shift back to the
members where it belongs. If there were ever a fair
election where canidates could be nominated without
intimidation and voters could vote without fear
Dougherty and his entire team would be on the out of
work list. IT SURE WOULD BE GREAT IF THE DOL
STEPPED IN AND HANDLED NOMINATIONS THE
RIGHT WAY PLUS CONDUCTED THE ELECTION IN A
NEUTRAL PLACE WITH DOL AS OBSERVERS AND
VOTE COUNTERS

**Anonymous**

2 JUL 2020    **REPLY**
**(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CON-TO-
CON/?REPLYTOCOM=2649#RESPOND)**

They already did in 2014
Rocks was the only one that stood up and did
something. They trashed him and tried to ruin his

**DOL_LOCAL 98_02717** Case ID: 200701106

intimidated potential candidates into not going thru with the nomination process.

you remember when you got on the phone with mark and said if you go through with this the next three years will be hell.... really you had to get ed cop off his couch to indimidate his own nephew PATHETIC John. Question : is interfering in union elections a chargable offense. Your racking them up.

By the way why does everybody keep talking about russians and human traficking? can you get on here and explain to the membership why you and the international vice president okayed this?

**Anonymous**

29 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/THE-INDICTMENT/?
REPLYTOCOM=2354#RESPOND)

I am only a dumb electrician when the federal government says that John Dougherty "DOUGHERTY used this control, and a variety of methods, to repeatedly and persistently steal from Local 98 and put his own self-interests over that of the membership of the union. He used Local 98 as his personal bank account and as a means to obtain employment for himself, his family, and his friends" , doesnt that mean that he STOLE from the Members?

I am confused to you point " already out there. He STOLE from the members who trusted him and the International is covering it up.

Stay tuned same bat time same bat channel. JOKER!

**Anonymous**

29 JUN 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/THE-INDICTMENT/?
REPLYTOCOM=2349#RESPOND)

The 2016 lm2 isn't legitimate ? The 116 page

DOL_LOCAL 98_02718    Case ID: 200701106

## VERIFICATION

I, Robert Thomson, am a plaintiff in the subject action, and verify that the statements in the foregoing document are true and correct to the best of my knowledge, information, and belief. I do further understand that these statements are made subject to the penalties of 18 Pa.C.S. Sec. 4904, relating to unsworn falsification to authorities.

08/20/20
_____
Date

_____
Robert Thompson

## **VERIFICATION**

I, Robert Bark, am a plaintiff in the subject action, and verify that the statements in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I do further understand that these statements are made subject to the penalties of 18 Pa.C.S. Sec. 4904, relating to unsworn falsification to authorities.


08-20-20
Date

Robert Bark
Robert Bark

**DOL_LOCAL 98_02720** Case ID: 200701106

## **VERIFICATION**

I, Jack O'Neill, Esquire, state that I am authorized to take this Verification for plaintiff IBEW, Local 98 in the subject action, and verify that the statements in the foregoing document are true and correct to the best of my knowledge, information, and belief.  I do further understand that these statements are made subject to the penalties of 18 Pa.C.S. Sec. 4904, relating to unsworn falsification to authorities.

_8·20·2020_
Date

_____
Jack O'Neill, Esquire

DOL_LOCAL 98_02721   Case ID: 200701106

**LAMB McERLANE PC**
Joseph R. Podraza, Jr., Esquire (ID No. 53612)
William H. Trask, Esquire (ID No. 318229)
One South Broad Street – Suite 1500
Philadelphia, PA  19107
(215) 609-3170
(610) 430-8000                                          *Attorneys for Plaintiffs*

---

| | |
|---|---|
| IBEW, LOCAL 98, ROBERT BARK, And ROBERT THOMPSON, | : |
| | : |
| | : |
| *Plaintiffs*, | : |
| | : |
| v. | : |
| | : |
| CHARLES BATTLE,  JEANETTE BATTLE, ADMINISTRATOR www.thetruthaboutyourlocal.com www.truthaboutyourlocal.com, COMMENT, www.thetruthaboutyourlocal.com www.truthaboutyourlocal.com, *et al.*, | : |
| | : |
| *Defendants*. | : |

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

Trial Division

July 2020 Term

No. 001106

---

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th of August, 2020, I caused a true and correct copy of the foregoing pleading to be served *via* the Court's electronic filing system upon the following counsel of record:

> Clifford E. Haines, Esquire
> Haines & Associates
> 1339 Chestnut Street
> The Widener Bldg – 5th Floor
> Philadelphia, PA 19107
> chaines@haines-law.com
> *Attorney for Defendants Charles and Jeanette Battle*

**LAMB McERLANE PC**

By:      */s/ Joseph R. Podraza, Jr.*
        Joseph R. Podraza, Jr., Esquire

12

# Exhibit 9

<u>STATEMENT</u>

I, James Ryan, residing at ___819 Edison Avenue Phila PA 19116___,
make the following voluntary statement to Angela B. Menges and ___Cipkulski___
who have identified themselves to me as Investigators of the Office of Labor-Management
Standards, U.S. Department of Labor.  Investigators Menges and ___Cipkulski___
have advised me that they are conducting an official investigation for the U.S. Department of
Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting
and Disclosure Act of 1959 (LMRDA).

Was Called by Brian Eddis when (to) Tim McConnell
was running for Office in Local 98 election. Phone
Conversation consitive of Brian Eddis telling me that
Tim was being used and maniplated in running in the election.
The people he was running with would not look out for him.
I spoke with Tim on the phone about what Brian said
shortly after. I told Tim it is not worth the
aggrevation to run. People do not care. Take Care
of your Family.

I declare under penalty of perjury that the foregoing statement consisting of __1__ page(s), each
of which I have initialed, is true and correct.

_10-26-2020_
Date

_Jan P Ryan_
Signature

_10/26/2020_
Date

_Angela Menges_
Witness Signature

_10/26/2020_
Date

Witness Signature

Signed at: _OLMS - 1835 Market St, Philadelphia, PA 19103_
Location

Initials: _JPR_

Page 1 of _1_

DOL_LOCAL 98_00427

# Exhibit 10

I, Kenneth Rocks, Jr., make the following voluntary statement to Angela B. Menges and ___Robert Ciuklelski___ who have identified themselves to me as Investigators of the Office of Labor-Management Standards, U.S. Department of Labor. Investigators Menges and ___Ciekilski___ have advised me that they are conducting an official investigation for the U.S. Department of Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).


I, Kenneth Rocks, Jr., have personal knowledge of all of the facts in this statement.

I am employed as an electrician. I have worked for McGoldrick Electric since March ~~2015~~ 2016. I have been a member of IBEW Local 98 since 2000.

In 2014, I was being very critical of Local 98 Business Manager John Dougherty during membership meetings leading up to the officer election that year. I was working for Union Electric at the time. My project manager at Union Electric was Doug Smith. Dougherty told Smith he wasn't happy with me, and Smith told me. Dougherty talked to Smith about removing me from my position.

Dougherty told me, "If you don't like how my executive board is running things, then run for executive board." Nominations were held on May 6, 2014. I tried to run, but I was improperly disqualified as a candidate. The local ruled me ineligible due to my alleged failure to maintain continuous good standing for a period of two years prior to the nomination meeting and because I pled guilty to simple assault in 2002. I appealed the local's decision to the international. The international ruled in my favor on the continuous good standing issue but against me on the Section 504 issue. The incumbent officers were elected by acclamation on May 30, 2014. I filed a complaint about the election with the Secretary of Labor on June 18, 2014.

The Department of Labor investigated my election complaint and found that Local 98 violated the LMRDA when it disqualified my running mate Kevin O'Sullivan and me from running for office. The union signed a voluntary compliance agreement with OLMS on August 25, 2014, and held a rerun election supervised by OLMS on November 1, 2014. O'Sullivan and I ran for executive board but were defeated.

Dougherty did not want me to run for office. On or around _April 2015_ (date), Dougherty had me removed from my position with Union Electric. I was told, "Bring your truck back, you're done." Smith, my project manager, just gave me the explanation, "You can't work here anymore." I had worked for Union Electric ~~since~~ when KR was an apprentice and was there for five years. I went everywhere for them and was probably their number two foreman, and then I was gone. I was out of work for 10 months. During that time, Smith invited me to a Philadelphia Flyers hockey game. Smith and I sat together, and I asked Smith if he was taking me back. Smith told me, "You know I can't."

Local 98 members are allowed to solicit their own jobs, and the local also has a referral system. But during those 10 months, Local 98 business agents were going around to foremen saying,

*KR*

DOL_LOCAL 98_00419

"You're friends with him?" meaning me. Everyone, including foremen, told me, "I can't hire you." Ron Sefransi (unsure of spelling) with Kola Electric told me he could not hire me. Sefransi told me that Larry Thomson, the owner of Kola Electric, told Sefransi this.

Dougherty did this because he did not want me to run for office. Dougherty and the other officers don't want transparency or another set of eyes because the executive board approves everything. The treasurer signs off on the LM forms. None have been filed since 2017. I think they're not filing them because they know it's illegal to lie on it.

One day in February or March 2015, I found out that another member, Tom Bunratty (unsure of spelling), got sent out for a job ahead of me. At that time there was a document titled "Available for Work List Rules – IBEW Local 98, Philadelphia, PA 19103 – July 22, 2014," which outlined the rules for sending members out to jobs. I was in the 50s on the list, and Bunratty was in the 90s, so I should have been sent before he was.

I confronted Business Agent Ed Coppinger, saying, "You have my contact info?" Coppinger asked me why and I responded, "Did I miss your call? You sent a guy out in the 90s, I'm in the 50s. What's going on?" Coppinger and I got into a shouting match. Dougherty then called me and told me, "I'll get you a job." The next day I was working at the Philadelphia Convention Center. Recording Secretary Michael Mascuilli was the project manager at the convention center at the time. The following weekend, I was sent to work for McGoldrick Electric. I have been working for McGoldrick since March 2015. Dougherty doesn't give jobs out. He had Coppinger do that to calm me down.            2016

I was also subjected to other forms of intimidation, harassment, and retaliation by Dougherty and other officers of the local throughout the initial election and the OLMS-supervised rerun election. I believe they did this to pressure me not to run and to suppress members' votes. Business Agent Bob Bark told me, "You run, you're throwing your career away." On the night of the nomination meeting, Business Agent Rodney Walker told me if I ran it would be "career suicide."

Dougherty also used the local's trial board to pressure me not to run by bringing me up on charges in a kangaroo court. Dougherty's charges were read out at the March 2014 membership meeting, but he did not actually prefer charges against me until June 13, 2014. The trial board hearing was held on June 19, 2014. The charges stemmed from a threat I made to Dougherty on November 20, 2012, after my neighbor saw three individuals, including Local 98 Business Agent Mark Bennett, show up at my house, bang on my door, and peek through my windows while I was not home. I sent Dougherty a Facebook message that included these lines: "Send your toads after me. I got one for them on my hip. I'm not playin'." I was found guilty of all charges and was notified via letter dated June 27, 2014, that a $50,000 fine was levied against me.

I challenged the charges by appealing the ruling to IBEW 3rd District International Vice President (IVP) Donald Siegel by letter dated August 10, 2014. The local did not follow the rules with regard to filing charges against me. According to the constitution and bylaws, charges must be filed within 60 days, but Dougherty filed them two years after the incident. Dougherty filed the charges just to make me stop trying to run for office and go away, but it didn't work.

Initials:

DOL_LOCAL 98_00420

Dougherty formally withdrew the charges by letter dated November 3, 2014, two days after I lost in the supervised election. IVP Siegel notified me of the withdrawal via letter dated November 17, 2014. The following January, I was refunded the $240 in installment payments I had made toward the $50,000 fine.

During the supervised election, Dougherty told Pennsylvania State Representative Mike Driscoll that Dougherty was going to hurt me in the pocket. Driscoll is my uncle through marriage; he is married to my father's sister. Driscoll relayed Dougherty's message to my father, Kenneth Rocks, Sr., who relayed the message to me. My father has since passed away. The staff of the local also pressured my father and Driscoll to have me drop out during the original election, when I protested my disqualification. Driscoll and I exchanged text messages regarding Dougherty's comments. Driscoll told me that Dougherty's comment was taken out of context. I stated, "What other context could there be?" I knew Dougherty was referring to me running for office. Driscoll mentioned to me, "He gives us a lot of money for our campaign." I explained to Driscoll it was not Dougherty giving him money; rather, it was the Local 98 membership giving him money.

Around October 30, 2014, Dougherty sent a letter to the membership claiming I beat my wife and didn't take care of my kids, which was not true. The letter looked like campaign literature and had a return address of "Five for the Future." It listed a history of my criminal record and civil proceedings. They also went around and put bumper stickers stating "Rocks beat his wife" and "Rocks did not pay for his kids" on poles up and down the streets around the union hall. My wife and I are now divorced and I have full custody of my children.

During the supervised election, I was permitted to have three observers but had only two: John Fahey and Jerry Ridlon. Richie Kee was supposed to be my third observer, but he backed out after being intimidated. Kee was told, "You do this, and your career is over."

I did not complain to OLMS about the harassment I experienced during the supervised election because I did not want to be a sore loser. The union said I was costing us $50,000 to rerun the election. I did not want to face more harassment or cost the local any more money by complaining to OLMS.

In the 2020 election, Bark and Kee went to member Charles Battle's house to pressure him out of running. Bark wanted Battle to go away and not run. Bark didn't do this on his own; I think Dougherty told him to. Bark and others like him will do whatever Dougherty says because they depend on him for work. Battle and I don't need the hall to get a job. It's neighborhood politics—it's not going to change. Dougherty is the handler. If you go against what he says, he'll crush your career.

Initials: _____

Page 3 of 4

DOL_LOCAL 98_00421

I declare under penalty of perjury that the foregoing statement consisting of four pages, each of which I have initialed, is true and correct.

| | |
|---|---|
| 10-26-2020 | _signature_ |
| Date | Signature |
| 10/26/2020 | Angela Menges |
| Date | Witness Signature |
| 10/26/2020 | _signature_ |
| Date | Witness Signature |

Signed at: OLMS 1835 Market St, Philadelphia, PA
                                    Location                                    19103

Initials: _initials_

Page 4 of 4

DOL_LOCAL 98_00422

# Exhibit 11

# PARTICIPANT MONTHLY HISTORY - INQUIRY



Soc.Sec.Nbr ▮▮▮▮▮▮   UID# ▮▮▮▮▮▮

KENNETH ROCKS

Total Hours      1949.00
Total Wages    126551.04

Curr Welfare Status ▮▮▮▮▮▮

Birth Date ▮▮▮▮   Phone ▮▮▮▮▮▮

| Month | Rpt | Employer | Grp | R/L | Hours Worked | Wages |
|-------|-----|----------|-----|-----|------|-------|
| 8/2020 | 10 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 12146.80 |
| 8/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 56.00 | 4201.76 |
| 7/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 232.00 | 15571.08 |
| 6/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 162.00 | 10257.14 |
| 5/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 120.00 | 7414.80 |
| 3/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 168.00 | 10627.88 |
| 2/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 176.00 | 11369.36 |
| 1/2020 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 5 | 205.00 | 12821.43 |
| 12/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 174.00 | 11183.99 |
| 11/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 161.00 | 10226.25 |
| 10/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 200.00 | 12358.00 |
| 9/2019 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 135.00 | 8372.55 |

D 00257

# PARTICIPANT MONTHLY HISTORY  - INQUIRY

Soc.Sec.Nbr [▮▮▮▮▮▮] UID# [▮▮▮▮▮▮]

KENNETH ROCKS

[▮▮▮▮▮▮▮▮▮▮]

Birth Date [▮▮▮▮] Phone [▮▮▮▮▮▮]

Total Hours 3796.00
Total Wages 243402.49

Curr Welfare Status [▮▮▮▮▮▮]

| Month | Rpt | Employer | Grp | R/L | Hours Worked | Wages |
|-------|-----|----------|-----|-----|--------------|-------|
| 9/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 18.00 | 1076.22 |
| 8/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 239.00 | 17826.42 |
| 7/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 255.00 | 18011.79 |
| 6/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9886.40 |
| 5/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 192.00 | 11805.28 |
| 4/2019 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 16.00 | 965.28 |
| 4/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 147.00 | 8807.83 |
| 3/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 158.00 | 9216.14 |
| 2/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9332.80 |
| 1/2019 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 192.00 | 11432.68 |
| 12/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 166.00 | 10091.09 |
| 11/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 144.00 | 8399.52 |

D 00258

# PARTICIPANT MONTHLY HISTORY - INQUIRY

Soc.Sec.Nbr ▮▮▮▮▮▮ UID# ▮▮▮▮▮▮

KENNETH ROCKS

▮▮▮▮▮▮

Total Hours    5442.00
Total Wages    343703.39

Curr welfare Status ▮▮▮▮▮▮

Birth Date ▮▮▮▮ Phone ▮▮▮▮



| Month | Rpt | Employer | Grp | R/L | Hours Worked | Wages |
|-------|-----|----------|-----|-----|--------------|-------|
| 10/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 192.50 | 11636.84 |
| 9/2018 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 96.00 | 6159.36 |
| 9/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 113.50 | 8297.44 |
| 8/2018 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 40.00 | 2566.40 |
| 8/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 188.00 | 12715.94 |
| 7/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 152.00 | 8866.16 |
| 6/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 156.00 | 9216.14 |
| 5/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 204.00 | 11826.12 |
| 4/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 168.00 | 9718.00 |
| 3/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 166.00 | 9605.00 |
| 2/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 154.00 | 8757.50 |
| 1/2018 | 51 | 566 MCGOLDRICK ELECTRIC | CN | | 16.00 | 936.00 |

D 00259

# PARTICIPANT MONTHLY HISTORY - INQUIRY

Soc.Sec.Nbr ▓▓▓▓▓ UID# ▓▓▓▓▓

KENNETH ROCKS

▓▓▓▓▓▓▓

Total Hours      7096.50
Total Wages    443407.62

Curr Welfare Status ▓▓▓▓▓

Birth Date ▓▓▓▓    Phone ▓▓▓▓▓



| Month | Rpt | Employer | Grp | R/L | Hours Worked | Wages |
|-------|-----|----------|-----|-----|--------------|-------|
| 1/2018 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9040.00 |
| 12/2017 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 80.00 | 4680.00 |
| 12/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 80.00 | 4520.00 |
| 11/2017 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9594.00 |
| 11/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 40.00 | 2260.00 |
| 10/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 194.50 | 12767.63 |
| 9/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9360.00 |
| 8/2017 | 51 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 195.00 | 12197.25 |
| 8/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 32.00 | 1808.00 |
| 7/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 169.00 | 10149.75 |
| 6/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 192.00 | 12168.00 |
| 5/2017 | 3 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 192.00 | 11159.60 |

D 00260



# PARTICIPANT MONTHLY HISTORY - INQUIRY

Soc.Sec.Nbr ▮▮▮▮▮ UID# ▮▮▮▮▮

KENNETH ROCKS

Total Hours 8801.50
Total Wages 540470.56

Curr Welfare Status ▮▮▮▮

Birth Date ▮▮▮▮ Phone (▮▮▮▮

| Month | Rpt | Employer | Grp | R/L | Hours Worked | Wages |
|-------|-----|----------|-----|-----|--------------|-------|
| 5/2017 | 2 | 566 MCGOLDRICK ELECTRIC | CN | 18 | -192.00 | -11159.60 |
| 5/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 192.00 | 11159.60 |
| 4/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9070.40 |
| 3/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 200.00 | 11338.00 |
| 2/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9070.40 |
| 1/2017 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9070.40 |
| 12/2016 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 160.00 | 9070.40 |
| 11/2016 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 208.00 | 12018.28 |
| 10/2016 | 1 | 566 MCGOLDRICK ELECTRIC | CN | 18 | 168.00 | 9750.68 |
| 9/2016 | 1 | 566 MCGOLDRICK ELECTRIC | CN | | 145.00 | 8861.02 |
| 8/2016 | 1 | 566 MCGOLDRICK ELECTRIC | CN | | 200.00 | 10938.00 |
| 7/2016 | 1 | 566 MCGOLDRICK ELECTRIC | CN | | 144.00 | 7875.36 |

D 00261

# PARTICIPANT MONTHLY HISTORY - INQUIRY



Soc.Sec.Nbr [REDACTED] UID# [REDACTED]

KENNETH ROCKS

Total Hours      9648.50
Total Wages    586716.87

Curr welfare Status [REDACTED]

Birth Date [REDACTED]    Phone [REDACTED]

| Month | Rpt | Employer | Grp | R/L | Hours Worked | Wages |
|-------|-----|----------|-----|-----|-------|-------|
| 6/2016 | 200 | 566 MCGOLDRICK ELECTRIC | CN | | 184.00 | 10062.96 |
| 5/2016 | 201 | 566 MCGOLDRICK ELECTRIC | CN | | 120.00 | 6562.80 |
| 5/2016 | 200 | 566 MCGOLDRICK ELECTRIC | CN | | 32.00 | 1691.20 |
| 4/2016 | 200 | 566 MCGOLDRICK ELECTRIC | CN | | 160.00 | 8456.00 |
| 3/2016 | 200 | 566 MCGOLDRICK ELECTRIC | CN | | 147.00 | 7980.35 |
| 2/2016 | 200 | 980 SHELLY ELECTRIC CO | CN | | 8.00 | 634.20 |
| 2/2016 | 200 | 121 ELLIOTT-LEWIS CORPOR | CN | | 24.00 | 1220.16 |
| 5/2015 | 201 | 1100 UNION ELECTRIC CONTR | CN | | 42.00 | 2204.61 |
| 5/2015 | 200 | 1100 UNION ELECTRIC CONTR | CN | | 32.00 | 1691.20 |
| 4/2015 | 201 | 1100 UNION ELECTRIC CONTR | CN | | 56.00 | 3340.26 |
| 4/2015 | 200 | 1100 UNION ELECTRIC CONTR | CN | | 27.00 | 1454.07 |
| 3/2015 | 201 | 1100 UNION ELECTRIC CONTR | CN | | 15.00 | 948.50 |

D 00262

# PARTICIPANT MONTHLY HISTORY - INQUIRY

Soc.Sec.Nbr ▓▓▓▓▓▓ | UID# ▓▓▓▓▓▓

KENNETH ROCKS

▓▓▓▓▓▓▓▓▓▓

Birth Date ▓▓▓▓▓  Phone ▓▓▓▓▓▓▓▓

Total Hours     10386.50
Total Wages    628481.34

Curr Welfare Status ▓▓▓▓▓▓

| Month | Rpt | | Employer | Grp | R/L | Hours Worked | Wages |
|---|---|---|---|---|---|---|---|
| 3/2015 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 8.00 | 408.16 |
| 2/2015 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 50.00 | 2806.10 |
| 1/2015 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 90.00 | 5408.12 |
| 12/2014 | 200 | 2020 | LOCAL 269 HEALTH & W | CN | | 96.00 | 5050.98 |
| 12/2014 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 42.00 | 3290.79 |
| 11/2014 | 200 | 2020 | LOCAL 269 HEALTH & W | CN | | 168.50 | 8596.87 |
| 11/2014 | 201 | 1100 | UNION ELECTRIC CONTR | CN | | 40.00 | 2882.63 |
| 11/2014 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 20.00 | 1060.40 |
| 10/2014 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 52.00 | 2757.04 |
| 9/2014 | 201 | 1100 | UNION ELECTRIC CONTR | CN | | 128.00 | 6786.56 |
| 9/2014 | 200 | 1100 | UNION ELECTRIC CONTR | CN | | 24.00 | 1721.93 |
| 8/2014 | 200 | 2020 | LOCAL 269 HEALTH & W | CN | | 19.50 | 994.89 |

D 00263