**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | : : : | |
| *Plaintiff*, | : : | CIVIL ACTION NO. 2:21-cv-00096 |
| v. | : : | |
| LOCAL 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | : : : : | Hon. Gerald Austin McHugh |
| *Defendant*. | : : | |

## ORDER

AND NOW, this _____ day of _____, 2021, it is hereby

**ORDERED** that Defendant's Motions to Dismiss and/or Strike are **GRANTED** as follows:

The Secretary's claims in the amended pleading relating to (1) alleged intimidation through the use or threat of physical violence; (2) the alleged intimidation of Michael Coppinger; and (3) the alleged intimidation of Timothy McConnell involving James Ryan are **DISMISSED** and ¶¶ 61-66 (as they relate to Coppinger), 81 (as it relates to Coppinger), and 82-105, Exhibits "5," "6," "7," "9," and "10," and the undated letter by Battle to DOL included as an attachment in Exhibit "1" of the Amended Complaint are **STRICKEN** under Fed. R Civ. P. 12(b)(f) on immaterial, impertinent, and/or scandalous grounds.

_____
Gerald Austin McHugh,
United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | : : : | |
| *Plaintiff*, | : : | CIVIL ACTION NO. 2:21-cv-00096 |
| v. | : : | |
| LOCAL 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | : : : : | Hon. Gerald Austin McHugh |
| *Defendant*. | : : | |

## DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE CERTAIN PORTIONS OF PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, Defendant, Local 98, International Brotherhood of Electrical Workers, hereby moves to dismiss and/or strike portions of the amended complaint by Secretary Martin J. Walsh. The grounds for Defendant's motions are set forth in the accompanying brief in support of Defendant's motions to dismiss and/or strike, dated July 30, 2021.

For the reasons appearing therein, Defendant respectfully submits that these motions should be granted and the relief proposed in the accompanying order, as well as any other relief the Court deems warranted, awarded to the Defendant. A proposed form of order is attached.

**LAMB McERLANE PC**

By: _ /s/Joseph R. Podraza, Jr. _____
     Joseph R. Podraza, Jr., Esq. (PA 53612)
     *jpodraza@lambmcerlane.com*
     William H. Trask, Esq. (PA 318229)
     *wtrask@lambmcerlane.com*
Dated: July 29, 2021     One South Broad Street, Suite 1500
     Philadelphia, PA 19107
     (215) 609-3170 (Direct)
     (610) 430-8000 (Main)
     (610) 692-0877 (Fax)

       *and*

**CLEARY, JOSEM & TRIGIANI, LLP**
William T. Josem, Esquire
*wtjosem@cjtlaw.org*
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
(215) 735-9099

*Counsel for Defendant, Local 98, International*
*Brotherhood of Electrical Workers*

2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | : : : | |
| *Plaintiff*, | : : : | CIVIL ACTION NO. 2:21-cv-00096 |
| v. | : : | |
| LOCAL 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | : : : : | Hon. Gerald Austin McHugh |
| *Defendant*. | : : | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFF'S AMENDED COMPLAINT**

Dated: July 29, 2021

**LAMB MCERLANE, PC**
Joseph R. Podraza, Jr., Esquire
jpodraza@lambmcerlane.com
William H. Trask, Esquire
wtrask@lambmcerlane.com
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 609-3170 (direct)
(610) 430-8000 (main)

*and*

**CLEARY, JOSEM & TRIGIANI, LLP**
William T. Josem, Esquire
wtjosem@cjtlaw.org
325 Chestnut Street, Suite 200
Philadelphia, PA  19106
(215) 735-9099

*Counsel for Defendant, Local 98, International Brotherhood of Electrical Workers*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

I.  PERTINENT BACKGROUND ......................................................................1

II.  ARGUMENT ...............................................................................................4

  A.  The Secretary's Renewed Claims Based on On-Site Intimidation
      by Dougherty Supporters and Longstanding Pattern of Intimidation
      Have Not Been Preserved and Should be Dismissed from the
      Amended Complaint ..............................................................................6

  B.  The Claim Based on Coppinger is not Preserved and Must be Dismissed.................13

  C.  The Claim Based on McConnell Which Involves James Ryan Should be
      Dismissed ..........................................................................................16

  D.  Motion to Strike Attachment to Battle Letter to IVP Welsh Dated
      June 16, 2020 (Exhibit "1") ..................................................................18

III.  CONCLUSION.........................................................................................19

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

*Cases*

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 4, 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................... 5

*Carone v. Whalen,*
    121 F.R.D. 231 (M.D. Pa. 1988) ................................................................................. 6

*Cech v. Crescent Hills Coal Co.,*
    2002 WL 31002883 (W.D. Pa. 2002) .......................................................................... 5

*Crawford v. Washington,*
    541 U.S. 36 (2004) ..................................................................................................... 11

*Del. Health Care Inc. v. MCD Holding Co.,*
    893 F.Supp. 1279 (D. Del. 1995) ................................................................................ 5

*Doe v. Hesketh,*
    77 F.Supp.3d 440 (E.D.Pa. 2015) ............................................................................... 8

*Hodgson v. Local 734, Int'l Bro. of Teamsters,*
    336 F.Supp. 1243 (N.D. Ill. 1972) ............................................................................ 18

*Karpov v. Karpov.,*
    307 F.R.D. 345 (D. Del. 2015) .................................................................................... 6

*Moran v. Pittsburgh-DES Moines Steel Co,*
    183 F.2d 467 (3d Cir. 1950) ...................................................................................... 17

*Morrissey v. City of New York,*
    171 F.R.D. 85 (D.C.N.Y. 1997) .................................................................................. 7

*Ohio v. Roberts,*
    448 U.S. 56 (1980) ..................................................................................................... 11

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) ...................................................................................... 5

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ................................................................................ 4

*Slater v. Erie Lackawanna Railway Co.*,
   300 F.Supp. 1 (W.D. Pa. 1968) .......................................................................... 17

*Temple University v. Salla Bros. Inc.*,
   656 F.Supp. 97 (E.D. Pa. 1986) ........................................................................... 9

*Thornton v. UL Enters*,
   2010 WL 1005021 (W.D. Pa. Mar. 6, 2010) ....................................................... 6

*United States v. Educ. Mgmt. Corp.*,
   871 F.Supp.2d 433 (W.D. Pa. 2012) .................................................................... 5

*Wirtz v. Local Union No. 125, Laborers' Int. Union*,
   389 U.S. 477 (1968) .......................................................................................... 16

**Statutes**

29 U.S.C. § 481 ................................................................................................ *passim*

**Rules**

Fed.R.Civ.P. 12(b) ................................................................................................. 1

Fed.R.Civ.P. 12(f) ............................................................................................ *passim*

Pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, Defendant, Local 98, International Brotherhood of Electrical Workers, has moved to dismiss and/or strike portions of the Amended Complaint by Secretary Martin J. Walsh.

## I.    PERTINENT BACKGROUND

Despite having been commenced with great public fanfare and widespread media attention on January 8, 2021, this is ostensibly a civil action by the United States Department of Labor (hereinafter, the "Secretary" or "DOL"), seeking to void the recent nomination proceeding conducted by Defendant Local 98 on the alleged ground that Local 98 violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), when Defendant's officers, agents and members purportedly interfered with and threatened reprisal against members wishing to run for or nominate others for office in the election.  (Compl., Dkt. No. 1; Ex. "A").  Defendant moved to dismiss the Secretary's pleading, contending that certain of the claims made therein had not been properly preserved, could not be pursued by the Secretary, and were required to be dismissed under exhaustion principles announced by the United States Supreme Court as applicable in § 402 matters.  (MTD, Dkt. No. 6).

Defendant's motion to dismiss was granted in part by Order and Opinion dated April 14, 2021. (Op., Dkt. No. 11).  This Court correctly observed that, under Section 401 of the LMRDA, "[w]hen a member wishes to challenge an election on the basis that it was conducted in violation of [Section 401], he must first exhaust his internal union remedies and file a complaint with the Secretary."  (*Id.* at 10 (citation omitted)).  This Court further correctly found that the LMRDA includes an exhaustion requirement, the purpose of which "'… hoped to accustom members to utilizing the remedies made available within their own organization; at the same time, however, unions were expected to provide responsible and responsive procedures for investigating and

redressing members' election grievances.'" (*Id.* at 10-11).   As to whether the exhaustion requirement was satisfied in a given case, this Court noted:

> We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations.  Union democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question.  *But when a union member is aware of the facts supporting an alleged election violation, the member must, in some discernible fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement.*

(*Id.* at 11 (citation omitted) (emphasis added)). Exhaustion is mandated to ensure that the union has had "a fair opportunity to consider and redress" any alleged § 401 violation before the Secretary may include the violation in his complaint. (*Id.* (citation omitted)).

Applying the exhaustion requirements to the claims in the Secretary's pleading, this Court found that certain of the claims failed to satisfy the exhaustion requirement of § 402(a).  After carefully examining the protest letter Battle submitted to the union's International Vice President ("IVP"), this Court found:

> I am not persuaded that the Defendant had a 'fair opportunity' to investigate intimidation concerning Coppinger based on the vague facts in Battle's internal complaint.  Whether one member out of approximately 4,000 had been 'scared of intimidation' and therefore did not run nor support Battle's candidacy is not a reasonable basis on which the Defendant could be expected [to] embark on a successful investigation.  Compl ¶ 13.  Unlike the presentation of facts regarding McConnell, here there was no specific factual allegation through which he could have been easily identified.
>
> Therefore, the Defendant's motion will be granted … as to the claim regarding Coppinger.

(*Id*. at 15-16).  This Court similarly ruled that the requirement of exhaustion was not met relating to the Secretary's claims connected with (a) on-site intimidation by Dougherty supporters and (b) a longstanding pattern of intimidation.  (*Id*. at 16-19).

On July 1, 2021, the Secretary filed an unopposed motion to amend the complaint, which included a copy of the amended pleading the Secretary sought leave to file of record. (MTA, Dkt. No. 17).  According to the Secretary, the amended pleading "remedies" this Court's April 14, 2021 rulings "that the Secretary did not include in his complaint sufficient evidence that Local 98 was on notice of, or had an opportunity to investigate, allegations relating to the threatening atmosphere outside the union hall the night of the nomination meeting or Local 98's intimidation of member Michael Coppinger from running for Local 98's executive board and nominating member Charles Battle for president." (*Id*. at 4-5 (footnote omitted)).  But, the Court made no such rulings.  To the contrary, based on the contents of the protest letter by Battle to the IVP, this Court specifically found that neither claim satisfied the exhaustion requirement under § 402(a) and hence was not properly preserved by Battle. Specifically, the Court was not persuaded that Local 98 had a "fair opportunity" to investigate claims of intimidation concerning Coppinger, or use or threats of physical force or violence outside the union hall the night of the nomination proceeding, based on the vague facts in Battle's internal complaint.  (Op., Dkt. No. 11, at 13, 15-17).  It was Battle's failure to properly preserve both claims in his protest letter to IVP – and not some pleading infirmity associated with the Secretary's initial pleading – which now forecloses the Secretary from pursuing both of these claims in this civil action.

Moreover, the Amended Complaint includes and refers to several new exhibits.  One such attachment (Am. Compl., Dkt. No. 20, at 30-33) is a document which predates the June 9, 2020 election, is not relevant to the election, cannot be considered as part of Battle's election protest,

and should be stricken.  Other documents, Exhibits "5," "6," "7," "9," and "10" (statements taken by DOL during its investigation from union members, like Messrs. Battle, McConnell, and Borthwick, but after the IVP investigation had concluded) are incomplete, offered without needed context, and, on their faces, raise serious questions about trustworthiness and the legitimacy of the DOL investigation and the Secretary's action. (*Id*. at 51-62, 101-06).  And yet another Exhibit, No. 9, contains information which ***negates*** a portion of the Secretary's claim based on McConnell.  (*Id*. at 101). Finally, several representations in the amended pleading, some purportedly made based on these misleading exhibits, run afoul of Rule 12(f)'s prohibition against the inclusion of immaterial, impertinent, or scandalous matter in a pleading.

When distilled to its essence, the Amended Complaint filed on July 16, 2021, overstates the claims of one malcontent union member, who has a history of being difficult, railing against union leadership, and attempting to impose his preferences over those of the other nearly 4,000 union members. Consequently, Local 98 timely moves to (a) dismiss once again the claims by the Secretary based on Coppinger and the use or threats of physical force or violence outside the union hall on June 9, 2020; (b) dismiss the McConnell claim based on James Ryan's involvement; and (c) strike those portions of the amended pleading which run afoul of Fed.R.Civ.P. 12(f).

## II.    <u>ARGUMENT</u>

In deciding a motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). But complaints that contain only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Normally, in ruling upon a motion to dismiss, only the allegations in the complaint, exhibits attached to the complaint, and matters of public record may be considered by the court. However, where a plaintiff's claims are based on a document that is not attached to the complaint, or is attached but incomplete, the court may consider that document if attached by the defendant to its motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* The Court may also consider matters of public record provided they meet the standard set forth by the Third Circuit. *Id.*

Fed.R.Civ.P. 12(f) authorizes courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion to strike is to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.,* 871 F.Supp.2d 433, 460 (W.D. Pa. 2012). "Immaterial" matter is that which has no essential or important relationship to the claim for relief. *Del. Health Care Inc. v. MCD Holding Co.*, 893 F.Supp. 1279, 1291 (D. Del. 1995). "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Cech v. Crescent Hills Coal Co.,* 2002 WL 31002883, at *28 (W.D. Pa. 2002). A "scandalous" matter or pleading is one that casts a derogatory light on someone, uses repulsive

language, or detracts from the dignity of the court. *Carone v. Whalen,* 121 F.R.D. 231, 232 (M.D. Pa. 1988). The Court possesses considerable discretion in disposing of a motion to strike under Rule 12(f). *Karpov v. Karpov*., 307 F.R.D. 345, 349 (D. Del. 2015); *Thornton v. UL Enters*, 2010 WL 1005021, at *2 (W.D. Pa. Mar. 6, 2010).

As discussed below, Local 98 submits that the Secretary's claims based on Coppinger and on the use or threats of force or violence should, as before, be dismissed as not having been properly preserved under § 402. Similarly, the materials the Secretary offers in the Amended Complaint to support a portion of his McConnell claim actually discredits the claim, requiring its dismissal. Finally, representations in and/or documents attached to the amended pleading that run afoul of Rule 12(f) should be stricken for non-compliance therewith.

### A. The Secretary's Renewed Claims Based on On-Site Intimidation by Dougherty Supporters and Longstanding Pattern of Intimidation Have Not Been Preserved and Should be Dismissed from the Amended Complaint.

In his motion to amend, the Secretary claims his amended pleading establishes Battle's protest letter to the IVP provided sufficient notice to Local 98 to investigate "allegations relating to the threatening atmosphere outside the union hall the night of the nominating meeting" on June 9, 2020. (MTA, Dkt. No. 17, at 4). In support of this novel contention, the Secretary's amended pleading attaches a copy of, and refers to, Battle's protest letter. (*Id*. at 8). But, this Court already has thoroughly examined and analyzed the contents of Battle's protest letter, concluding the letter did not provide the union a "fair opportunity" to investigate the Secretary's claim based on the use or threat of physical violence at the union hall on June 9, 2020. (Op., Dkt. No. 11, at 15-16). Based on this eminently correct conclusion, the Court ruled this claim was not exhausted, is not preserved, and cannot be raised or pursued in this action. (*Id*.) Nothing in the Amended Complaint establishes that the Court's analysis of Battle's protest letter or the resultant ruling is mistaken.

The Secretary instead relies on statements by union members taken by DOL during its investigation, which are attached as exhibits to the Amended Complaint.  (MTA, Dkt. No. 17, at 8).  Ostensibly, some of these statements were obtained by DOL in October 2020, about three (3) months after the IVP investigation concluded (on July 31, 2020). (*Compare* Am. Compl., Dkt. No. 20, at 51-62 *with id*. at 46-49 (IVP denial letter)).  Unquestionably, these statements were not available to the IVP during his investigation and are documents which post-date by many months Battle's protest letter.  Simply, the statements are of no probative value in determining whether Battle's earlier protest letter fairly preserved certain claims the Secretary now wants to pursue.

But more troubling, some of the statements attached to the Amended Complaint are incomplete, and the pleading fails to mention or acknowledge the circumstances surrounding the making of these statements—circumstances the union believes raise serious questions about their trustworthiness. The DOL cover pages to Battle's and McConnell's statements are omitted from the exhibits attached to the pleading, but are integral to both statements.  (*Compare* Am. Compl., Dkt. No. 20, at 51-58 *with* Exs. "B," "C").  The integral nature of the respective cover pages is established by the fact that each was completed on the same day as the statement it precedes.  (*Id*.) Information which may be material to assessing the reliability of both statements is, however, denied this Court and Defendant, because both cover-pages are heavily redacted.  (Exs. "B;" "C"). The Secretary contends the redactions contain information protected by the investigatory file privilege.  (Ex. "D" at 6 (privilege log)).  But, this privilege is a qualified privilege which incidentally is widely held not to apply once the investigation has concluded, as here. *See Morrissey v. City of New York*, 171 F.R.D. 85, 91 (D.C.N.Y. 1997) (no privilege for information once investigation for which it was gathered has been completed and its release cannot jeopardize future investigations).  How the withheld information may enable this Court and Defendant to

better understand the circumstances surrounding the making of the statements, or efforts used to influence the attesters, is not known due to the Secretary's questionable invocation of privilege. Whether these statements are trustworthy, or not, remains unanswered.

Just as concerning is the "coincidental" timing of these statements with other law enforcement activities against certain members of the union by others in the federal government, including the Department of Justice ("DOJ").  This Court is aware that criminal prosecutions by DOJ against certain union representatives became public knowledge in early 2019 upon the DOJ's filing of its indictment.  After the indictment became public, Battle, a malcontent, increased his efforts to undermine the leadership of the union.  The union always suspected that Battle's protest letter was nothing more than a ruse to enable a willing DOL, with anti-union leanings, to interject itself into union affairs under false pretenses, while also trying to assist the DOJ in its criminal prosecutions. The invocation of the investigatory file privilege by the Secretary, as discussed, does suggest a collaboration between DOL and DOJ's ongoing criminal investigation(s) into union representatives.  Additionally, the exhibits the Secretary has for the first time attached to his amended pleading seem to strongly suggest the existence of an unholy alliance between Battle, DOL, and DOJ.

Battle's three page, and McConnell's four page, single-spaced statements were supposedly taken on October 13, 2020, and October 15, 2020, respectively.  (Am. Compl., Dkt. No. 20, at 51-58).  Curiously, on October 16, 2020, the FBI raided Local 98's Spring Garden headquarters, a raid which was based on a DOJ Search and Seizure Warrant dated October 15, 2021, and issued by a Magistrate Judge in the Eastern District of Pennsylvania.[1]  (Ex. "E" (w/redactions)).  The

---

[1] It is well-established that indictments, subpoenas, change of plea hearings, sentencing memoranda, and the like (particularly those items which are in the plaintiff's possession) are quintessential matters of public record which the Court may consider when deciding a motion to dismiss.  *Doe v. Hesketh*, 77 F.Supp.3d 440, 447 (E.D.Pa. 2015)

Warrant indicates it was issued, in part, to investigate interference with protected labor rights by threat of physical violence, and other claims.  (*Id*. (Attachment B)). It was issued while DOL was investigating claims per Battle's protest and appeal to DOL.

Interestingly, among the items the DOJ Search and Seizure Warrant authorized to be seized, were:

9)   For the period June 2020-present:

    a.    Invoices, bills, description of services provided by, and payments made to the law firm of Lamb McErlane.

* * *

    c.    Correspondence, including emails, pertaining to the website thetruthaboutyourlocal.com.

* * *

12)   For the period May of 2020 through the present:

Announcements, rules, communications, including emails, recordings, videos, and photographs pertaining to the election of Local 98 Officers and Boards.

(*Id*. at 4).  Local 98's election matter was before the DOL for investigation when DOJ obtained and executed the Search and Seizure Warrant.

The timing of the Battle and McConnell statements, the issuance of the DOJ Search and Seizure Warrant, and the seizure at the union's headquarters by the FBI, all completed within days of each other, would suggest these actions were coordinated.  This chronology of events suggests Battle's and McConnell's statements to DOL were used, or referenced, to establish probable cause for the issuance of DOJ's Search and Seizure Warrant and subsequent search of the union's premises by the FBI.  It remains unknown and unaddressed by the Secretary in his amended

---

(describing court documents including change of plea hearings and sentencing memoranda in plaintiff's possession as "a matter of public record"); *Temple University v. Salla Bros. Inc.,* 656 F.Supp. 97, 108 (E.D. Pa. 1986) (same).

pleading to what extent the actions of DOL and DOJ were coordinated, or to what extent the coordination between these entities impacted or influenced Battle, McConnell, or their statements. Although the extent of the impact is unknown, it is known that Battle's earlier protest letter is materially different from his months-later DOL statement. (*Compare* Am. Compl., Dkt. No. 20, at 24-27 *with id*. at 51-53). McConnell's DOL statement also is inconsistent with what he told the IVP investigator less than three (3) months earlier. In July 2020, McConnell told Randy Kiefer, the IVP investigator, that he (McConnell) was not subjected to intimidation by any union representative prior to or on the day of the June 2020 nominations; that he did not receive direct threats; did not campaign with Battle; and he never intended to nominate Battle for office in June 2020. (*Id*. at 38-39). His DOL statement in October 2020 tells a markedly different story. (*Id*. at 55-58).

Additionally, that DOL and DOJ were potentially collaborating against the union in late 2020 raises the distinct possibility that this entire action based on Battle's protest is nothing but a sham meant to bolster DOJ's criminal case in the public eye on the eve of trial, *see Philadelphia Inquirer* article (Ex. "F" (according to "anonymous sources familiar with the matter who were not authorized to publicly discuss" search warrants served on the union's office sought evidence of potential crimes ranging from witness intimidation and embezzlement to conspiracy and unauthorized access to a computer). And Battle's protest letter is nothing more than a ruse concocted to promote a misuse and abuse of government authority. DOJ's October 15, 2020 service of a subpoena on the union to testify before a grand jury on matters including those referenced in DOJ's Search and Seizure Warrant—and separate service of a grand jury subpoena on the union's undersigned counsel to also testify about matters involving representation of the union—would seem to suggest as much. (Exs. "G" (w/redactions); "H").

Establishing the trustworthiness of the statements included with the Amended Complaint rests with the Secretary since he is offering and relying on them. *E.g., Ohio v. Roberts*, 448 U.S. 56, 66 (1980) (statement must bear adequate "'indicia of reliability'" which can be inferred if a hearsay exception applies, but otherwise must be sufficiently proven), *abrogated on other grounds, Crawford v. Washington*, 541 U.S. 36 (2004).  As discussed above, a dark cloud shrouds the trustworthiness of the statements at issue here, one which needs to be dispelled in a full and forthright manner by the Secretary.  Until that cloud is first lifted, or the questions over the trustworthiness of the statements satisfactorily answered, the statements lack the sufficient indicia of reliability required to be given any weight or consideration. Accordingly, Exhibits "5," "6," "7," "9," and "10" should be stricken from the Amended Complaint unless and until the Secretary satisfactorily establishes that these documents are sufficiently reliable to be given consideration. (Am. Coml., Dkt. No. 20, at 51-62, 101-06).  Alternatively, they should be stricken as immaterial and impertinent to the Court's exhaustion analysis.

Separately, IVP's final denial letter to Battle (dated July 31, 2020), attached as Exhibit "4" to the Amended Complaint, also refutes the Secretary's position that the IVP understood that Battle's written protest included, directly or by reasonable inference, the claims of threatened or actual violence by union representatives on June 9, 2020.  (Am. Compl., Dkt. No. 20, at 46-49). In the July 31st letter, the IVP delineates the claims he believed the member's protest actually raised and preserved.  Nowhere does the IVP indicate that he understood the member's protest included the acts or threatened acts of violence on June 9, 2020.  To the contrary, the IVP understood Battle's protests to be of the garden variety:  (a) griping about an allegedly vague nomination notice; (b) fussing over an allegedly confusing nomination process; (c) quibbling over an allegedly confusing nomination sign on a door at Local 98's headquarters; (d) whining about

11

allegedly being prevented from viewing others' nomination forms; (e) speculating over a member's decision not to nominate Battle for office; and (f) exaggerating about contact between himself and member Bark, his good friend.  The IVP mentions no awareness of violence, actual or threatened, as part of Battle's protest.

Lastly on this issue, the representations by the Secretary in the Amended Complaint surprisingly support Defendant's position that any claim based on use of or threatened use of physical force or violence is not part of this action, notwithstanding his inexplicable representations to the contrary in his motion to amend.  (*Compare* Am. Compl., Dkt. No. 20, at ¶ 106 *with* MTA, Dkt. No. 17, at 4, 11-13, 15).  According to the Amended Complaint, the Secretary specifically states he "makes no allegation in this civil action that Defendants deprived members of their LMRDA rights by use of physical force or violence or by threatening the use of physical force or violence."  (Am. Compl., Dkt. No. 20, at ¶ 106).  Yet, despite this clear, unambiguous representation, the Amended Complaint contains numerous representations which would be immaterial and impertinent to any claim other than one related to the use of physical force or the threat thereof by Defendant.  (*Id.* at ¶¶ 82-105).  Consequently, the representations in these paragraphs, ¶¶ 82-105 of the subject pleading, are plainly immaterial, impertinent, and scandalous insofar as they portray the union in a false light.

This Court should reaffirm its unassailable ruling that Battle did not preserve—but could and should have preserved—the above-discussed claim in his protest letter.  The claim is now forever lost, the Secretary is barred from pursuing it in this action, and ¶¶ 82-105 of the Amended Complaint, as well as the DOL statements attached as exhibits thereto, should be stricken under Rule 12(f).

**B.   The Claim Based on Coppinger is not Preserved and Must be Dismissed**

In its April 14, 2021 Memorandum, this Court correctly ruled that Local 98 did not have fair notice of, opportunity to investigate, or opportunity to redress the claim based on intimidation of Coppinger.  (Op., Dkt. No. 11, at 15-16).  The Secretary is wrong in contending the Amended Complaint somehow discredits this Court's April 14th ruling.  *See* MTA, Dkt. No. 17, at 1, 11-15. Relying on postings made on a loathsome website, the Secretary makes the astonishing claim that, "As Local 98 demonstrates in the defamation action it initiated against Battle on July 17, 2020, Local 98 had information from which it could have easily identified Michael Coppinger, the nephew of retired Local 98 Business Representative Ed Coppinger."  (*Id.* at 14).  This contention is not only incorrect, it borders on disingenuous.

The website to which the Secretary's amended pleading refers is one admittedly paid for, created, and administered by Battle.  (Am. Compl., Dkt. No. 20, at 64-99; Ex. "I" (state court docket); "J" at ¶¶ 5, 11, 13, 91-92, 95-96 (Battle's Answer/Counterclaim to state complaint)).  The website hijacks the emblem of the IBEW to mislead the public into believing it is a site sanctioned by the union; it is not.  Battle allows the website to continuously publicly display postings by anonymous persons of a vile homophobic, anti-sematic, racist, or misogynistic nature.  Examples of these offensive posts include:

> I think somebody did f**k you in the a** but it wasn't Larry as much as you wish it was.  The only a** that Larry may ever have f**ked was your mothers.
>
> * * *
>
> Who cares if he's gay.  We all know he is not.  But [w]hy are you giving $120,000.00 to the LGBTQ?  Ohhhh that's why his daughter is a carpet muncher
>
> * * *
>
> Somewhere in Docville … John is screaming nonsense at one or multiple people, Foy is counting his money under his bed, [name of a female representative of the

> union] is eating a chocolate cake with a bottle of wine, [name of another female
> representative of the union] is taking it up the a** by her new lawyer boyfriend
> and everyone else is crying in their Target sheets paid for by Local 98!

(Ex. "K" (with other examples)).  The separate sister-website, also paid for, created, and administered by Battle, additionally permits and displays similarly dreadful postings made anonymously, but also allows the posting of links to websites displaying child pornography, sexual encounters between siblings, "nude skinny teens," sexual acts between a mother and daughter, "drugged naked teens," and other similarly depraved, even unlawful, matters of a sexual nature.  (Ex. "L").  These websites illustrate Battle's nature as an agitator and spoilsport and demonstrate why he is hardly the standard-bearer of upright reform portrayed in the Secretary's pleading.

As the Amended Complaint notes, the union and two of its members sued Battle and several John Does for defamatory misrepresentations made anonymously about them on the website.  The legal viability of the action was confirmed by a state court ruling on December 3, 2020.  (Ex. "I" (Dkt. Entry, 03-DEC-2020)).  Ignored in the Amended Complaint is the fact that the state defamation complaint had not yet been filed when the IVP investigation occurred (between June 16, 2020 and July 31, 2020).  Instead, the defamation complaint was filed on August 20, 2020, nearly a month after IVP denied Battle's protest. (*Id*. (Dkt. Entry, 20-AUG-2020).  It is beyond conjecture or speculation to suggest, as the Secretary does here, that the union knew of the representations in the defamation complaint, which post-dates the IVP investigation, when the IVP investigation was ongoing.  This is a non sequitur.

But beyond that, the Secretary fails to grasp the nature of a defamation lawsuit.  The lawsuit was brought because the anonymous postings at issue were false. Said another way, the action memorializes the union's and its co-plaintiffs' belief that the website was not credible, did not

contain postings which the union could reasonably believe were true, and was being exploited and manipulated to harm them and others associated with the union.  Simply, the postings on the website are neither credible nor reliable sources for the preceding IVP investigation.

Ultimately, the Secretary's logic behind the making of his claim that the union was fairly notified about Coppinger through the website, actually works to undermine his position. Following the Secretary's logic, Battle, as the founder, creator, and administrator of the website must have been fully aware of the postings made on it, including those about Coppinger.  Battle's knowledge of the Coppinger website postings, coupled with his claimed close relationship to Coppinger, demonstrate further why the Coppinger claim should have been specifically referenced in Battle's protest letter.  But, as this Court already correctly ruled, Battle did not sufficiently reference the Coppinger claim in the protest letter.   Presumably, Battle did not sufficiently reference the Coppinger claim because he questioned its merit, much like the postings about Coppinger on Battle's website.

Finally, the Amended Complaint provides new support for this Court's earlier dismissal of the Coppinger claim from this action.  Nowhere in the amended pleading does the Secretary contend the IVP's investigation was anything but fair, unbiased, and thorough.  As the July 28th IVP investigative report establishes, Coppinger actually refused to participate in any manner, including by interview, in IVP's investigation of Battle's protest, despite investigator Randy Kieffer's desire to meet and speak with Coppinger. (Am. Compl., Dkt. No. 20, at 42).  Coppinger's refusal to participate, or otherwise cooperate, during the IVP investigation was even noted in IVP's final decision letter denying Battle's protest.  (*Id*. at 48).  IVP Welsh wrote, "5) You [Battle] also claim that the member who was going to nominate you [Coppinger] was intimidated by Local #98. That member, however, would not speak with International Representative Kieffer, and therefore,

this allegation is without evidence." (*Id.*)  By refusing to participate in the IVP's investigation, Coppinger unfairly deprived Local 98 of any opportunity to address any claim associated with him, and denied the IVP of any opportunity to fairly and reasonably consider—let alone decide the legitimacy of or redress—any claim associated with Coppinger.  Coppinger's conduct is not condoned by the United States Supreme Court in these matters.  Coppinger's misconduct before the IVP is not excused merely because he cooperated in DOL's later investigation, which itself is open to criticism as discussed above.

Under our binding precedent, the Coppinger claim cannot be pursued by the Secretary when the union was unfairly denied the ability to address or redress the claim prior to DOL's involvement.  *Wirtz v. Local Union No. 125, Laborers' Int. Union*, 389 U.S. 477, 484 (1968).  This Court was correct in ruling the Coppinger claim was not properly preserved, and the Secretary is now barred from pursuing the claim.  The Court's ruling should be reaffirmed as to the Amended Complaint, and ¶¶ 61-66, 81, 99-105 of the amended pleading stricken as they relate to Coppinger.

### C.  The Claim Based on McConnell Which Involves James Ryan Should be Dismissed

This Court denied Defendant's initial motion to dismiss the McConnell claim.  The Secretary's Amended Complaint includes new information about the McConnell claim which was not included in the pleading subject to this Court's April 14, 2021 ruling.  This additional information included in the amended pleading discredits the Secretary's contention that McConnell was intimidated or harassed during a conversation with James Ryan on or around June 8, 2020.  (Am. Compl., Dkt. No. 20, at ¶¶ 54-55).

Attached as Exhibit "9" to the amended pleading is a DOL statement purportedly hand-written by James Ryan on October 26, 2020.  Ryan's statement reads:

> Was called by Brian Eddis when Tim McConnell was running for office in Local 98 election.  Phone conversation consitive [sp.] of Brian Eddis telling me that

16

>Tim was being used and manipulated in running in the election. The people he was running with would not look out for him.  I spoke with Tim on the phone about what Brian said shortly after.  I told Tim it is not worth the aggrevetion [sp.] to run.  People do not care.  Take care of your Family.

The Ryan statement is evidence offered by the Secretary and therefore is binding on him.

*E.g., Moran v. Pittsburgh-DES Moines Steel Co*, 183 F.2d 467, 471 (3d Cir. 1950) (party may be bound by unfavorable testimony supplied by supposedly favorable witness); *Slater v. Erie Lackawanna Railway Co*., 300 F.Supp. 1, 3 (W.D. Pa. 1968)(party bound by testimony of his own witnesses where it is not contradicted or impeached by other evidence).  According to Ryan, no threat of any nature was made or relayed to McConnell during their call.  Instead, Ryan relayed fatherly advice to McConnell for him to take into consideration on whether or not to run for a union position.  Ryan's account of the call with McConnell is consistent with McConnell's text on June 8, 2020—the day before the nomination proceeding—stating, "Yo I'm out I thought about it and I'm 100% against what happened on that website and don't want to be tied in with that just wanted a different face."  (Rule 26(f) Meeting, Dkt. No. 9, at 9).  The website to which McConnell is referring is the loathsome one created, paid for and administered by Battle, as discussed above.

Ryan's statement is consistent with the representations McConnell made to the IVP investigator in July 2020. According to the investigator's report,

>Brother McConnel [sp.] is personal friends with Jim Ryan who is owner of a Local Union #98 signatory contractor Par 4 Electric.  Brother McConnel [sp.] also works for Par 4 Electric quite often.  Brother McConnel [sp.] told me that Business Manager Dougherty and Local Union #98 Agent Brian Eddis had a conference call with Jim Ryan regarding Tim McConnel [sp.] running for e-board and how that may not be good for the Local Union.  Again, Brother McConnel [sp.] said there were no direct threats but again made him feel uncomfortable.

(Am. Compl., Dkt. No. 20, at 38).

Under these circumstances, any claim by the Secretary based on the call between Ryan and McConnell on October 26, 2020, should be dismissed.

### D.   Motion to Strike Attachment to Battle Letter to IVP Welsh Dated June 16, 2020 (Exhibit "1").

The Amended Complaint includes as Exhibit "1" a copy of a letter by Battle to IVP Welsh dated June 16, 2020.  Included with the June 16th letter is an attachment, an undated letter by Battle to DOL which was drafted, completed, and sent before the June 9, 2020 nomination proceeding (indeed, the letter requests that DOL stop the nomination proceeding from occurring).  (Am. Compl., Dkt. No. 20, at 30-34). The attached letter by Battle to DOL delivered before the June 9th union proceeding cannot be considered part of Battle's election protest, *see Hodgson v. Local 734, Int'l Bro. of Teamsters*, 336 F.Supp. 1243, 1250 (N.D. Ill. 1972) (letter sent three days prior to election may not be considered part of the election protest).  The undated attachment to the letter dated June 20, 2020, included in Exhibit "1" to the amended pleading, should be stricken under Rule 12(f).

## III.   <u>CONCLUSION</u>

The Secretary's amended pleading asserts claims which were not raised, specifically or by reasonable inference, in Battle's internal protest to Local 98. Under the governing United States Supreme Court precedent, the Secretary is barred from now attempting to litigate these claims against Local 98. The amended pleading also includes matters which run afoul of Fed.R.Civ.P. 12(f) and should be stricken.  The Defendant respectfully submits this Court should grant the relief it requests.

Respectfully submitted,

**LAMB McERLANE PC**

Dated: July 29, 2020                    By: */s/Joseph R. Podraza, Jr.*
Joseph R. Podraza, Jr., Esquire
*jpodraza@lambmcerlane.com*
William H. Trask, Esquire
*wtrask@lambmcerlane.com*
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 609-3170 (direct)
(610) 430-8000 (main)

*and*

**CLEARY, JOSEM & TRIGIANI, LLP**
William T. Josem, Esquire
*wtjosem@cjtlaw.org*
325 Chestnut Street, Suite 200
Philadelphia, PA 19106
(215) 735-9099

*Counsel for Defendants, Local 98,
International Brotherhood of Electrical
Workers*

19

# Exhibit "A"

Unlimited Access          Log In

NEWS    SPORTS    BUSINESS    OPINION    POLITICS    ENTERTAINMENT    LIFE    FOOD    HEALTH    REAL ESTATE

ADVERTISEMENT

# U.S. Labor Dept. sues to void Local 98 leadership election, alleging Johnny Doc and others threatened union rivals

by Jeremy Roebuck, Updated: January 8, 2021



TIM TAI / STAFF PHOTOGRAPHER

The U.S. Department of Labor sued to void the most recent election of the city's politically powerful electrician's union Friday, saying labor leader John J. Dougherty and his allies had threatened those who had considered challenging them for leadership positions.

In a complaint filed in federal court in Philadelphia, government lawyers asked a judge to force Local 98 of the International Brotherhood of Electrical Workers to hold a new vote for several top posts. The suit, if successful, would not bar the current officeholders from running for their posts again.

https://www.inquirer.com/news/john-dougherty-johnny-doc-threats-local-98-labor-department-lawsuit-battles-20210108.html
© 2021 The Philadelphia Inquirer, LLC

It followed an October FBI raid on the union's Spring Garden offices during which agents sought evidence of similar claims that the union's top officials had intimidated rivals who questioned Dougherty's leadership after his 2019 indictment on bribery and embezzlement charges.

"Not only were members in good standing allegedly intimidated out of exercising their right to seek union office, but the entire Local 98 membership was allegedly denied its right to nominate and vote for candidates of its choosing," said First Assistant U.S. Attorney Jennifer Arbittier Williams, whose office brought that indictment and is representing the Labor Department in Friday's suit.

ADVERTISEMENT

The lawsuit comes at afraught moment for Dougherty, better known by his nickname "Johnny Doc," and the roughly 4,000-member union he has led for nearly three decades. Under his management, it has grown into one of the most influential labor organizations in the state, with generous campaign spending and mobilization that has helped place dozens of mostly Democratic elected officials and government functionaries into their positions.

He has persistently denied any wrongdoing, but a trial later this year on the criminal charges threatens to send him to prison.

**INQUIRER MORNING NEWSLETTER**

Get the news you need to start your day

your@email.com

Sign Up

Union spokesperson Frank Keel panned the new civil suit, noting that it was filed against a politically active union in the waning days of the Trump administration.

"John and the other duly elected Local 98 officers want to have an election and look forward to their day in court," it read. "The union has never been stronger than it is currently, which is the reason no one ran against the incumbent team."

ADVERTISEMENT

The 13-page complaint, however, offered another explanation for the lack of alternate candidates.

Union leaders launched a pressure campaign, it alleged, meant to scare three potential contenders for executive positions out of the race. All of them said they were threatened with being denied future work if they kept up their efforts.

"It'll be a long three years if you lose," Dougherty is accused of telling one opposition candidate, Timothy McConnell. "If you ain't with me, you're against me."

Within days, the lawsuit claims, Dougherty ally and Philadelphia Democratic Ward Leader Brian Eddis passed on another message, telling a friend of McConnell's he "did not want to see anything happen to" him.

ADVERTISEMENT

Other potential challengers reported being intimidated by Dougherty's supporters outside of a nomination meeting or receiving messages purportedly from Dougherty himself, and passed through intermediaries, that their "careers would be finished" if they ran.

All three ended their candidacies before the official nomination deadline.

© 2021 The Philadelphia Inquirer, LLC

U.S. Labor Dept.: Johnny Doc, other Local 98 leaders, threatened rivals for leadership posts

Union leadership elections are strictly governed by federal laws that require that any member of a union can run for its leadership without interference or threats of reprisal.

And Local 98 has previously drawn government scrutiny for its management of competitive internal races.

ADVERTISEMENT

In 2014, the union signed a compliance agreement with the Labor Department after investigators determined union leaders had improperly disqualified eligible candidates for office. Even afterward, the potential candidates involved in that probe said they were blackballed and denied work for nearly two years, government lawyers said Friday.

The latest Labor Department investigation began after Charles Battle, a potential challenger to union president Brian Burrows, filed a complaint with the government in August — around the same time that the union sued him and his wife for defamation in Common Pleas Court.

That suit accused the Battles of running the anonymous website thetruthaboutyourlocal.com, which became a clearinghouse for disaffected Local 98 members to post complaints about Dougherty and his inner circle.

"The same guy who paid for and is responsible for an anonymous, malicious, sexually harassing website that exists solely to smear John Dougherty, other Local 98 officers, and, worse, our family members, is the one behind [the Labor Department] lawsuit," Keel said. "This is his M.O. — when things don't go his way, run to the government."

Battle's lawyer, Clifford E. Haines, did not immediately respond to requests for comment Friday.

After the FBI raid in October he said: "Regrettably, the conduct of Local 98 with respect to Mr. Battle is not something new. There is a reason its membership will only speak out anonymously."

Dougherty's trial in the federal bribery and embezzlement case is scheduled for March. He is accused of bribing Philadelphia City Councilmember Bobby Henon, a longtime Local 98 member, with a salary to buy his advocacy on matters of interest to Dougherty and the union he represents. Both men have denied the charges.

Dougherty also stands accused of embezzling more than $600,000 from Local 98's coffers along with five other union officials and allies.



Posted: January 8, 2021 - 2:50 PM
**Jeremy Roebuck** | **@jeremyrroebuck** | **jroebuck@inquirer.com**

💬 View 39 Comments

ADVERTISEMENT

© 2021 The Philadelphia Inquirer, LLC

# Exhibit "B"

**U.S. Department of Labor**          Office of Labor-Management Standards
Philadelphia-Pittsburgh District Office
Mailstop OLMS/21
1835 Market Street
Philadelphia, PA  19103-2968
(215) 861-4820  Fax: (215) 861-4849



DATE:          October 13, 2020

TO:            140-6019880(01)

FROM:          *Angela Menges*
               Angela B. Menges
               Investigator

SUBJECT:       International Brotherhood of Electrical Workers (IBEW) Local 98
               1701 Spring Garden Street
               Philadelphia, PA 19130
               LM: 001-938

RE:            Signed Statement of Local 98 Member/Complainant Charles Battle


On the above date, PHIPGHDO District Director Megan Underwood and I met with IBEW Local 98 member/Complainant Charles Battle at the PHIDO for the purpose of obtaining a signed statement **(see attachment)**.  Battle voluntarily agreed to provide the signed statement. Battle reviewed the content of the signed statement prior to signing.   Prior to signing, OLMS discussed the purpose of the statement with Battle and advised him OLMS is conducting an official investigation pursuant to the LMRDA.



IBEW Local 98
October 13, 2020
Page 2 of 2



**Attachment:**

Signed statement of Complainant Charles Battle, October 13, 2020.

## STATEMENT

I, Charles Battle, residing at 8710 Lykens Lane, Philadelphia, PA 19128, make the following voluntary statement to Angela B. Menges and *Megan Underwood* who have identified themselves to me as Investigators of the Office of Labor-Management Standards, U.S. Department of Labor.  Investigators Menges and *Underwood* have advised me that they are conducting an official investigation for the U.S. Department of Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).

I, Charles Battle, have personal knowledge of all of the facts in this statement.

I am employed as an electrician for Shaeffer Electric. I have been a member of IBEW Local 98 for 30 years.

I was going to run for president on a slate with Timothy McConnell and Michael Coppinger, both of whom intended to run for the executive board positions. I did not campaign because I did not want to tip my hand and get blowback from the local. My family would have been harassed, and I would have received phone calls from members and officers asking, "What are you doing?"

I have stood up during membership meetings and said some hard words for Business Manager John Dougherty. It's a disgrace the way the union is being run. It's a problem when members don't have a voice or say and are told 'Do as I say and shut up.'" Business Agent Bobby Bark has called me numerous times in the past after membership meetings asking, "What are you doing? Why are you asking questions?"

I got calls from Bark after the November 2019 membership meeting and after the January and February 2020 meetings. Bark also came to my job site and harassed me on two occasions. Bark showed up at my home after a membership meeting in January 2020 where I stood up and asked Dougherty if the local was going to get back money it had donated to a man who actually stole it. I was working in my garage when I received a phone call from Bark saying he wanted to speak with me. Bark told me he was standing in my driveway. My wife was scared because a union officer showed up at our house. I agreed to go out with Bark to get him away from the house.

One week before the nomination meeting, Bark wanted to talk with me over beers and I told him no. I kept asking Bark what he wanted, but Bark would not say. On Sunday, June 7, 2020 — two days prior to the nomination meeting — my doorbell rang at 8:30 p.m. Bark showed up unannounced and uninvited. I asked him, "What are you doing? I made it clear do not come to my house for this B.S.!"

Bark wants to know why I'm so upset with the union. I've said to Bark, "I can't ask questions without being harassed." Bark wants to know why I'm questioning their leaders, and I've told him I'm a dues-paying member and I have a right to do so. Ask any person in the local — they're afraid to stand up and ask questions. They're petrified of what's going to happen because you're not going to work. I'm currently working because my contractor knows Dougherty and

Initials: C B

Page 1 of 3

DOL_LOCAL 98_00408

how he operates. However, I know guys who have been out of work two years because of Dougherty. One such member is Rob Mission. Once the unemployment rate gets so high, we go to a 50/50 list and solicit our own job (SOJ). You can't take a job unless the hall hires four guys off the list. If you take it, the contractor is going to pay a price, so the contractor is not going to hire you.

On June 7, 2020, the Sunday before the nomination meeting, I learned that McConnell and Coppinger, my intended running mates, were not going to run for office. McConnell told me that Dougherty talked to McConnell on the phone and said, "You're either with us or against us. If you're against us, it'll be a long three years."

I entered the union hall at 4:50 p.m. on June 9, 2020, and was handed a nomination slip by Local 98 Attorney Tara Chupka. The nomination slip asked for the name of the nominee and the office for which he was being nominated; the name, signature, and card number of the nominator; and the name, signature, and card number of the nominee. I completed the slip with my own information and gave the slip to Chupka. Coppinger, who was supposed to nominate me, had not yet arrived at the union hall to complete the nominator portion of the form. I told Chupka when my nominator arrived, he would fill out his portion. I did not tell Chupka the name of my nominator.

Word quickly spread that I had submitted my nominating slip. After I submitted the slip, I sat in my truck to wait until the nomination meeting began at 7:00 p.m. Ten minutes after submitting my slip, member David Kelly called and asked me if I was running for president. Kelly lives in Flourtown, Pennsylvania. I was blown away that the news had reached Flourtown so quickly. ~~Sitting in my truck, I saw~~ business agents going around talking to the crowd that had gathered. Member Dominic Bassiano said the business agents told him they heard he was going to nominate me for office. Bassiano had no idea I intended to run for office. I think the agents were fishing to find out who was doing what.

*CB* [margin annotation] *later on*

I sat in my truck until 6:40 p.m. and then went to the hall to meet up with members John Kerr and Phil Borthwick, who were among those gathered outside the union hall. At 6:50 p.m., Coppinger called Borthwick and told him he was not coming to nominate me. It was at that point I learned that Coppinger had been intimidated out of ~~running for office. Sometime~~ between 5:00 and 6:50 p.m. on June 9, 2020, Coppinger received a phone call from his uncle, Ed Coppinger. Ed Coppinger used to be a Local 98 business agent. Dougherty had called Ed Coppinger, who relayed the message to his nephew Mike Coppinger. Mike Coppinger was told his career would be finished if he ran. Mike Coppinger is young and has a wife, child, and mortgage — a lot at stake.

*CB* [margin annotation] *Nominating*

When we learned Coppinger was not coming, Kerr and Borthwick expressed willingness to nominate me instead. However, I was scared for them. I told Borthwick, "We're cows walking to the slaughterhouse." We would have to walk the gauntlet, down a walkway past 300 guys to the hall. With this in mind, as well as both of my running mates now out of the race and having just learned Coppinger was not coming to nominate me, I was intimidated. I saw how aggressively they were trying to find out who nominated me. Out of 3,500-4,000 members in the local, they zeroed in that fast. I told Kerr and Borthwick, "Let's just leave and deal with this another day." Kerr later told me he was glad I decided not to run. I didn't know at the time that I could

Initials: *CB*

Page 2 of 3

DOL_LOCAL 98_00409

nominate myself. If I'd known that, there's not a chance I'd put anyone else or their career in jeopardy. They'd already be out of work by now if they had gone through with nominating me.

I left at 7:05 p.m. without attending the meeting or attempting to do so. The local has a pattern of intimidating people out of running. If they're on the outs with a guy, the hall will tell the contractor, "The next five guys we send you are bums," so the contractor fires the guys. The owner of contractor Par 4 is good friends with McConnell and told McConnell this.

I declare under penalty of perjury that the foregoing statement consisting of three pages, each of which I have initialed, is true and correct.

| | |
|---|---|
| *10-13-2020* | *Charls Batte* |
| Date | Signature |
| *10-13-2020* | |
| Date | Witness Signature |
| *10/13/2020* | *Angela Menges* |
| Date | Witness Signature |

Signed at: *OLMS - 170 S. Independence Mall West, Suite 760*
                        Location   *Philadelphia, PA 19106*

Initials: *CB*

Page 3 of 3

DOL_LOCAL 98_00410

Exhibit "C"

**U.S. Department of Labor**     Office of Labor-Management Standards
Philadelphia-Pittsburgh District Office
Mailstop OLMS/21
1835 Market Street
Philadelphia, PA  19103-2968
(215) 861-4820  Fax: (215) 861-4849



DATE:       October 15, 2020

TO:         140-6019880(01)

FROM:       *Angela Menges*
            Angela B. Menges
            Investigator

SUBJECT:    International Brotherhood of Electrical Workers (IBEW) Local 98
            1701 Spring Garden Street
            Philadelphia, PA 19130
            LM: 001-938

RE:         Signed Statement of Local 98 Member Timothy McConnell

On the above date, PHIPGHDO District Director Megan Underwood and I met with IBEW
Local 98 member Timothy McConnell at the PHIDO for the purpose of obtaining a signed
statement **(see attachment)**. McConnell voluntarily agreed to provide the signed statement.
McConnell reviewed the content of the signed statement prior to signing.  Prior to signing,
OLMS discussed the purpose of the statement with McConnell and advised him OLMS is
conducting an official investigation pursuant to the LMRDA.



IBEW Local 98
October 15, 2020
Page 2 of 2



**Attachment**:

Signed statement of Timothy McConnell, October 15, 2020.

<u>STATEMENT</u>

I, Timothy McConnell, residing at 119 Thorndike Road, Philadelphia, PA 19115, make the following voluntary statement to Megan Underwood and Angela B. Menges who have identified themselves to me as a District Director and an Investigator of the Office of Labor-Management Standards`, U.S. Department of Labor.  District Director Underwood and Investigator Menges have advised me that they are conducting an official investigation for the U.S. Department of Labor, Office of Labor-Management Standards, pursuant to the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).

I, Timothy McConnell, have personal knowledge of all of the facts in this statement.

I am an electrician and have been employed by the Gordon Group for a little over two years. I have been a member of IBEW Local 98 since 2004.

Everything was hush hush in the beginning with names as far as who was running for office. I knew from member Phil Borthwick that other members were thinking of running, including Charles Battle. I did not attend any of the meetings those members held because I wanted to keep to myself. I didn't want it getting back to the union. I tried to keep my intention to run to myself until the very end. There were times I had guys calling me asking, "Who's running? Who do you know?" I said nothing.

Initially, I was not completely certain I was going to run. I know a few of the Local 98 business agents and Local 98 Safety Director Mark Lynch. For that reason, I thought it might have caused some tension if I ran. I am a committeeman in the City of Philadelphia. I see the way things are handled if you go against John Dougherty.

My uncertainty also stemmed from what I heard other members endured in the past. Two terms ago in 2014 or 2015, two members tried to run for office and one of them, Ken Rocks, went through a lot of allegations against him because of it. It was hard for Rocks to find jobs after the election because there would have been repercussions if a company hired him. They'll put a steward on the job who will make the job harder to finish, and that costs the company. It's 50/50 — for every guy you hire, they give you one more who's bad. It's one thing after another. They figure out a way. Rocks had a good reputation and then couldn't find jobs after that. After that election, Rocks was brought up on internal union charges and was fined $50,000 for whatever they said he did. Rocks appealed the charges to the IBEW International and won — his charges were overturned. Local 98 has never had an election. Ken Rocks was the only one who ever ran for office in the years I have been a Local 98 member.

I had been thinking of running for an executive board position for about six months. I made my final decision to run on June 8, 2020, the day before the nomination meeting. I sent a text message to Safety Director Lynch on June 8, 2020, to let him know I was going to run. I have known Lynch since he was about 10 or 11 years old. I texted Lynch because I knew the business agents were going to be having a meeting at the union hall that night to discuss their potential opponents and their nominators and to try to devise a strategy for eliminating the opposition. I

*[Handwritten margin note: TM / I heard]*

Initials: *T.M.*

told Lynch if anyone had questions they could call me. Five seconds later, Lynch called me from the union hall. I was in my backyard when I received the call.

Business Manager Dougherty got on the phone and talked with me for about 45 minutes. It was unusual because I had never talked with Dougherty like that before. I had only shaken his hand and exchanged a brief greeting with Dougherty a few times over the years. Dougherty asked me who I worked for. We talked about jobs, past business agents, politics, and who I was friends with. I don't even talk to any of the people he mentioned. I thought Dougherty was just trying to figure out where I was coming from. I knew the business agents were there and were probably listening. I heard one of the business agents say, "I never would've thought it was him."

Dougherty began the conversation by saying, "Tim, why are you running? Why do you want to fix something that isn't broken?" I told him, "John, obviously something is broken. There are federal charges against five or six people." Dougherty responded, "Don't worry about it. I'm gonna beat it."

Dougherty told me, "It'll be a long three years if you lose." Every time Dougherty would say a roundabout threat, I would tell him, "John, I get it." It got bad toward the end. Dougherty told me, "They're just trying to use you to run because they started this website." Dougherty was referring to a website called "Know the Truth About Your Union.com." I did not know about the website at that time. At some point Dougherty handed the phone back to Lynch. I then heard Dougherty screaming in the background. I thought Dougherty was reading a comment on the website. Dougherty took the phone back and shouted at me, "If you ain't with me, you're against me!" Dougherty went on screaming for 30 seconds and then hung up the phone before I had a chance to say anything. Despite this, I still planned to go through with running.

*T.M. Got back on Phone ~~and~~ gave mark the Phone T.M.*

Lynch ~~called me back~~ after Dougherty ~~hung up on me~~. After that call, my phone blew up. I sat in my backyard for four hours fielding non-stop phone calls. I received a phone call from Business Agent Rodney Walker later in the evening. I probably received 100 calls that night.

I called Battle and Borthwick to tell them what happened. They told me to get in touch with member Mike Coppinger. I did not know Coppinger but knew he was thinking of running for office. Coppinger told me he was taking a nap and woke up to 50 calls. Coppinger told me, "I'm out. It ain't worth it." I was surprised because all along Battle and Borthwick said Coppinger was 100% in. I'm not certain why Coppinger did not run, but I'm sure Coppinger got a call. Coppinger's uncle was a Local 98 business agent for years and was around the office a long time. I guess Dougherty probably reached out to the uncle who probably called Coppinger. Coppinger has young children, and that may have factored into his decision not to run. Once Coppinger was out, it was down to me, Battle, and the other guy I did not know. The other guy also dropped out, but I did not know anything about it. Once everyone else dropped out, I did too.

Dougherty also got to me through my friend James Ryan, who owns a company called Par 4 Electric. I have worked for Ryan six or seven times. On the same night as my call with Dougherty, Ryan was contacted by Brian Eddis, who is a Local 98 member and a local politician. According to Ryan, Eddis called Ryan and while on the phone with Ryan, Dougherty got on the phone. Dougherty told Ryan, "Call Timmy. We don't want to see Timmy get hurt by doing this." I took that as losing jobs — not physically hurt, but I more or less knew he meant

Initials: *T.M*

Page 2 of 4

financially. I think Dougherty probably started looking up what jobs I had worked. I talked with Ryan the following morning, June 9, 2020. Ryan said to me, "I guess you decided to run." Ryan said he told them, "Timmy's a grown man. There's nothing I can say to change his mind." They also called Paul Diaz, a steward with whom I worked for three years.

I ultimately decided not to run because I did not want to jeopardize my job. Business Agent Bobby Thompson runs the downtown Philadelphia area, where I work along with 40 to 50 other members. They can always whisper in the foreman's or owner's ear, "I want you to lay this guy off." This has happened to many members, but Rocks is the one who went through it the most. People have been removed from different jobs at some points, but there's no way to prove that it happens — you'll never be able to. Dougherty sends people to do it. I cannot afford to lose my job because I have four young children. I would have a financial hardship. They would take my job if I ran.

I was also thinking about my brother-in-law who is a second period apprentice. I just got him into Local 98 one or two years ago. Safety Director Lynch and Business Agent Rodney Walker helped me. I knew that Dougherty knew about my brother-in-law. My brother-in-law is still in school, and I thought Dougherty could possibly fail him or somehow figure out how to get to him too. My other brother-in-law works for Hatzel & Buehler, an electrical company. I was more afraid for my brothers-in-law than for myself. That's pretty much what held me back from coming out earlier about running for office.

Sometime between lunch and the end of the day on June 9, 2020, I received a text message from an unknown number. I was included in a group text with 13 other phone numbers I did not recognize. The text contained a link to the website, "Know the Truth About Your Union.com." I did not know the site existed until I received the text. Safety Director Lynch sent a text message to me asking, "Why did someone send you this website?" Someone in that group obviously already sent the message back to them.

I sent a text message to Safety Director Lynch and told him, "I don't want it to be personal. I'm out because I don't agree with what's on that website." After Dougherty screamed at me about the website, I went onto the site to see what it was about. Someone had made a comment about Dougherty's wife to the effect of, "John hides behind his sick wife." I believe Dougherty looked at the website and thought of me as "You're with them, so you're a part of it."

I am out because of how nominations went and because multiple people told me the same story, that they know Dougherty — he's bigger than all of them. He'll go above them. He'll find a way. Everyone knows how it is. No one's going to run. Once Dougherty is gone, you'll see 100 people running for office.

Initials: _T. M_

I declare under penalty of perjury that the foregoing statement consisting of four pages, each of which I have initialed, is true and correct.

10 / 15 / 2020
Date

10-15-20
Date

10/15/2020
Date

Timothy McComm
Signature

Witness Signature

Angela Menges
Witness Signature

Signed at: OLMS - 1835 Market St, 21ˢᵗ Fl, Philadelphia, PA
Location
R103

Initials: T.M.

Page 4 of 4

DOL_LOCAL 98_00412.4

Exhibit "D"

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

I.   DOCUMENTS OTHER THAN EMAIL AND TEXT MESSAGES

a.   Documents withheld as privileged

| Pages | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| 297 | Various | Various OLMS investigators | Investigators' notes (handwritten and typed) on interviews, case meetings, investigative plan, status of investigation, attorneys' advice | AC, DP, IF, WP |
| 2 | Undated | Menges | Investigator's list of contacts with notes on investigative plan | DP, IF |
| 2 | Undated | Menges | Incomplete numbered list of documents in case file | DP, IF |
| 10 | Undated | Lucy | DOE investigator's handwritten notes on case meetings, investigative plan, status of investigation, attorneys' advice | AC, DP, IF, WP |
| 62 | Undated | Menges | Draft interview questions | DP, IF |
| 2 | Undated | Bennett | Attorney's notes on investigative plan | AC, DP, IF, WP |
| SS | Undated | Snyder | Investigator's spreadsheet analyzing records received | DP |
| 2 | Undated | Bennett | Attorney's notes on legal research | WP |
| 1 | Undated | Bennett | Attorney's notes on legal analysis | WP |
| 6 | 6/23/14 | Rizzo | Complainant interview questionnaire of K. Rocks, Jr. | DP, IF |
| 11 | 7/16/14 | Rizzo | Report of 2014 investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP |
| 2 | 7/31/14 | Ferris | OLMS agenda for 2014 SOL/OLMS case meeting | DP, AC |
| 9 | 8/22/14 | CRLM attorney Shireen McQuade | Draft legal analysis | AC, DP, WP |
| 2 | 9/10/14 | Ferris | OLMS case memo to Fox summarizing 2014 investigation, SOL/OLMS meeting, and next steps | DP, AC |
| 7 | 11/13/14 | Ballard | Report of 2014 investigation of supervised election prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP |
| 3 | 8/18/20 | Underwood | OLMS election case opening memo to Shanker for review by National Office | DP, IF |
| 3 | 8/18/20 | Underwood | Draft of election case opening memo | DP, IF |
| 1 | 8/18/20 | Smallwood | OLMS case processing worksheet | DP, IF |
| 1 | 8/18/20 | Smallwood | OLMS case narrative worksheet | DP, IF |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Pages | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| 12 | 8/18/20 | Menges, Smallwood | Investigators' handwritten notes on interview of C. Battle | DP, IF |
| 16 | 8/18/20 | Menges | Draft complainant interview questionnaire and report of interview of C. Battle | DP, IF |
| 17 | 8/19/20 | Menges and Smallwood | Complainant interview questionnaire of C. Battle | DP, IF |
| 2 | 8/19/20 | Shelton | DOE election case evaluation form | DP, IF |
| 8 | 8/19/20 | Menges | ECHO issue page documenting investigative plan | DP, IF |
| 2 | 8/24/20 | Underwood | Lead request to Wheeler for IBEW interviews and documents | DP, IF |
| 2 | 8/24/20 | Underwood | Draft lead request for IBEW interviews and documents | DP, IF |
| 4 | 8/27/20 | Menges and Ciekielski | Report of interview of J. Battle | IF |
| 4 | 8/27/20 | Menges, Ciekielski | Draft report of interview of J. Battle | DP, IF |
| 11 | 8/28/20 | Menges and Spallino | Report of interview of P. Borthwick | IF |
| 11 | 8/28/20 | Menges, Spallino | Draft report of interview of P. Borthwick | DP, IF |
| 1 | 8/28/20 | Menges | Draft memo re: news article | DP, IF |
| 3 | 8/31/20 | Menges | Draft report of interview of T. McNichols | DP, IF |
| 3 | 8/31/20 | Menges | Report of interview of T. McNichols | IF |
| 1 | 9/1/20 | Graziano | Auxiliary report of investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP |
| 8 | 9/1/20 | Menges and Spallino | Report of interview of T. McConnell | IF |
| 4 | 9/1/20 | Menges and Spallino | Report of interview of J. Kerr | IF |
| 2 | 9/1/20 | Menges, Spallino | Draft report of interview of C. Battle | DP, IF |
| 8 | 9/1/20 | Menges, Spallino | Draft report of interview of T. McConnell | DP, IF |
| 2 | 9/2/20 | Menges | Case memo re: unsuccessful interview attempts | IF |
| 4 | 9/2/20 | Menges, Spallino | Draft report of interview of J. Kerr | DP, IF |
| 2 | 9/2/20 | Menges | Draft memo re: unsuccessful interview attempts | DP, IF |
| 4 | 9/4/20 | Menges, Spallino | Draft report of interview of R. Bark | DP, IF |
| 2 | 9/4/20 | Menges, Spallino | Draft report of interview of T. Chupka | DP, IF |
| 3 | 9/4/20 | Menges, Spallino | Draft report of interview of M. Lynch | DP, IF |
| 22 | 9/4/20 | Menges, Spallino | Draft union official interview questionnaires and reports of interview of B. Burrows | DP, IF |
| 4 | 9/9/20 | Snyder, Smallwood | Draft report of interview of R. Kieffer | DP, IF |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Pages | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| 3 | 9/9/20 | Snyder, Smallwood | Draft report of interview of M. Welsh | DP, IF |
| 1 | 9/14/20 | Menges | Draft memo re: text message from Bark to Battle | DP, IF |
| 1 | 9/16/20 | Menges | Draft memo re: no Dougherty interview | DP |
| 23 | 9/17/20 | Menges | Report of investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP |
| 3 | 9/17/20 | Menges | List of exhibits contained in the report of investigation | DP, IF |
| 26 | 9/17/20 | Menges | Draft report of investigation and list of exhibits prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP |
| 10 | 9/22/20 | Underwood | Drafts of OLMS analysis and recommendation memo | DP, IF, WP |
| 2 | 9/30/20, 10/1/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of J. Kerr with SOL supervisor's comments | AC, DP, IF, WP |
| 3 | 9/30/20, 10/1/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of T. McConnell with SOL supervisor's comments | AC, DP, IF, WP |
| 3 | 10/1/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of P. Borthwick with SOL supervisor's comments | AC, DP, IF, WP |
| 3 | 10/2/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of C. Battle | AC, DP, IF, WP |
| 3 | 10/2/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of P. Borthwick | AC, DP, IF, WP |
| 2 | 10/2/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of J. Kerr | AC, DP, IF, WP |
| 3 | 10/2/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of T. McConnell | AC, DP, IF, WP |
| 3 | 10/9/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of P. Borthwick | AC, DP, IF, WP |
| 2 | 10/9/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of J. Kerr | AC, DP, IF, WP |
| 3 | 10/13/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of C. Battle | AC, DP, IF, WP |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Pages | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| 2 | 10/13/20 | Menges | Draft memo re: statement of C. Battle | DP, IF, WP |
| 4 | 10/15/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of T. McConnell | AC, DP, IF, WP |
| 1 | 10/15/20 | Menges | Draft memo re: statement of P. Borthwick | DP, IF, WP |
| 2 | 10/15/20 | Menges | Draft memo re: statement of T. McConnell | DP, IF, WP |
| 5 | 10/15/20 | Menges | Draft subpoena requests | AC, DP, WP |
| 7 | 10/19/20 | Lucy | Draft agenda for SOL/OLMS case meeting | AC, DP |
| 7 | 10/19/20 | Menges, Spallino | Draft report of interview of K. Rocks, Jr. | DP, IF |
| 7 | 10/19/20 | Lucy | Draft agenda for SOL/OLMS case meeting | AC, DP |
| 7 | 10/20/20 | Lucy | OLMS agenda for SOL/OLMS case meeting with attorney's notes | AC, DP |
| 3 | 10/20/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of K. Rocks, Jr. | AC, DP, IF, WP |
| 3 | 10/20/20 | Menges, Underwood | Draft election case review checklist | DP, IF |
| 2 | 10/21/20 | Smallwood | Draft summary of violations letter to IBEW and Local 98 | DP |
| 23 | 10/21/20 | Menges | Draft memo re: transcription of audio file of trial board hearing of K. Rocks, Jr. | DP, IF |
| 4 | 10/22/20 | Menges, Ciekielski | Draft report of interview of D. Smith | DP, IF |
| 4 | 10/22/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of K. Rocks, Jr. | AC, DP, IF, WP |
| 4 | 10/22/20 | Bennett | Draft unsigned statement prepared by attorney based on report of interview of K. Rocks, Jr. | AC, DP, IF, WP |
| 6 | 10/26/20 | Lucy | Drafts of OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps | DP, AC |
| 4 | 10/26/20 | Menges, Ciekielski | Draft report of interview of J. Ryan | DP, IF |
| 1 | 10/26/20 | Menges | Draft memo re: statement of K. Rocks, Jr. | DP, IF, WP |
| 2 | 10/26/20 | Menges | Draft memo re: dates of employment of K. Rocks, Jr. | DP, IF, WP |
| 2 | 10/27/20 | Menges | Memo re: layoff of Local 98 members | IF |
| 3 | 10/27/20 | Lucy | Draft of OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps with attorney's notes | DP, WP, AC |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Pages | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| 3 | 10/27/20 | Menges, Ciekielski | Draft report of interview of L. Thomson | DP, IF |
| 2 | 10/27/20 | Menges | Draft memo re: layoff of Local 98 members | DP, IF, WP |
| 3 | 10/28/20 | Lucy | OLMS case memo to Shanker summarizing investigation, SOL/OLMS meeting, and next steps | AC, DP |
| 3 | 10/28/20 | Lucy | Revised draft of OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps | DP, AC |
| 1 | 10/29/20 | Menges | Draft memo re: unsuccessful interview attempts | DP, IF, WP |
| 1 | 10/29/20 | Menges | Memo re: unsuccessful interview attempts | DP, IF, WP |
| 21 | 10/29/20 | Bennett | Draft legal analysis with SOL supervisor's comments | AC, DP, WP |
| 21 | 10/29/20 | Bennett | Draft legal analysis with SOL supervisor's comments | AC, DP, WP |
| 10 | 10/29/20 | Bennett | Draft complaint with SOL supervisor's comments | AC, DP, WP |
| 1 | 10/30/20 | Smallwood | Draft time waiver letter to Local 98 | DP |
| 10 | 10/30/20 | Bennett | Draft complaint | AC, DP, WP |
| 21 | 10/30/20 | Bennett | Draft legal analysis | AC, DP, WP |
| 11 | 11/2/20 | Menges | Draft interview questions for J. Dougherty | DP, IF, WP |
| 7 | 11/4/20 | Menges | Draft interview questions for J. Dougherty with attorneys' notes | AC, DP, IF, WP |
| 1 | 11/5/20 | Smallwood | Draft time waiver letter to Local 98 | DP |
| 6 | 11/13/20 | Menges | Draft interview questions for J. Dougherty revised based on SOL's input | AC, DP, IF, WP |
| 15 | 11/19/20 | Menges, Spallino | Draft report of interview of J. Dougherty | DP, IF |
| 12 | 11/19/20 | Menges, Spallino | Interview questions for J. Dougherty with investigator's handwritten notes of interview | AC, DP, IF, WP |
| 1 | 11/20/20 | Bennett | List of supplemental exhibits | DP, IF, WP |
| 10 | 11/29/20 | Bennett | Draft complaint | AC, DP, WP |
| 10 | 11/29/20 | Bennett | Draft complaint | AC, DP, WP |
| 21 | 11/29/20 | Bennett | Legal analysis | AC, DP, WP |
| 21 | 11/29/20 | Bennett | Draft legal analysis | AC, DP, WP |
| 2 | 12/11/20 | Smallwood | Draft voluntary compliance agreement with attorney's changes | AC, DP, WP |
| 2 | 12/11/20 | Smallwood | Draft voluntary compliance agreement | AC, DP |
| 1 | 12/14/20 | Smallwood | Draft time waiver letter to Local 98 | DP |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Pages | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| 4 | 12/18/20 | Smallwood | Draft voluntary compliance agreements | AC, DP |
| 1 | 1/6/21 | Menges | Draft letter notifying Battle of filing of suit | DP |

b. **Redactions**

| Bates Numbers | Date | Author/Preparer | Description | Privilege(s) |
|---|---|---|---|---|
| DOL_LOCAL 98_00523–00524 | 3/9/15 | [Confidential] | Confidential request for investigation by Judicial Conduct Board | IF |
| DOL_LOCAL 98_00525–00527 | 3/18/15 | Judicial Conduct Board | Letter acknowledging complaint (labeled confidential under Pa. Const. Art. V, § 18; J.C.B.R.P. 17, 18) | IF |
| DOL_LOCAL 98_00406–00407 | 10/13/20 | Menges | Portions of OLMS cover memo describing confidential witness statements | IF |
| DOL_LOCAL 98_00411–00412 | 10/15/20 | Menges | Portions of OLMS cover memo describing confidential witness statements | IF |

## II.   EMAIL AND TEXT MESSAGES

a. **Documents withheld as privileged**

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| Various | From Lucy to Bennett, Lupardo | Providing passwords for files | AC, DP, IF | N/A |
| Various | From Menges to Lucy, Smallwood | Providing passwords for files | DP, IF | N/A |
| Various | From Menges to Lucy, Underwood | Transmitting supplemental report of investigation exhibits | DP, IF, WP | Yes |
| Various | From Menges to Lucy, Smallwood | Transmitting and describing status of draft reports of interviews, questionnaires, and memos | DP, IF | Yes |
| 8/18/20 | From Smallwood to Menges; cc Underwood | Transmitting case opening documents | DP, IF | Yes |
| 8/18/20 | From Smallwood to Shanker; from Shanker to Shelton | Transmitting case opening memo to DOE and within DOE for assignment | DP, IF | Yes |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 8/19/20 | From Shelton to Lucy; cc Shanker | Transmitting election case evaluation form and case opening memo | DP, IF | Yes |
| 8/21/20 | From Menges to Lucy | Transmitting draft complainant questionnaire | DP, IF | Yes |
| 8/24/20 | Between Shanker and Lucy | Discussing preliminary meeting on election complaint, investigative plan, and next steps | DP | N/A |
| 8/24/20 | From Shelton to SOL; cc Lucy, Shanker | Transmitting case opening memo to SOL | AC, DP, IF | Yes |
| 8/24/20 | From Smallwood to Wheeler; cc Underwood, Menges | Transmitting lead request to Wheeler for IBEW interviews and documents | DP, IF | Yes |
| 8/26/20 | From Menges to Ciekielski | Sharing draft complainant questionnaire and draft interview questions | DP, IF | Yes |
| 8/26/20 | Between Menges and Spallino | Transmitting report of interview from 2014 complaint investigation | DP, IF | Yes |
| 8/27/20 | From Menges to Underwood, Smallwood | Seeking input on investigative plan | DP, IF | N/A |
| 8/27/20, 8/28/20 | Among Menges, Graziano, Snyder; cc Underwood, Smallwood | Discussing investigative plan, status of investigation | DP, IF | N/A |
| 8/31/20 | From Smallwood to Menges | Transmitting investigator's handwritten notes on interview of C. Battle | DP, IF | Yes |
| 9/1/20 | From Menges to Lucy | Transmitting report of interview of T. McNichols | IF | Yes |
| 9/1/20 | From Menges to Lucy | Transmitting draft report of interview of J. Battle | DP, IF | Yes |
| 9/1/20 | From Menges to Lucy | Transmitting draft report of interview of C. Battle | DP, IF | Yes |
| 9/1/20 | From Graziano to Menges | Transmitting to SOL auxiliary report of investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP | ROI yes; other attachments produced |
| 9/1/20 | Between Menges and Snyder | Discussing investigative plan, status of investigation | DP, IF | N/A |
| 9/2/20 | From Shelton to SOL | Transmitting to SOL auxiliary report of investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP | Yes |
| 9/8/20 | Between Menges and Snyder | Discussing investigative plan, status of investigation | DP, IF | N/A |
| 9/8/20 | Between Spallino and Menges | Discussing analysis of exhibits | DP, IF | N/A |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 9/11/20 | From Lucy to Shanker | Seeking input on investigative plan | DP | N/A |
| 9/11/2020 | Between Lucy and Underwood | Discussing investigative plan | DP | N/A |
| 9/15/20 | Among Smallwood, Menges, Snyder, Underwood | Discussing status of investigation, investigative plan | DP, IF | N/A |
| 9/17/20 | Between Shanker and Underwood | Inquiring into status of investigation and recommendation on SOL's behalf | AC, DP | N/A |
| 9/17/20 | From Shanker to Lucy | Discussing status of investigation and recommendation | DP | N/A |
| 9/17/20 | Between Shanker and Lucy | Describing conversation with SOL and advice regarding status of investigation and recommendation | AC, DP | N/A |
| 9/16/20– 9/18/20 | Among Lupardo, Pifer, Shanker | Discussing status of investigation and SOL case assignment, arranging call to discuss | AC, DP | N/A |
| 9/18/20 | From Shelton to SOL; cc Lucy, Shanker | Transmitting report of investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP | Yes |
| 9/18/20 | From Shanker to Lucy | Transmitting report of investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP | Yes |
| 9/18/20 | Between Shanker and Lupardo | Inquiring into status of investigation and recommendation | AC, DP | N/A |
| 9/18/20 | From Lupardo to SOL, OLMS | Forwarding report of investigation and assigning case within SOL | AC, DP | Yes |
| 9/18/20 | From Lucy to Underwood | Advising re: analysis and recommendation memo | DP | N/A |
| 9/18/20 | Between Lucy and Bennett | Discussing analysis and recommendation | AC, DP | N/A |
| 9/18/20 | Between Underwood and Shelton, cc Shanker | Discussing analysis and recommendation | DP | N/A |
| 9/21/20 | Between Underwood and Snyder; cc Smallwood | Requesting and discussing analysis of exhibits | DP, IF | N/A |
| 9/22/20 | From Lucy to Bennett | Discussing 2014 complaint resolution | AC, DP | N/A |
| 9/22/20 | From Pifer to Underwood; cc Shanker | Inquiring into status of investigation and recommendation | DP | N/A |
| 9/22/20 | From Underwood to Lucy, Lupardo, Pifer, Shanker | Transmitting draft analysis and recommendation memo, password within OLMS and to SOL | AC, DP, WP | Yes |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 9/22/20 | Among Lupardo, Shanker, Pifer; from Lupardo to Bennett | Inquiring into status of investigation and recommendation | AC, DP | N/A |
| 9/22/20 | From Underwood to Lucy, Lupardo, Pifer, Shanker; from Lupardo to Bennett; from Lucy to Bennett, Lupardo | Transmitting draft analysis and recommendation memo within OLMS and to SOL | AC, DP, IF, WP | Yes |
| 9/22/20 | Between Lupardo and Bennett | Discussing analysis and recommendation | AC, DP | N/A |
| 9/24/20 | From Underwood to Lucy | Transmitting draft time waiver letter | DP | Yes |
| 9/24/20 | Between Lucy and Bennett | Discussing status of investigation, investigative plan, transmitting Word files of reports of interviews to attorney | AC, DP, IF | Yes |
| 9/24/20 | Between Lucy and Underwood | Transmitting and discussing draft time waiver | DP | Yes |
| 9/24/20, 9/25/20 | Among Shanker, Underwood, Lupardo, Pifer, Lucy; cc Bennett | Discussing time waiver | AC, DP | N/A |
| 9/30/20 | From Lucy to Bennett | Transmitting Word file of report of interview to attorney | AC, IF | Yes |
| 9/30/20, 10/1/20 | From Underwood to Lucy; from Lucy to Bennett | Transmitting Word files of reports of interviews and complainant questionnaire, passwords | AC, IF | Yes |
| 9/23/20, 9/30/20, 10/1/20 | Among Bennett, Lupardo, Shireen McQuade (CRLM attorney) | Requesting and transmitting files from 2014 complaint investigation | AC, DP | Legal analysis yes; VCA produced |
| 10/1/20 | Among Lucy, Underwood, Spallino; from Lucy to Bennett | Requesting and transmitting report of 2014 investigation prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP | Yes |
| 10/1/20 | From Lucy to Bennett | Transmitting 2014 case memo and agenda for SOL/OLMS case meeting | AC, DP, IF, WP | Yes |
| 10/1/20 | Between Lucy and Bennett; between Lucy and Underwood | Discussing status of investigation, investigative plan, attorney's recommendation | AC, DP, IF | N/A |
| 10/1/20 | Between Ferris and Lucy | Discussing 2014 complaint investigation files | DP, IF | N/A |
| 10/1/20, 10/2/20, 10/20/20 | Between Lupardo and Bennett | Discussing draft statements prepared by attorney based on reports of interviews | AC, DP, IF, WP | Yes |
| 10/1/20 | Between Lupardo and Bennett | Discussing resolution of 2014 complaint investigation | AC, DP | N/A |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 10/2/20 | From Underwood to Lucy; cc Menges, Ballard; from Lucy to Bennett | Forwarding report of 2014 investigation of supervised election prepared by OLMS for review by National Office and SOL | AC, DP, IF, WP | Yes |
| 10/2/20 | From Bennett to Lucy; from Lucy to Underwood, Menges | Transmitting and discussing draft statements prepared by SOL based on reports of interviews | AC, DP, IF, WP | Yes |
| 10/2/20 | From Underwood to Lucy, Menges | Discussing investigative plan | DP | N/A |
| 10/5/20 | From Lucy to Underwood | Discussing investigative plan | DP | N/A |
| 10/6/20 | Between Lucy and Bennett | Discussing status of investigation, investigative plan | AC, DP, IF | N/A |
| 10/8/20 | Between Lucy and Underwood | Discussing investigative plan, status of investigation | DP, IF | N/A |
| 10/8/20 | Between Snyder and Underwood | Discussing investigative plan, status of investigation | DP, IF | N/A |
| 10/8/20 | Between Bennett and Lucy | Discussing status of investigation, investigative plan | AC, DP, IF | N/A |
| 10/8/20 | Between Lupardo and Bennett | Discussing investigative plan, timeline | AC, DP | N/A |
| 10/9/20 | Among Shanker, Underwood, Bennett, Lupardo, Pifer, Lucy | Discussing investigative plan, timeline | AC, DP | N/A |
| 10/14/20 | Between Bennett and Lupardo | Discussing status of investigation | AC, DP, IF, WP | N/A |
| 10/14/20 | Among Lucy, Menges, Underwood; between Lucy and Bennett | Discussing status of investigation documented in case memo | AC, DP, IF, WP | Yes |
| 10/14/20 | From Lucy to Shanker; from Lucy to Underwood, Menges | Forwarding attorney's advice and seeking input on investigative plan and attorney's advice | AC, DP, IF, WP | Yes |
| 10/14/20, 10/15/20 | Among Shanker, Lucy, Bennett, Lupardo | Discussing subpoena, status of investigation, investigative plan | AC, DP, IF | N/A |
| 10/14/20 | Between Menges and Rocks | Discussing records requested from witness | IF | N/A |
| 10/14/20 | Between Lupardo and Bennett | Discussing status of investigation, investigative plan, timeline | AC, DP | N/A |
| 10/14/20 | Between Lupardo and Bennett | Discussing subpoena | AC, DP | N/A |
| 10/15/20 | Among Underwood, Adam Welsh (RSOL attorney), Lupardo; cc Menges, Lucy, Bennett | Discussing and transmitting draft subpoena requests | AC, DP, IF, WP | Yes |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 10/16/20 | From Janeen Fillari (RSOL paralegal) to Underwood; cc Adam Welsh (RSOL attorney), Menges; from Welsh to Lupardo; cc Bennett | Discussing and transmitting subpoena requests | AC, DP, IF, WP | Yes |
| 10/16/20 | Between Janeen Fillari (RSOL paralegal) and Underwood; cc Menges | Discussing draft subpoena request | DP, IF | N/A |
| 10/19/20 | From Lucy to Menges | Transmitting draft agenda for SOL/OLMS case meeting | AC, DP | Yes |
| 10/19/20 | From Lucy to Menges, Underwood; cc Vamvakas | Transmitting draft agenda for SOL/OLMS case meeting and describing plan for meeting | AC, DP | Yes |
| 10/19/20 | From Lucy to Pifer, Shanker, Lupardo, Bennett | Transmitting agenda for SOL/OLMS case meeting, discussing plan for meeting | AC, DP | Yes |
| 10/19/20 | From Lucy to Bennett | Sending memos on signed statements | AC, DP, IF, WP | Yes |
| 10/19/20 | Between Lucy and Menges | Discussing draft agenda for SOL/OLMS case meeting, discussing plan for meeting, discussing investigative plan | DP, IF | Yes |
| 10/19/20 | Between Lucy and Bennett | Discussing status of investigation | AC | N/A |
| 10/19/20 | From Pifer to Lupardo and Shanker; between Lupardo and Bennett | Discussing case, news coverage of FBI raid of Local 98 | AC, DP | N/A |
| 10/16/20, 10/20/20 | Among Shanker, Lupardo, Underwood, Pifer, Lucy, Bennett, Smallwood, Vamvakas, Menges | Discussing subpoena, terms, revisions | AC, DP | N/A |
| 10/20/20 | From Underwood to Smallwood | Transmitting draft election case review checklist | DP, IF | Yes |
| 10/20/20, 10/26/20 | Between Lucy and Bennett | Discussing signed statement of K. Rocks, Jr. | AC, DP, IF, WP | N/A |
| 10/20/20 | Between Lucy and Bennett | Discussing status of investigation | AC, DP, IF | N/A |
| 10/21/20 | Among Smallwood, Lucy, Vamvakas, Shanker, Pifer | Transmitting and discussing draft summary of violations letter | DP | Yes |
| 10/21/20 | Between Lucy and Bennett; between Lucy and Smallwood | Seeking and discussing SOL's input on draft summary of violations letter | AC, DP | N/A |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 10/21/20 | From Menges to Lucy, Smallwood | Transmitting report of interview of K. Rocks, Jr. with attachments | DP, IF | RI yes; other attachments produced |
| 10/21/20 | Between Lucy and Smallwood | Discussing draft summary of violations letter, investigative plan | DP | N/A |
| 10/21/20, 10/22/20, 10/23/20 | Between Lucy and Bennett; between Lucy and Shanker | Discussing SOL's analysis and recommendation | AC, DP | N/A |
| 10/21/20 | Between Bennett and Lupardo | Discussing draft summary of violations letter | AC, DP, WP | N/A |
| 10/21/20 | Among Lucy, Menges, Smallwood | Discussing status of investigation, investigative plan, consultation with SOL | AC, DP, IF | N/A |
| 10/20/20, 10/22/20 | From Bennett to Lucy; among Lucy, Smallwood, Menges | Transmitting draft statement prepared by SOL based on report of interview, discussing investigative plan | AC, DP, IF, WP | Yes |
| 10/22/20 | Between Lupardo and Bennett | Discussing status of investigation | AC, DP, IF | N/A |
| 10/22/20 | Between Bennett and Lucy | Discussing status of investigation, investigative plan | AC, DP, IF | N/A |
| 10/23/20 | Between Lucy and Bennett | Discussing status of investigation, investigative plan | AC, DP, IF | Yes |
| 10/26/20, 10/27/20 | Between Lucy and Bennett | Transmitting, describing, and seeking attorney's input on draft case memo | AC, DP | Yes |
| 10/26/20 | From Menges to Lucy, Smallwood; from Lucy to Bennett | Transmitting signed statement of K. Rocks, Jr. and memo on same | AC, DP, IF, WP | Memo yes; statement produced |
| 10/26/20 | Between Menges and Lucy | Discussing exhibits to OLMS's report of investigation | DP, IF | N/A |
| 10/26/20, 10/27/20 | Between Bennett and Lupardo | Discussing legal analysis, settlement, case approval status, time waiver | AC, DP | N/A |
| 10/26/20 | Between Lucy and Bennett | Discussing status of investigation, investigative plan | DP, IF | N/A |
| 10/26/20 | Between Lucy and Bennett | Discussing exhibits to OLMS's report of investigation for legal analysis | AC, DP, IF, WP | N/A |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 10/27/20 | Between Shanker and Lucy | Transmitting and revising draft of OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps | AC, DP | Yes |
| 10/27/20 | Among Lupardo, Bennett, Pifer, Shanker, Lucy | Discussing case approval status | AC, DP | N/A |
| 10/27/20 | Among Lucy, Smallwood, Menges | Discussing Local 98's response to summary of violations letter, consultation with SOL, investigative plan | AC, DP | N/A |
| 10/27/20 | Between Lucy and Bennett | Discussing waiver, Local 98's response to summary of violations letter | AC, DP, IF | N/A |
| 10/28/20 | From Juanita King (CRLM administrative assistant) to Bennett, Lupardo, Simms | Transmitting to SOL OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps | AC, DP | Yes |
| 10/28/20 | From Shelton to OLMS and SOL | Transmitting OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps | AC, DP | Yes |
| 10/28/20 | From Shanker to Shelton | Transmitting for processing OLMS case memo summarizing investigation, SOL/OLMS meeting, and next steps | AC, DP | Yes |
| 10/28/20 | Among Lucy, Snyder, Smallwood | Discussing status of investigation and investigative plan | DP | N/A |
| 10/28/20, 10/29/20, 10/30/20 | Among Legum, Bennett, Lupardo | Discussing legal analysis and case status | AC, DP, WP | Yes |
| 10/28/20 | Between Shanker and Bennett | Discussing plan for call with Local 98's counsel | AC, DP | N/A |
| 10/29/20 | Between Lucy and Bennett | Forwarding memo re: layoff of Local 98 members, password, discussing investigative plan | AC, DP, IF, WP | Yes |
| 10/29/20 | Between Bennett and Lupardo | Transmitting, requesting feedback on, and discussing draft complaint | AC, DP, WP | Yes |
| 10/30/20 | Among Bennett, Smallwood, Pifer, Shanker, Lucy, Lupardo; from Smallwood to Menges | Discussing investigative plan, time waiver | AC, DP | N/A |
| 10/30/20 | Among Shanker, Menges, Smallwood, Lucy, Pifer, Lupardo, Bennett; from Menges to Ciekielski | Discussing documents from Local 98, time waiver | AC, DP | N/A |

Page 13 of 20

Secretary of Labor v. Local 98, IBEW, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 10/30/20 | Between Shanker and Lucy | Discussing investigative plan | DP | N/A |
| 10/30/20 | Among Pifer, Bennett, Smallwood, Shanker, Lucy | Discussing investigative plan, time waiver | AC, DP | N/A |
| 10/30/20 | Between Lupardo and Bennett | Discussing status of investigation, investigative plan, waiver | AC, DP | N/A |
| 11/2/20 11/4/20 | Among Menges, Lucy, Smallwood; from Lucy to Bennett | Transmitting draft interview questions for J. Dougherty with comments | AC, DP, IF, WP | Yes |
| 11/2/20 | Among Smallwood, Menges, Lucy | Discussing status of investigation, investigative plan | DP, IF | N/A |
| 11/2/20 | Between Lucy and Bennett | Discussing status of investigation, investigative plan | AC, DP | N/A |
| 11/2/20 | Among Menges, Lucy, Smallwood | Discussing investigative plan | DP, IF | N/A |
| 11/4/20 | Between Lupardo and Bennett | Transmitting attorney's comments on draft interview questions for J. Dougherty within SOL and discussing interview plan | AC, DP, IF, WP | Yes |
| 11/4/20 | Among Smallwood, Lucy, Menges; from Menges to Spallino | Discussing investigative plan, draft interview questions for J. Dougherty, time waiver | DP | N/A |
| 11/4/20 | Between Lucy and Bennett | Discussing investigative plan and time waiver | AC, DP, IF | N/A |
| 11/4/20 | From Lucy to Menges | Transmitting draft interview questions for J. Dougherty with DOE and attorney's comments | AC, DP, IF, WP | Yes |
| 11/6/20 | From Lupardo to Lucy, Bennett, Shanker, Pifer; cc Smallwood, Menges, Vamvakas | Discussing time waiver and investigative plan | AC, DP | N/A |
| 11/13/20 | From Lucy to Menges | Transmitting draft interview questions for J. Dougherty with DOE and SOL comments | AC, DP, IF, WP | Yes |
| 11/13/20 | From Lucy to Menges | Transmitting draft interview questions for J. Dougherty revised based on SOL's input | AC, DP, IF, WP | Yes |
| 11/19/20 | From Spallino to Menges | Transmitting scan of investigator's handwritten notes of interview of J. Dougherty | AC, DP, IF, WP | Yes |
| 11/20/20 | From Lucy to Bennett | Forwarding draft report of interview of Dougherty and password | AC, DP, IF, WP | Yes |
| 11/20/20 | Between Bennett and Lupardo | Transmitting and discussing draft report of interview of J. Dougherty | AC, DP, IF, WP | Yes |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|
| 11/22/20 | From Bennett to Lucy; from Lucy to Menges; from Menges to Smallwood | Transmitting and discussing draft statement prepared by SOL based on report of interview | AC, DP, IF, WP | Yes |
| 11/23/20 | Among Lupardo, Bennett, Smallwood, Lucy, Pifer, Shanker, Vamvakas, Menges | Discussing Local 98's rejection of VCA and next steps | AC, DP | N/A |
| 11/27/20, 11/29/20, 11/30/20 | Between Lupardo and Bennett | Discussing revised draft legal analysis, draft complaint | AC, DP, WP | Yes |
| 11/30/20, 10/4/20 | Between Bennett and Lucy; between Lucy and Menges | Transmitting and discussing signed statement of K. Rocks, Jr. | AC, DP, IF, WP | No (produced) |
| 11/30/20 | From Lupardo to Legum; cc Diane McCants (CRLM paralegal), Bennett | Transmitting revised draft legal analysis and draft complaint within SOL and discussing case | AC, DP, WP | Yes |
| 11/30/20 | Among Legum, Bennett, Lupardo | Discussing legal analysis and case status | AC, DP, WP | Yes |
| 12/3/20 | Between Menges and Smallwood | Discussing case status | DP | N/A |
| 12/7/20 | Among Legum, Katherine Bissell, Lupardo, Simms, Bennett, Dankowitz | Discussing legal research, legal analysis, case status | AC, DP, WP | N/A |
| 12/8/20, 12/9/20 | Between Bissell and O'Scannlain | Seeking and receiving Solicitor's approval | AC | N/A |
| 12/9/20 | Bissell to CRLM | Transmitting Solicitor's approval | AC | N/A |
| 12/10/20, 12/11/20 | Among Lucy, Pifer, Shanker | Transmitting SOL's legal analysis | AC, DP, WP | Yes |
| 11/30/20, 12/10/20 | From Bennett to Lucy; from Lucy to Menges; from Menges to Smallwood | Transmitting legal analysis and describing referral process | AC, WP | Yes |
| 12/10/20 | From Bennett to Lucy; from Lucy to Shanker, Pifer, Smallwood, Menges | Describing referral process and status | AC | N/A |
| 12/10/20 | Between Lucy and Bennett | Discussing legal research | AC, DP | No (produced) |

Page **15 of 20**

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---------|------------------|-------------|--------------|----------------------|
| 12/10/20 | Between Smallwood and Menges | Discussing SOL's legal analysis | DP | N/A |
| 12/10/20 | Between Lupardo and Bennett | Discussing settlement | AC, DP | N/A |
| 12/11/20 | Among Shanker, Vamvakas, Smallwood, Lucy, Bennett, Menges | Discussing draft settlement language | AC, DP | Yes |
| 12/11/20 | Among Shanker, Pifer, Lucy | Discussing draft settlement language | DP | N/A |
| 12/14/20 | Among Shanker, Lucy, Pifer, Bennett, Lupardo | Discussing settlement, filing, time waiver | AC, DP | N/A |
| 12/16/20 | Between Bennett and DeBruicker | Discussing settlement, time waiver | AC | N/A |
| 12/16/20 | Between Lupardo and Bennett | Transmitting waiver and discussing case status | AC | No (produced) |
| 12/17/20 | Among Lucy, Bennett, Shanker, Pifer | Discussing settlement, draft settlement language | AC, DP | Yes |
| 12/17/20 | Between Lupardo and Bennett | Discussing settlement, draft settlement language | AC | N/A |
| 12/21/20 | Between Bennett and Lupardo | Discussing settlement | AC | N/A |
| 12/23/20 | Among DeBruicker, Lupardo, Bennett | Discussing settlement, case status | AC, DP | N/A |
| 1/4/21 | Among Lupardo, Bennett, DeBruicker | Discussing settlement, case status | AC, DP | N/A |
| 1/4/21 | Among Shanker, Pifer, Lucy, Bennett; cc Lupardo, Smallwood, Menges, Vamvakas | Discussing Local 98's declination of settlement offer, case status | AC, DP | N/A |
| 1/4/21 | Between Lucy and Bennett | Discussing exhibit | AC | No (produced) |
| 1/5/21 | Between Smallwood and Menges | Discussing draft time waiver | DP | Yes |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

b.   **Redactions**

| Bates Numbers | Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|---|
| DOL_LOCAL 98_00535 | 9/9/20 | Between Spallino and Menges; cc Underwood, Smallwood | Portion reflecting investigator's assessment of investigation and investigative plan | DP, IF | N/A |
| DOL_LOCAL 98_00546 | 9/10/20 | From Menges to Underwood; cc Spallino | Portion discussing revisions to draft report of interview | DP, IF | N/A |
| DOL_LOCAL 98_00544–00545 | 10/14/20 | Among Menges, Lucy, Underwood | Portions reflecting SOL's opinion and advice, investigative plan, status of investigation | AC, DP, IF, WP | N/A |
| DOL_LOCAL 98_00561–00562 | 10/19/20 | Between Menges and Lucy; cc Underwood, Smallwood | Filenames of confidential attachments | IF | Yes |
| DOL_LOCAL 98_00538 | 10/21/20 | Among Menges, Spallino, Smallwood | Portion discussing revisions to draft report of interview | DP, IF | N/A |
| DOL_LOCAL 98_00504–00511 | 10/22/20 | Text from T. McConnell to Menges | Portion containing confidential witness statement | IF | N/A |
| DOL_LOCAL 98_00539–00542 | 10/27/20 | Between Smallwood and Lucy; cc Menges | Portions reflecting agency's investigative planning and SOL's opinion and advice | AC, DP, WP | N/A |
| DOL_LOCAL 98_00547–00552 | 11/4/20 | Between Smallwood and Lucy; cc Menges | Portions discussing SOL's timeline | AC, DP | N/A |
| DOL_LOCAL 98_00533–00534 | 11/5/20 | Between Lucy and Smallwood | Portions reflecting SOL's opinion and advice | AC, DP, WP | N/A |
| DOL_LOCAL 98_00536–00537 | 11/23/20 | Between Smallwood and Menges | Portions reflecting SOL's analysis | AC, DP, WP | N/A |
| DOL_LOCAL 98_543 | 12/11/20 | Between Vamvakas and Smallwood; cc Menges | Portions reflecting agency's decision-making process | DP | N/A |
| DOL_LOCAL 98_00559–00560 | 12/14/20 | Among Lucy, Lupardo, Bennett | Portions discussing SOL's and DOJ's opinions and timeline | AC, DP, WP | No (produced) |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

| Bates Numbers | Date(s) | From/To/Among/CC | Description | Privilege(s) | Attachment(s) in Log? |
|---|---|---|---|---|---|
| DOL_LOCAL 98_00563–00565 | 12/14/20 | Among Lucy, Lupardo, Bennett; among Lucy, Smallwood, Vamvakas, Menges | Portions reflecting agency's decision-making process and SOL's opinion and advice | AC, DP, WP | N/A |
| DOL_LOCAL 98_00527–00532, DOL_LOCAL 98_00553–00558 | 12/17/20, 12/18/20 | Between Bennett and Lucy; cc Lupardo; between Lucy and Smallwood; between Smallwood and Menges; between Smallwood and Vamvakas | Portions reflecting agency's comparison of drafts and SOL's opinion and advice | AC, DP, WP | N/A |
| DOL_LOCAL 98_00480–00482 | 2/11/21 | Texts from Menges to P. Borthwick | Subsequent to filing of complaint | [Not relevant] | N/A |
| DOL_LOCAL 98_00483–00498 | 2/11/21 | Texts between Menges and C. Battle | Subsequent to filing of complaint | [Not relevant] | N/A |
| DOL_LOCAL 98_00499–00500 | 2/11/21 | Text from Menges to J. Kerr | Subsequent to filing of complaint | [Not relevant] | N/A |
| DOL_LOCAL 98_00504–00511 | 2/11/21 | Texts between Menges and T. McConnell | Subsequent to filing of complaint | [Not relevant] | N/A |
| DOL_LOCAL 98_00501–00503 | 2/11/21 | Text from Menges to T. McNichols | Subsequent to filing of complaint | [Not relevant] | N/A |
| DOL_LOCAL 98_00512–00519 | 2/11/21 | Between Menges and K. Rocks, Jr. | Subsequent to filing of complaint | [Not relevant] | N/A |
| DOL_LOCAL 98_00520–00522 | 2/11/21 | From Menges to J. Ryan | Subsequent to filing of complaint | [Not relevant] | N/A |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

III.   **CURRENT AND FORMER DOL EMPLOYEES IDENTIFIED IN LOG**

| Last Name, First Name | Position/Title | Office |
|---|---|---|
| Ballard, Katherine | Investigator | OLMS Philadelphia-Pittsburgh District Office |
| Bennett, Anna Laura | Senior Attorney | SOL Civil Rights and Labor-Management Division |
| Bissell, Katherine | Deputy Solicitor for Regional Enforcement (former) | SOL |
| Ciekielski, Robert | Investigator | OLMS Philadelphia-Pittsburgh District Office |
| Dankowitz, Beverly | Associate Solicitor | SOL Civil Rights and Labor-Management Division |
| Ferris, Meg | Investigator | OLMS Division of Enforcement |
| Fox, Patricia | Chief (former) | OLMS Division of Enforcement |
| Graziano, Anthony | Senior Investigator | OLMS Washington District Office |
| Legum, Radine | Deputy Associate Solicitor | SOL Civil Rights and Labor-Management Division |
| Lucy, Brian | Investigator | OLMS Division of Enforcement |
| Lupardo, Jeffrey | Counsel for Labor-Mgmt & Civil Rights Enforcement | SOL Civil Rights and Labor-Management Division |
| Menges, Angela | Investigator | OLMS Philadelphia-Pittsburgh District Office |
| O'Scannlain, Kate | Solicitor (former) | SOL |
| Pifer, Brian | Chief | OLMS Office of Field Operations |
| Rizzo, Nicole (now Spallino) | Investigator (now Senior Investigator) | OLMS Philadelphia-Pittsburgh District Office |
| Shanker, Tracy | Chief | OLMS Division of Enforcement |
| Shelton, Lynette | Administrative Assistant | OLMS |
| Simms, Eleanore | Counsel for Labor-Mgmt & Civil Rights Policy | SOL Civil Rights and Labor-Management Division |
| Smallwood, Kevin | Supervisory Investigator | OLMS Philadelphia-Pittsburgh District Office |
| Spallino, Nicole | Senior Investigator | OLMS Philadelphia-Pittsburgh District Office |
| Thompson, Dona | Senior Investigator | OLMS Philadelphia-Pittsburgh District Office |
| Underwood, Megan | District Director | OLMS Philadelphia-Pittsburgh District Office |
| Vamvakas, Andriana | Regional Director | OLMS Northeastern Regional Office |
| Wheeler, Mark | District Director | OLMS Washington District Office |

*Secretary of Labor v. Local 98, IBEW*, Civil Action No. 21-CV-96
Plaintiff's Privilege Log
March 25, 2021

IV.   <u>PRIVILEGES ASSERTED</u>

AC – Attorney-Client Communication

DP – Deliberative Process Privilege

IF – Investigatory Files Privilege

WP – Attorney Work Product Privilege

Exhibit "E"

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   20-M-1691-01 |
| | ) |
| Offices of IBEW Local 98, 1701 Spring | ) |
| Garden Street, Philadelphia, PA | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the             Eastern             District of             Pennsylvania
*(identify the person or describe the property to be searched and give its location)*:

Offices of IBEW Local 98, 1701 Spring Garden Street, Philadelphia, PA, more particularly described in Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

YOU ARE COMMANDED to execute this warrant on or before      October 28, 2020      *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the duty magistrate.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*:
☐ for      days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of

Date and time issued:      10/15/2020 _ 1:20 P.M.

Judge's signature

City and state:      Allentown, PA

Henry S. Perkin, U.S. Magistrate Judge
*Printed name and title*

Attachment A

1701 Spring Garden is a red brick colonial style building located on the Northwest corner of Spring Garden and 17th St. in Philadelphia. The building is clearly marked with signage of IBEW Local 98. The main entrance is a white door on 17th Street just North of Spring Garden. The building has a basement in addition to two floors above grade. In the basement is located offices of Local 98 business agents and clerical staff. The first floor contains a reception space as well as meeting space. The 2nd floor of the building houses the offices of Local 98 executives including ████████████████ ████████████████ and others. Located throughout the building are desktop computers. The building also contains areas to store files and documents. The basement of the building also houses computer servers and networking equipment for Local 98.



**Attachment B**

For the periods set forth below, the following, in any form (electronic or otherwise) constituting fruits, evidence and instrumentalities of violations of:

18 U.S.C. § 371 (conspiracy),

18 U.S.C. §§ 1030 (a)(5)(A)(accessing a computer without authorization);

18 U.S.C. §§ 1512 (b) & (d), and 1513 (e) (tampering and retaliating against witnesses);

18 U.S.C. § 1951 (obtaining property with consent induced by the wrongful use of force, violence, and fear, including fear of economic loss, which affects interstate commerce);

29  U.S.C. § 501(c)(embezzlement of property and funds from a labor organization); and

29 U.S.C. § 530 (interference with protected labor rights by threat of physical violence).

1) Audio recordings of the Trial Board hearings of Local 98 members ██████████ ████████████████████████████, which were held on February 13, 2020.

2) Correspondence, including emails, pertaining to the Trial Board Hearings of Local 98 members ████████████████████████████████████████████████████.

3) Audio recordings of and correspondence, including emails, pertaining to Trial Board hearings of Local 98 members employed by ████████████, for the period 2008 to the present.

4) Minutes, communications, recordings and emails pertaining to Local 98 Membership Meetings, Executive Committee Meetings, Trial Board Meetings, Delinquency Committee Meetings, and Finance Committee Meetings, for the period November 2019 to the present.

5) Memoranda of interviews by the FBI, IRS, and Department of Labor related to the January 2019 indictment of John Dougherty, Robert Henon, Brian Burrows, Michael Neill, Marita Crawford, Niko Rodriguez, and Brian Flocca, that are not in the offices John Dougherty, Brian Burrows, Michael Neill, and Marita Crawford.

6) ████████████████████████

   a. ████████████████████████████████████████
      ████████████

   b. ████████████████████████████████████████
      ████████████████████████████████████████
      ████████████████████████████

7) . For the period January 1, 2019 through the present:

    a.   Expense reports, receipts, invoices, account statements, cancelled checks, correspondence, communications, and emails pertaining to:

        1.   Payments made by Local 98 to ███████████, and

        2.   Payments made by ███████████ to Local 98.

8) Contracts, time sheets, evaluations, cancelled checks, correspondence, communications, and emails pertaining to:

    a.   Payments made by Local 98 to, and

    b.   Services provided to Local 98 by the following individuals:

- ███████████ - from January 2020 – present,
- ███████████ - from January 2017- present, and
- ███████████ - from January 2020 – present.

9) For the period June 2020 –present:

    a.   Invoices, bills, description of services provided by, and payments made to the law firm of Lamb McErlane.

    b.   Invoices, bills, description of services provided by, reports from, correspondence to and from, including emails, and payments to ███████████

    c.   Correspondence, including emails, pertaining to the website thetruthaboutyourlocal.com.

10) Personnel and employment records pertaining to Local 98 employee ███████████ for the period November 2019 – present.

11) Work history, disciplinary records, complaints, and correspondence, including emails, pertaining to Local 98 member ███████████ for the period June 2015 – present.

12) For the period May of 2020 through the present:

    Announcements, rules, communications, including emails, recordings, videos, and photographs pertaining to the election of Local 98 Officers and Boards.

13) Records of Job Recovery Funds awarded to, and paid to ███████████ for the period January 2017 to the present.

14) For the period January 1, 2018 through the present:

    a.   Local 98 gift card inventories identifying card issuer, card value, date received, and invoices.

    b.   Gift card distribution records, including recipient name, card value, date distributed, purpose of distribution, payments made to Local 98 for gift cards, correspondence, communications, and emails.

    c.   Receipts, invoices, checks, bills, communications, including emails, pertaining to any funds or things of value, gift cards, tickets to sporting events or concerts, provided to Donna Mangini.

**Among the places that may be searched for the items listed above are computers and any form of digital storage media.**

1.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.    evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.    evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.    evidence of the lack of such malicious software;

    d.    evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.    evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.    evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.    evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.    evidence of the times the COMPUTER was used;

    i.    passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.      documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.      records of or information about Internet Protocol addresses used by the COMPUTER;

l.      records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.      contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

# Exhibit "F"

Support Local News

Today's Paper

NEWS   SPORTS   BUSINESS   OPINION   POLITICS   ENTERTAINMENT   LIFE   FOOD   HEALTH

ADVERTISEMENT

News

# FBI agents raid Local 98's Philly headquarters again, looking for evidence of threats and witness intimidation

The new search comes four years after a series of raids on homes and offices linked to the union that led to the indictment of labor leader John Dougherty.

ADVERTISEMENT



An FBI agent enters the Spring Garden Street headquarters of Local 98 of the International Brotherhood of Electrical Workers on Friday in Philadelphia
ALEJANDRO A. ALVAREZ / Staff Photographer

by Jeremy Roebuck and Chris Brennan
Updated Oct 16, 2020

Federal authorities once again raided the headquarters of Local 98 of the International Brotherhood of Electrical Workers on Friday — this time investigating allegations that union officials threatened violence against dissidents in their ranks following the indictment of labor leader John J. Dougherty last year.

Search warrants served on the union's office on the 1700 block of Spring Garden Street and an apprentice training building on the same block sought evidence of potential crimes ranging from witness intimidation and embezzlement to conspiracy and unauthorized access to a computer, according to sources familiar with the matter who were not authorized to publicly discuss it.

FBI agents also sought information on how Local 98's leaders responded to a now defunct website that disaffected union members used to share rumors and potentially damaging claims about Dougherty, known by his nickname "Johnny Doc," and his inner circle.

It was not immediately clear whether Friday's search was part of the ongoing federal bribery and embezzlement case against the labor leader, set for trial in January — or if it augured a new investigation with the potential for a fresh indictment.



FBI agents pack up equipment after their search Friday of the Spring Garden Street headquarters of Local 98 of the International Brotherhood of Electrical Workers in Philadelphia. TIM TAI / Staff Photographer

Agents spent more than eight hours hauling equipment in and out of the buildings, snapping photos and seizing several cell phones of union employees, including Dougherty's, before packing up and leaving just before 4 p.m.

The new search came four years after agents last visited Local 98's headquarters as part of simultaneous raids on more than a dozen offices and homes connected to the union and its leadership. Evidence seized

then ultimately resulted in the indictment filed in January 2019 against Dougherty and seven members of his inner circle, all of whom have denied wrongdoing and vowed to fight the case.

ADVERTISEMENT

Joseph Cleary, a lawyer for Local 98, dismissed the raid as a "made-for-TV event" and touted Dougherty's accomplishments for his union.

"John Dougherty has been under federal scrutiny for 28 years and has never once failed to cooperate," he said in a statement. "Everything [agents] took today, they either took previously or could have simply asked for it and we would have turned it over."

**» READ MORE:** *Local 98 leader Johnny Doc, Councilman Bobby Henon charged in sweeping conspiracy case (from 2019)*

Still, lawyers for Dougherty's codefendants said Friday's raid caught them off guard as they were not aware the FBI was actively pursuing fresh lines of investigation.

ADVERTISEMENT

FEATURED VIDEOS

Powered by [primis]



NOW PLAYING



But while they tried to read between the lines of the warrants' sparse information to divine the focus of the new probe and its intended targets, much of the information contained in the document seemed to point toward the website thetruthaboutyourlocal.com and a defamation lawsuit Local 98 filed against one of its members this summer, saying he was the site's administrator.

The FBI search warrants identified the website by name, seeking union communications about it and information on leaders' dealings with Lamb McErlane PC, the Chester County law firm that is representing Local 98 and two union business agents in that suit, according to sources who had reviewed the documents.

In court filings, union lawyers have accused Charles Battle, a longtime Local 98 member, of setting up the site with his wife and encouraging his colleagues to publicly defame Dougherty and others.

The site first appeared in June, while Battle was contemplating challenging Dougherty in internal union elections for his spot as business manager — a post the labor leader has held since 1993. Battle abruptly withdrew from the race before the union vote. The site was taken down after the union sued the Battles in August.

ADVERTISEMENT

» **READ MORE:** *Local 98 sues over anonymous website comments*

The couple's attorney, Clifford E. Haines, declined to comment on the FBI raid Friday. But he said Battle has reported "several troubling incidents" that occurred during his candidacy for union leadership to the Department of Labor and Local 98's national parent organization.

ADVERTISEMENT

"Regrettably, the conduct of Local 98 with respect to Mr. Battle is not something new," Haines said. "There is a reason its membership will only speak out anonymously."

Joseph R. Podraza Jr., the lawyer representing Local 98 in its suit against the couple, did not respond to requests for comment Friday.



In this 2016 file photo, IBEW Local 98 union leader John J. Dougherty talks to reporters as
authorities raided his home as part of an extensive federal investigation.
CHARLES FOX / Staff Photographer

Friday's search warrant also sought information on at least five other
people, including Donald Siegel, the former IBEW international vice
president for the region that includes Pennsylvania, New Jersey,
Delaware, and New York; Philip Migliarese III, a Fishtown business
consultant whom the union has paid more than $118,000 in recent
years; and Thomas Rodriguez, a union employee and son of Local 98's
indicted political director, Marita Crawford.

It did not specify whether those individuals were potential witnesses,
victims, or targets of new charges.

ADVERTISEMENT

Rodriguez's name surfaced earlier in the federal investigation of
Dougherty as one of three younger Local 98 members who the labor
leader allegedly referred to as "the kids" routinely sent to perform
chores and run personal errands for him on union time.

In the indictment filed against Dougherty last year, prosecutors said all
three helped to embezzle more than $600,000 from union coffers,
much of it to benefit Dougherty and other Local 98 members. Two of the
three "kids" were charged alongside Dougherty, but Rodriguez was not.

**» READ MORE:** *For leader John Dougherty, union-paid generosity began at home*

Rodriguez was also present during a caught-on-camera fracas in December 2016 between Dougherty, members of his union, and nonunion electricians at a job site in South Philadelphia. That incident did not result in criminal charges, either.

Rodriguez's attorney, William J. Brennan, declined to discuss the matter Friday. Neither Siegel nor Migliarese responded to requests for comment.

One name that did not appear on Friday's warrants was Philadelphia City Councilmember Bobby Henon, and his lawyer was quick to proclaim that the FBI's renewed interest in the union had nothing to do his client.

Federal prosecutors have accused Dougherty of bribing Henon for years with a union salary to buy his influence and Council vote on matters of interest to Local 98 — charges both men have forcefully denied.

In a statement Friday, Henon's lawyer, Brian J. McMonagle, questioned the timing of the raid in proximity to the presidential election, though he did not provide any evidence to suggest the two were related. Nor did the union's lawyer, Cleary, who made similar claims, saying the raid came two weeks after Local 98 endorsed Joe Biden's candidacy.

The federal case lodged against Dougherty makes no allegations about his political work outside of his relationship with Henon, a union member. And the focus of Friday's search warrants did not appear to have any political ties.

Despite the indictment hanging over his head, Dougherty remains a potent political force in and beyond the region's politics. He has marshaled his union as a fund-raising and support wing primarily in favor of Democratic candidates.

*Staff writer Anna Orso and Staff Photographer Tim Tai contributed to this article.*

Published Oct. 16, 2020



**Jeremy Roebuck** ✉ 🐦
I cover public corruption, white collar crime and the criminal misuse of power.



**Chris Brennan** ✉ 🐦 ⬛
I write about politics at the federal, state, and local level. I also lead Clout, an often irreverent column on people, power, and politics.

**About Us**

About The Inquirer

Advertise

Contact Us

Licensing & Permissions

Photo Reprints

Newspapers in Education

Jobs & Internships

Inquirer Events

Acel Moore Workshops

Newsroom Staff

**News & Info**

News

Sports

Entertainment

Business

Health

Food

Life

Opinion

Archives

Special Reports

**Marketplace**

Inquirer Store

Job Listings

All Classifieds

Gift Subscriptions

**e-Editions**

The Inquirer

The Daily News

Subscriber Services

**Mobile Apps**

Apple iOS

Google Android

Exhibit "G"

AO 110 (Rev. 01/09) Subpoena to Testify Before a Grand Jury          G.J. No.  20-00171

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:

Custodian of Records
IBEW, Local 98
1701 Spring Garden Street                    SUBPOENA FOR:
Philadelphia, PA
                                    ☑PERSON  ☒DOCUMENT(S) OR OBJECT(S)


**YOU ARE HEREBY COMMANDED** to appear before the Grand Jury of the United States District Court at the place, date and time specified below.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place:  Nix Courthouse & Post Office | Room:  No. 2 |
|---|---|
| 900 Market Street, Room 611 Philadelphia, PA  19107  **(You must bring picture I.D. to enter and cell phones are not allowed in G.J. Room)** | Date and Time: Tues., Nov. 10, 2020 - 9:30 am |


YOU ARE ALSO COMMANDED to bring with you the following document(s), electronically stored information, or object(s) (*blank if not applicable*):

**SEE ATTACHMENT**


**Please include Grand Jury No.  20-00171  in your response**.

If timely complying with this subpoena causes health risks related to COVID-19, please contact me immediately.

Date:  10/15/20                                   CLERK OF COURT

**In lieu of appearing before the grand jury you may
return the requested information along with the attached
Certificate of Authenticity, signed and completed,
directly to FBI Special Agent Jessica Fear,
jmfear@fbi.gov; and FBI Special Agent Jason Blake,
jkblake@fbi.gov;  600 Arch Street, 8th Floor,
Philadelphia, PA 19106.**

_Kate Barkman_
*Signature of Clerk or Deputy Clerk*


The name, address, e-mail, and telephone number of the assistant United States attorney, who requests this subpoena,
is: Frank R. Costello, Jr., AUSA, U.S. Attorney's Office, 615 Chestnut St., Suite 1250
Philadelphia, PA 19106 , Tel No. 215-861-8442, Email:          FRANK          Digitally signed by
Frank.Costello@usdoj.gov.                                      COSTELLO        FRANK COSTELLO
                                                                              Date: 2020.10.15
                                                                              17:40:27 -04'00'

AO 110 (Rev. 01

| RETURN OF SERVICE[1] | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |
| SERVED ON (NAME) | | |
| SERVED BY | | TITLE |

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

### DECLARATION OF SERVER [2]

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on
*Date*

_____
*Signature of Server*

_____
*Address of Server*

ADDITIONAL INFORMATION

---

(1) As to who may serve a subpoena and the manner of its service see rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2)"Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

**Attachment A**

1) Any and all audio recordings and transcripts of the Trial Board hearings of Local 98 members ███████████████████████████████████ ██████████████, which were held on or about February 13, 2020.

2) Any and all documents pertaining to the Trial Board Hearings of Local 98 members ████ ████████████████████████████████████████████, including but not limited to correspondence, emails, and reports.

3) Any and all audio recordings of and documents pertaining to any and all Trial Board hearings conducted from January 1, 2008 to the present, including but not limited to correspondence, emails, and reports.

4) Any and all minutes, notes, communications, recordings and emails pertaining to Local 98 Membership Meetings, Executive Committee Meetings, Trial Board Meetings, Delinquency Committee Meetings, and Finance Committee Meetings for the period August 2016 to the present.

5) ███████████████████████████:



    a. ████████████████████████████████████ ███████████████████████████████

    b. ███████████████████████████████████████ ████████████████████████

6) For the period January 1, 2018 - present:

    a.    Payroll records, to include timesheets prepared by employees and administrative staff on behalf of employees, vacation records, communications, and emails.

    b.    Complete copy of Local 98's QuickBook data file

7) Contracts, agreements, description of work performed, time sheets, evaluations, cancelled checks, reports, presentations including (including handouts, PowerPoint files), correspondence, communications, and emails pertaining to:

    a.    Payments made by Local 98 to, and

    b.    Services provided to Local 98 from, the following individuals:

            ███████████████ – from August 2016 - present,

1



 - from January 2016 – present,

- from August 2016 – present,

- from January 2016- present, and

- from January 2019 – present.

8) For the period June 2020 –present:

    a. Invoices, bills, description of services provided by, and payments made to the law firm of Lamb McErlane.

    b. Invoices, bills, description of services provided by, reports from, correspondence to and from, including emails, and payments to ⬛⬛⬛⬛.

    c. Correspondence, including emails, pertaining to the website truthaboutyourlocal.com.

9) Any and all personnel and employment records pertaining to Local 98 employee ⬛⬛⬛ for the period August 2016 – present.

10) Any and all work history, disciplinary records, complaints, and correspondence, including emails, pertaining to Local 98 member ⬛⬛⬛ for the period January 2010 – present.

11) Any and all bank statements for, deposit slips, checks written to ⬛⬛⬛ account.

12) For the period August 2016 through the present:

    Any and all announcements, rules, communications, including emails, recordings, videos, and photographs pertaining to the election of Local 98 Officers and Boards.

13) Any and all records of Job Recovery Funds awarded to, and paid to any and all contractors for the period August 2016 to the present.

14) Any and all receipts, invoices, checks, bills, communications, including emails pertaining to any funds or things of value, gift cards, tickets to sporting events or concerts, paid or provided to ⬛⬛⬛.

15) For the period August 2016 to the present:

Any and all documents, records, communications, and emails pertaining to:

    a.   credit card reward programs in which Local 98 is enrolled or of which Local 98 is a beneficiary;

    b.   the purchase, distribution, and use of gifts and gift cards by Local 98; and

    c.   purchases and expenses submitted to Local 98 for reimbursement by ██████, ████████, and expenses which were reimbursed by Local 98 to ██████████.

    d.   payments made to ████████████ and payments from ████████████ to IBEW Local 98.

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

         ***Name***

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by _____

         ***Entity***

(hereinafter "the entity"), and my title is _____. I am qualified

         ***Title***

to authenticate the records attached hereto because I am familiar with how the records were

created, managed, stored, and retrieved. I state that the records attached hereto are true

duplicates of the original records in the custody of the provider. The attached records consist of

_____. I further state that:

***Generally describe records (pages/CDs or DVDs/megabytes)***

      a.    all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth by, or from information transmitted by, a person with knowledge of those matters,

they were kept in the ordinary course of the regularly conducted business activity of the entity, and they

were made by the entity as a regular practice; and

      b.    such records were generated by the entity's electronic process or system that produces an

accurate result; and

      c.    the records were copied from electronic device(s), storage medium(s), or file(s) in the

custody of the entity in a manner to ensure that they are true duplicates of the original records.

      I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal

Rules of Evidence.

_____    _____

Date               Signature

Exhibit "H"

AO 110 (Rev. 01/09) Subpoena to Testify Before a Grand Jury                                                    G.J. No.  20-00171

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:

Joseph R. Podraza, Jr., Esquire
Lamb McErlane, PC
One South Broad Street, Suite 1500          SUBPOENA FOR:
Philadelphia, PA 19107
☑ PERSON ☑ DOCUMENT(S) OR OBJECT(S)

**YOU ARE HEREBY COMMANDED** to appear before the Grand Jury of the United States District Court at the place, date and time specified below.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: Nix Courthouse & Post Office | Room:  No. 2 |
|---|---|
| 900 Market Street, Room 611 | |
| Philadelphia, PA  19107 | Date and Time: Tues., Nov. 24, 2020 - 9:30 am |
| **(You must bring picture I.D. to enter and cell phones are not allowed in G.J. Room)** | |

YOU ARE ALSO COMMANDED to bring with you the following document(s), electronically stored information, or object(s) (*blank if not applicable*):

SEE ATTACHMENT

**Please include Grand Jury No.  20-00171 in your response**.

If timely complying with this subpoena causes health risks related to COVID-19, please contact me immediately.

Date:   11/18/20

CLERK OF COURT

*Kate Barkman*
_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the assistant United States attorney, who requests this subpoena, is: Frank R. Costello, Jr., AUSA, U.S. Attorney's Office, 615 Chestnut St., Suite 1250 Philadelphia, PA 19106 , Tel No. 215-861-8442, Email:                    FRANK        Digitally signed by
Frank.Costello@usdoj.gov.                                                        COSTELLO     FRANK COSTELLO
                                                                                              Date: 2020.11.18
                                                                                              15:03:14 -05'00'

AO 110 (Rev. 01

## RETURN OF SERVICE[1]

| RECEIVED BY SERVER | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | DATE | | PLACE | |

SERVED ON (NAME)

| SERVED BY | | TITLE | |
|---|---|---|---|

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER [2]

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on
   *Date*

            *Signature of Server*

            *Address of Server*

ADDITIONAL INFORMATION

(1) As to who may serve a subpoena and the manner of its service see rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2)"Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

**SUBPOENA ATTACHMENT**

Any and all records pertaining to the representation of, or other services provided to any individuals and entities, from June 8, 2020 to the present, which were paid for by, or done on a contingency basis for the International Brotherhood of Electrical Workers Local 98, including invoices, bills, description of services provided, correspondence, method of payment, and copies of the front and back of cancelled checks.

In complying with this subpoena, it is requested that: 1) all communications that are subject to the attorney-client privilege be redacted, and 2) a privilege log of redacted material and documents be maintained.

## <u>ADVICE OF RIGHTS</u>

1.   The Grand Jury is conducting an investigation of possible violations of Federal criminal law, including:

   18 U.S.C. §§ 1030 (a)(5)(A) accessing a computer without authorization;
   18 U.S.C. § 1951 obtaining property with consent induced by the wrongful use of force, violence, and fear, including fear of economic loss, which affects interstate commerce;
   29 U.S.C. § 501(c) embezzlement of property and funds from a labor organization

2.   When you are a witness before the Grand Jury, you may refuse to answer any question if a truthful answer to the question would tend to incriminate you.

3.   When you are a witness before the Grand Jury, anything that you do say may be used against you by the Grand Jury or in a subsequent legal proceeding.

4.   You are entitled to be represented by an attorney when you appear as a witness before the Grand Jury.  If you have obtained counsel, you will be permitted a reasonable opportunity to step outside the grand jury room during the proceedings to consult with counsel if you so desire.

5.   Should you wish to get an attorney, do so well in advance of your scheduled appearance, since postponements are not easily granted.  If you are unsure about how to obtain an attorney, you may telephone the Bar Association Lawyer Referral and Information Service, 1101 Market Street, Eleventh Floor, Philadelphia, PA  19107, telephone number (215) 238-6333, or the Defender Association, The Curtis Center Building, Suite 540 West, Independence Square West, Philadelphia, PA 19106, telephone number (215) 928-1100.

6.   On the upper right hand corner of the subpoena is the designation number for this Grand Jury matter.  Local Rule of Criminal Procedure 6.1(b) of the United States District Court for the Eastern District of Pennsylvania requires that should any document be filed with the Clerk of the Court concerning this Grand Jury matter, they shall bear that designation number in the caption of the document and that papers filed by any person with respect to that Grand Jury matter be filed under seal and subject to the secrecy requirements of Local Rule of Criminal Procedure 6.1(c).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF
## EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

               *Name*

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct.  I am employed by _____

                                                   *Entity*

(hereinafter "the entity"), and my title is _____.  I am qualified

                                          *Title*

to authenticate the records attached hereto because I am familiar with how the records were

created, managed, stored, and  retrieved.  I state that the records attached hereto are true

duplicates of the original records in the custody of the provider.  The attached records consist of

_____.  I further state that:

*Generally describe records (pages/CDs or DVDs/megabytes)*

      a.      all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth by, or from information transmitted by, a person with knowledge of those matters,

they were kept in the ordinary course of the regularly conducted business activity of the entity, and they

were made by the entity as a regular practice; and

      b.      such records were generated by the entity's electronic process or system that produces an

accurate result; and

      c.      the records were copied from electronic device(s), storage medium(s), or file(s) in the

custody of the entity in a manner to ensure that they are true duplicates of the original records.

      I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal

Rules of Evidence.

_____     _____

Date                                  Signature



**U.S. DEPARTMENT OF JUSTICE**
**INSTRUCTIONS FOR FACT WITNESSES APPEARING ON BEHALF OF
THE UNITED STATES GOVERNMENT**

**(Not Applicable to Federal Employees)**

---

READ THE INFORMATION CONTAINED ON THIS FORM BEFORE YOUR COURT APPEARANCE. PLEASE CALL THE INDIVIDUAL(S) LISTED BELOW FOR INFORMATION REGARDING TRAVEL ARRANGEMENTS AND SPECIFIC ENTITLEMENTS. IF YOU HAVE A MEDICAL CONDITION OR FAMILY SITUATION THAT REQUIRES SPECIAL CONSIDERATION, PLEASE ADVISE THE INDIVIDUAL LISTED BELOW AS SOON AS POSSIBLE.

---

**CONTACT PERSON(S):**                                    **TELEPHONE NUMBER:**

*. VERIFY YOUR ATTENDANCE .*

On the last business day BEFORE you travel to court, call the above number to verify that your attendance is required. This may prevent a wasted trip in the event the trial date is changed.

*. APPEARANCE IN ANOTHER CITY .*

If you are required to travel to another city to appear in court, immediately contact the individual listed above and request instructions. Any amount advanced to you will be deducted from your fees and allowances.

*. REIMBURSEMENT OF EXPENSES AND ATTENDANCE FEES .*

A.    **ATTENDANCE FEE:** You will be paid a fee of $40 per day, including travel days.

B.    **TRANSPORTATION:** Call the individual listed above to obtain information on transportation. Reimbursement will be made for travel by the least expensive method reasonably available to you. The following rules apply to transportation expenses:

    1.    **Local Travel:** The recommended method of travel in the local area of court is transit bus/subway;

    2.    **Privately Owned Vehicles (POV):** You will be reimbursed the following amounts:

        Motorcycle  0.50  per mile    Automobile  0.53   per mile    Airplane  1.15   per mile

    In addition to the above mileage allowance, necessary tolls, parking and other fees may be reimbursed. You must keep a record of your odometer readings if you travel by motorcycle or automobile. If two or more witnesses travel in the same vehicle, only one reimbursement for mileage can be made.

    **IF POV EXPENSES, INCLUDING MILEAGE, TOLLS, PARKING AND OTHER ASSOCIATED COSTS, ARE GREATER THAN COACH CLASS AIRFARE, YOU WILL BE RESPONSIBLE FOR THE DIFFERENCE.**

    3.    **Common Carrier:** If you are located outside the local court area, **CALL THE INDIVIDUAL LISTED ABOVE FOR INSTRUCTIONS.** Train, bus or airfare will be reimbursed at COACH or other Non-PREMIUM rate. Reimbursement **WILL NOT** be made for First Class accommodations, "Frequent Flyer" tickets, or charter service. **DO NOT** purchase non-refundable tickets. If your appearance date changes or is cancelled you **WILL NOT** be reimbursed for non- refundable tickets. If you have any questions concerning transportation arrangements, please contact the individual(s) listed above.

C.    **MEALS:** If it is necessary for you to remain away from home **overnight**, you will receive the following daily meal allowances:

    $   32.00   for each travel day    PLUS    $   64.00   for each full day at court

D.    **LODGING:** If it is necessary for you to remain away from home **overnight**, you will be reimbursed for the **ACTUAL COST** of your hotel/motel room, which may not exceed $_____per night, including tax.

*. YOU MUST RETAIN RECEIPTS .*

ALL CLAIMS FOR PARKING MUST BE SUPPORTED BY A RECEIPT. OTHER EXPENSES EQUAL TO $25 OR MORE MUST BE SUPPORTED BY A RECEIPT, WITH THE EXCEPTION OF MEALS AND MILEAGE.

*. DISMISSAL .*

When you are advised that your attendance is no longer required, you should request information regarding the payment of the fees and allowances outlined above. The individual requiring your attendance will provide you with a Fact Witness Voucher. You will be required to list your expenses on this Voucher. The Voucher will be submitted to the U.S. Marshals Service for payment. The U.S. Marshals Service will process the voucher and **MAIL** the payment to you. If you require funds to return home, you must bring this fact to the attention of the individual requiring your attendance, who will notify the U.S. Marshals Service.

---

| Submit | Go |
|--------|-----|

Exhibit "I"





No Items in Cart    LOGIN

Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 200701106 |
| **Case Caption:** | IBEW, LOCAL 98 ETAL VS BATTLE ETAL |
| **Filing Date:** | Friday , July 17th, 2020 |
| **Court:** | MAJOR JURY-COMPLEX |
| **Location:** | City Hall |
| **Jury:** | JURY |
| **Case Type:** | LIBEL, SLANDER, MISREPRESENT |
| **Status:** | LISTED FOR SETTLEMENT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

| Event | Date/Time | Room | Location | Judge |
|---|---|---|---|---|
| PROJECTED SETTLEMENT CONF DATE | 01-AUG-2022 09:00 AM | City Hall | CITY HALL COURTROOM 254 | SHREEVES-JOHNS, KAREN |
| PROJECTED PRE-TRIAL CONF. DATE | 03-OCT-2022 09:00 AM | City Hall | CITY HALL COURTROOM 254 | SHREEVES-JOHNS, KAREN |
| PROJECTED TRIAL DATE | 07-NOV-2022 09:00 AM | City Hall | CITY HALL COURTROOM 254 | SHREEVES-JOHNS, KAREN |

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | PODRAZA JR, JOSEPH R |
| **Address:** | ONE S BROAD ST SUITE 1500 PHILADELPHIA PA 19107 (215)609-3170 jpodraza@lambmcerlane.com | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | IBEW LOCAL 98 |
| **Address:** | 1701 SPRING GARDEN STREET PHILADELPHIA PA 19130 | **Aliases:** | *none* | |

| 3 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 4 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 801 MARKET STREET PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 5 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 6 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 7 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 8 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 9 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 10 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 11 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 12 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 13 | 1 | | PLAINTIFF | BARK, ROBERT |
| --- | --- | --- | --- | --- |
| **Address:** | 1701 SPRING GARDEN STREET PHILADELPHIA PA 19130 | **Aliases:** | *none* | |

| 14 | 1 | | PLAINTIFF | THOMPSON, ROBERT |
| --- | --- | --- | --- | --- |
| **Address:** | 1701 SPRING GARDEN STREET PHILADELPHIA PA 19130 | **Aliases:** | *none* | |

| 15 | 22 | | DEFENDANT | BATTLE, CHARLES |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 16 | 22 | | DEFENDANT | BATTLE, JEANETTE |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 17 | | | DEFENDANT | ADMINISTRATOR - WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHAB |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 18 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 19 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
| --- | --- | --- | --- | --- |
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 20 | | | DEFENDANT | COMMENT WWW.THETRUTHABOUTYOURLOCAL.COM & WWW.TRUTHABOUTYOUR |
|---|---|---|---|---|
| **Address:** | 8710 LYKENS AVENUE PHILADELPHIA PA 19128 | **Aliases:** | *none* | |

| 21 | | 22-SEP-2020 | TEAM LEADER | SHIRDAN-HARRIS, LISETTE |
|---|---|---|---|---|
| **Address:** | 516 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 22 | | | ATTORNEY FOR DEFENDANT | HAINES ESQ, CLIFFORD E |
|---|---|---|---|---|
| **Address:** | 1339 CHESTNUT STREET WIDENER BLDG., 5TH FLOOR PHILADELPHIA PA 19107 (215)246-2200 chaines@haines-law.com | **Aliases:** | *none* | |

| 23 | | 04-JUL-2021 | TEAM LEADER | NEW, ARNOLD L |
|---|---|---|---|---|
| **Address:** | 606 CITY HALL PHILADELPHIA PA 19107 (215)686-7260 | **Aliases:** | *none* | |

| 24 | | | TEAM LEADER | SHREEVES-JOHNS, KAREN |
|---|---|---|---|---|
| **Address:** | 364 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount | Approval/ Entry Date |
|---|---|---|---|---|
| 17-JUL-2020 10:49 AM | ACTIVE CASE | | | 17-JUL-2020 11:08 AM |
| **Docket Entry:** | E-Filing Number: 2007030643 | | | |
| | | | | |
| 17-JUL-2020 10:49 AM | COMMENCEMENT OF CIVIL ACTION | PODRAZA JR, JOSEPH R | | 17-JUL-2020 11:08 AM |
| **Documents:** | Click link(s) to preview/purchase the documents Final Cover | | Click **HERE** to purchase all documents related to this one docket entry | |
| **Docket Entry:** | *none.* | | | |

| 17-JUL-2020 10:49 AM | PRAE TO ISSUE WRIT OF SUMMONS | PODRAZA JR, JOSEPH R | | 17-JUL-2020 11:08 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>2020 07 17 Praecipe to Issue WOS w-Writ.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | PRAECIPE TO ISSUE WRIT OF SUMMONS FILED. WRIT OF SUMMONS ISSUED. | | | |

| 17-JUL-2020 10:49 AM | WAITING TO LIST CASE MGMT CONF | PODRAZA JR, JOSEPH R | | 17-JUL-2020 11:08 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 31-JUL-2020 02:24 PM | AFFIDAVIT OF SERVICE FILED | PODRAZA JR, JOSEPH R | | 31-JUL-2020 02:49 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>2020 07 31 Praecipe to File AOS.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON JEANETTE BATTLE AND CHARLES BATTLE BY PERSONAL SERVICE ON 07/21/2020 FILED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 05-AUG-2020 12:01 PM | RULE TO FILE COMPLAINT | HAINES ESQ, CLIFFORD E | | 05-AUG-2020 07:50 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>00119691.PDF | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | PRAECIPE AND RULE FILED UPON ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98 TO FILE A COMPLAINT WITHIN TWENTY (20) DAYS OR SUFFER JUDGMENT OF NON PROS FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) ENTRY OF APPEARANCE FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE. | | | |

| 20-AUG-2020 04:18 PM | COMPLAINT FILED NOTICE GIVEN | PODRAZA JR, JOSEPH R | | 20-AUG-2020 06:35 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>2020 08 20 Complaint - FINAL.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 16-SEP-2020 10:20 PM | PRELIMINARY OBJECTIONS | HAINES ESQ, CLIFFORD E | | 17-SEP-2020 11:45 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>00120576.PDF | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 01-20092101 PRELIMINARY OBJECTIONS TO PLAINTIFFS' COMPLAINT FILED. RESPONSE DATE: 10/07/2020 (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 17-SEP-2020 03:58 PM | ENTRY OF APPEARANCE | HAINES ESQ, CLIFFORD E | | 17-SEP-2020 07:01 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 00120616.PDF | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF CLIFFORD E HAINES FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 17-SEP-2020 03:58 PM | JURY TRIAL PERFECTED | HAINES ESQ, CLIFFORD E | | 17-SEP-2020 07:01 PM |
|---|---|---|---|---|
| **Docket Entry:** | 12 JURORS REQUESTED. | | | |

| 17-SEP-2020 07:03 PM | TRANSFERRED TO MAJOR JURY | | | 17-SEP-2020 12:00 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 17-SEP-2020 07:03 PM | WAITING TO LIST CASE MGMT CONF | | | 17-SEP-2020 12:00 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 07-OCT-2020 02:46 PM | ANSWER TO PRELIMINARY OBJCTNS | PODRAZA JR, JOSEPH R | | 07-OCT-2020 03:11 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 2020 10 07 Ps Answer to Ds POs - FINAL.pdf 2020 10 07 Ps MOL IOT Defs POs - FINAL.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 01-20092101 ANSWER IN OPPOSITION OF PRELIMINARY OBJECTIONS FILED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 09-OCT-2020 09:41 AM | PRELIM OBJECTIONS ASSIGNED | | | 09-OCT-2020 09:41 AM |
|---|---|---|---|---|
| **Docket Entry:** | 01-20092101 PRELIMINARY OBJECTIONS ASSIGNED TO JUDGE: NEW, ARNOLD L. ON DATE: OCTOBER 09, 2020 | | | |

| 09-OCT-2020 03:21 PM | PREL OBJECT-ASSIGNMENT UPDATED | | | 09-OCT-2020 03:21 PM |
|---|---|---|---|---|
| **Docket Entry:** | 01-20092101 REASSIGNED TO JUDGE SCHULMAN, SUSAN I ON 09-OCT-20 | | | |

| 19-OCT-2020 01:37 PM | REPLY-PRELIM. OBJECT. FILED | HAINES ESQ, CLIFFORD E | | 19-OCT-2020 01:45 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 00121336.PDF | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 01-20092101 REPLY IN SUPPORT OF PRELIMINARY OBJECTIONS FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 03-DEC-2020 | ORDER ENTERED/236 NOTICE | SCHULMAN, SUSAN I | | 03-DEC-2020 |
|---|---|---|---|---|

| 10:14 PM | GIVEN | | | 10:14 PM |

| **Documents:** | Click link(s) to preview/purchase the documents  ORDER_17.pdf | | Click HERE to purchase all documents related to this one docket entry | |

| **Docket Entry:** | 01-20092101 IT IS ORDERED THAT DEFENDANT, CHARLES BATTLE AND JEANETTE BATTLE'S PRELIMINARY OBJECTIONS ARE OVERRULED AND DEFENDANTS ARE DIRECTED TO FILE AN ANSWER TO PLAINTIFFS' COMPLAINT WITHIN 20 DAYS. ...BY THE COURT; SCHULMAN, J. 12-3-20 |

| 03-DEC-2020 10:14 PM | NOTICE GIVEN UNDER RULE 236 | | | 04-DEC-2020 06:26 PM |

| **Docket Entry:** | NOTICE GIVEN ON 04-DEC-2020 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 03-DEC-2020. |

| 07-DEC-2020 10:04 AM | LISTED FOR CASE MGMT CONF | | | 07-DEC-2020 10:04 AM |

| **Docket Entry:** | *none.* |

| 09-DEC-2020 12:30 AM | NOTICE GIVEN | | | 09-DEC-2020 12:30 AM |

| **Docket Entry:** | *none.* |

| 22-DEC-2020 11:26 AM | CASE MGMT CONFERENCE COMPLETED | GIAMPAOLO, ANTHONY | | 22-DEC-2020 11:26 AM |

| **Docket Entry:** | *none.* |

| 22-DEC-2020 11:26 AM | CASE MANAGEMENT ORDER ISSUED | | | 22-DEC-2020 11:26 AM |

| **Documents:** | Click link(s) to preview/purchase the documents  CMOIS_22.pdf | | Click HERE to purchase all documents related to this one docket entry | |

| **Docket Entry:** | CASE MANAGEMENT ORDER COMPLEX TRACK - AND NOW, 22-DEC-2020, it is Ordered that: 1. The case management and time standards adopted for complex track cases shall be applicable to this case and are hereby incorporated into this Order. 2. All discovery on the above matter shall be completed not later than 02-MAY-2022. 3. Plaintiff shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial to all other parties not later than 06-JUN-2022. 4. Defendant and any additional defendants shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial not later than 04-JUL-2022. 5. All pre-trial motions shall be filed not later than 04-JUL-2022. 6. A settlement conference may be scheduled at any time after 01-AUG-2022. Prior to the settlement conference all counsel shall serve all opposing counsel and file a settlement memorandum containing the following: (a) A concise summary of the nature of the case if plaintiff or of the defense if defendant or additional defendant; (b) A statement by the plaintiff or all damages accumulated, including an itemization of injuries and all special damages claimed by categories and amount;(c) Defendant shall identify all applicable insurance carriers, together with applicable limits of liability. 7. A pre-trial conference will be scheduled any time after 03-OCT-2022. Fifteen days prior to pre-trial conference, all counsel shall serve all opposing counsel and file a pre-trial memorandum containing the following:(a) A concise summary of the nature of the case if plaintiff or the defense if defendant or additional defendant;(b) A list of all witnesses who may be called to testify at trial by name and address. Counsel should expect witnesses not listed to be precluded from testifying at trial;(c) A list of all exhibits the party intends to offer into evidence. All exhibits shall be pre-numbered and shall be exchanged among |

counsel prior to the conference. Counsel should expect any exhibit not listed to be precluded at trial;(d) Plaintiff shall list an itemization of injuries or damages sustained together with all special damages claimed by category and amount. This list shall include as appropriate, computations of all past lost earnings and future lost earning capacity or medical expenses together with any other unliquidated damages claimed; and (e) Defendant shall state its position regarding damages and shall identify all applicable insurance carriers, together with applicable limits of liability;(f) Each counsel shall provide an estimate of the anticipated length of trial. 8. It is expected that the case will be ready for trial 07-NOV-2022, and counsel should anticipate trial to begin expeditiously thereafter. 9. All counsel are under a continuing obligation and are hereby ordered to serve a copy of this order upon all unrepresented parties and upon all counsel entering an appearance subsequent to the entry of this order. ...BY THE COURT: ARNOLD NEW, J.

| 22-DEC-2020 11:26 AM | LISTED FOR SETTLEMENT CONF | | | 22-DEC-2020 11:26 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 22-DEC-2020 11:26 AM | LISTED FOR PRE-TRIAL CONF | | | 22-DEC-2020 11:26 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 22-DEC-2020 11:26 AM | LISTED FOR TRIAL | | | 22-DEC-2020 11:26 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 22-DEC-2020 11:26 AM | NOTICE GIVEN UNDER RULE 236 | | | 22-DEC-2020 01:04 PM |
|---|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 22-DEC-2020 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 22-DEC-2020. | | | |

| 04-JAN-2021 09:27 AM | ANSWER TO COMPLAINT FILED | HAINES ESQ, CLIFFORD E | | 04-JAN-2021 10:58 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 00122960.PDF | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ANSWER WITH NEW MATTER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 25-JAN-2021 03:34 PM | PRELIMINARY OBJECTIONS | PODRAZA JR, JOSEPH R | | 26-JAN-2021 10:59 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 2021 01 25 Ps POs to Defs CC (abuse of process).pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 97-21012297 PRELIMINARY OBJECTIONS TO DEFENDANTS' COUNTERCLAIM FILED. RESPONSE DATE: 02/16/2021 (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 25-JAN-2021 03:37 PM | REPLY TO NEW MATTER | PODRAZA JR, JOSEPH R | | 26-JAN-2021 10:58 AM |
|---|---|---|---|---|

| Documents: | Click link(s) to preview/purchase the documents<br>2021 01 25 Reply to NM.pdf | | Click HERE to purchase all documents related to this one docket entry |
|---|---|---|---|
| **Docket Entry:** | REPLY TO NEW MATTER OF JEANETTE BATTLE AND CHARLES BATTLE FILED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | |

| 16-FEB-2021<br>10:32 PM | AMENDED ANSWER FILED | HAINES ESQ,<br>CLIFFORD E | | 17-FEB-2021<br>01:40 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>00123815.PDF | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AMENDED ANSWER WITH COUNTERCLAIM FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 19-FEB-2021<br>12:47 PM | PRELIM OBJECTIONS-MARKED MOOT | | | 19-FEB-2021<br>12:47 PM |
|---|---|---|---|---|
| **Docket Entry:** | 97-21012297 AMENDED ANSWER WITH COUNTER-CLAIM FILED 02/16/21 | | | |

| 26-FEB-2021<br>02:28 PM | DISCOVERY MOTION FILED | PODRAZA JR, JOSEPH R | | 26-FEB-2021<br>02:28 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>2021 02 26 Motion for Disclosure of Identities w-MOL.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 22-2103D022 DISCOVERY HEARING REQUEST FILED IN RE: MOTION FOR AN ORDER DIRECTING THE DISCLOSURE OF DOE DEF ID (FILED ON BEHALF OF IBEW LOCAL 98, ROBERT BARK AND ROBERT THOMPSON) | | | |

| 01-MAR-2021<br>10:46 AM | CERT MOTION IS CONTESTED | PODRAZA JR, JOSEPH R | | 01-MAR-2021<br>10:52 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>2021 03 01 Ps Praecipe for Contested Discovery Motion.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | IN RE: PLAINTIFFS' MOTION FOR AN ORDER DIRECTING THE DISCLOSURE OF DOE DEFENDANTS'S ID FILED ON 2-26-21 (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 08-MAR-2021<br>04:36 PM | PRELIMINARY OBJECTIONS | PODRAZA JR, JOSEPH R | | 09-MAR-2021<br>09:50 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>2021 03 08 POs to Defs Amended CC w-MOL EXHS.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 10-21030810 PRELIMINARY OBJECTIONS TO PS' PRELIMINARY OBJECTIONS TO DS' AMENDED COUNTERCLAIM FILED. RESPONSE DATE: 03/29/2021 (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 11-MAR-2021<br>12:00 PM | ANSWER (MOTION/PETITION) FILED | HAINES ESQ,<br>CLIFFORD E | | 11-MAR-2021<br>12:08 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents<br>00124229.PDF | | Click HERE to purchase all documents related to this one docket entry | |

| | Motion CoverSheet Form | | | |
|---|---|---|---|---|
| **Docket Entry:** | 22-2103D022 ANSWER IN OPPOSITION OF DISCOVERY MOTION FILED FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| | | | | |
|---|---|---|---|---|
| 25-MAR-2021 10:12 AM | LISTED FOR DISCOVERY HEARING | | | 25-MAR-2021 10:12 AM |
| **Docket Entry:** | 22-2103D022 DISCOVERY MOTION FILED SCHEDULED FOR A HEARING ON APRIL 05, 2021 AT 09:00 AM IN REMOTE HEARING VIA ADVANCED COMMUN. TECH. | | | |

| | | | | |
|---|---|---|---|---|
| 25-MAR-2021 10:12 AM | MOTION ASSIGNED | | | 25-MAR-2021 10:12 AM |
| **Docket Entry:** | 22-2103D022 DISCOVERY MOTION FILED ASSIGNED TO JUDGE: NEW, ARNOLD L. ON DATE: MARCH 25, 2021 | | | |

| | | | | |
|---|---|---|---|---|
| 27-MAR-2021 12:30 AM | NOTICE GIVEN-DISCOVERY HEARING | | | 27-MAR-2021 12:30 AM |
| **Docket Entry:** | *none.* | | | |

| | | | | |
|---|---|---|---|---|
| 29-MAR-2021 06:28 PM | ANSWER TO PRELIMINARY OBJCTNS | HAINES ESQ, CLIFFORD E | | 30-MAR-2021 09:25 AM |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents 00124638.PDF | | Click **HERE** to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 10-21030810 ANSWER IN OPPOSITION OF PRELIMINARY OBJECTIONS FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| | | | | |
|---|---|---|---|---|
| 31-MAR-2021 01:07 PM | PRELIM OBJECTIONS ASSIGNED | | | 31-MAR-2021 01:07 PM |
| **Docket Entry:** | 10-21030810 PRELIMINARY OBJECTIONS ASSIGNED TO JUDGE: NEW, ARNOLD L. ON DATE: MARCH 31, 2021 | | | |

| | | | | |
|---|---|---|---|---|
| 01-APR-2021 10:50 AM | PREL OBJECT-ASSIGNMENT UPDATED | | | 01-APR-2021 10:50 AM |
| **Docket Entry:** | 10-21030810 REASSIGNED TO JUDGE CUNNINGHAM III, CHARLES J ON 01-APR-21 | | | |

| | | | | |
|---|---|---|---|---|
| 08-APR-2021 03:04 PM | REPLY-PRELIM. OBJECT. FILED | PODRAZA JR, JOSEPH R | | 08-APR-2021 03:23 PM |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents 2021 04 08 Reply ISO POs to Amend CC (final).pdf | | Click **HERE** to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 10-21030810 REPLY IN SUPPORT OF PRELIMINARY OBJECTIONS FILED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| | | | | |
|---|---|---|---|---|
| 12-APR-2021 10:20 AM | ORDER ENTERED/236 NOTICE GIVEN | NEW, ARNOLD L | | 12-APR-2021 10:20 AM |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents | | | |

ORDER_43.pdf

| Click HERE to purchase all documents related to this one docket entry |

| **Docket Entry:** | 22-2103D022 AND NOW, THIS 8TH DAY OF APRIL, 2021, UPON CONSIDERATION OF PLAINTIFFS' MOTION FOR AN ORDER DIRECTING THE DISCLOSURE OF DOE DEFENDANTS' IDENTITIES, AND THE RESPONSE THERETO, IT IS HEREBY ORDERED AND DECREED SAID MOTION IS DENIED.... BY THE COURT: NEW,J.4/12/21 |
|---|---|

| 12-APR-2021 10:21 AM | NOTICE GIVEN UNDER RULE 236 | | | 12-APR-2021 02:49 PM |
|---|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 12-APR-2021 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 12-APR-2021. | | | |

| 26-APR-2021 04:17 PM | DISCOVERY MOTION FILED | PODRAZA JR, JOSEPH R | | 26-APR-2021 04:24 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents Petition.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 57-21044057 MOTION FOR LEAVE TO CONDUCT DISCOVERY. CERTIFICATION DUE DATE: 05/03/2021. RESPONSE DATE: 05/10/2021. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 27-APR-2021 01:54 PM | ORDER ENTERED/236 NOTICE GIVEN | CUNNINGHAM III, CHARLES J | | 27-APR-2021 01:54 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents ORDER_46.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 10-21030810 AND NOW, THIS 21ST DAY OF APRIL, 2021, UPON CONSIDERATION OF THE PLAINTIFFS' PRELIMINARY OBJECTIONS TO THE AMENDED COUNTERCLAIM, FILED BY PLAINTIFFS IBEW LOCAL 98, ROBERT BARK, AND ROBERT THOMPSON, AND THE RESPONSE OF DEFENDANTS AND COUNTERCLAIM PLAINTIFFS CHARLES BATTLE AND JEANETTE BATTLE THERETO, IT IS HEREBY ORDERED THAT PLAINTIFFS' PRELIMINARY OBJECTIONS TO THE AMENDED COUNTERCLAIM ARE OVERRULED. BY THE COURT: JUDGE CHARLES J. CUNNINGHAM, III | | | |

| 27-APR-2021 01:54 PM | NOTICE GIVEN UNDER RULE 236 | | | 28-APR-2021 09:59 AM |
|---|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 28-APR-2021 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 27-APR-2021. | | | |

| 27-APR-2021 04:06 PM | CERT MOTION IS CONTESTED | PODRAZA JR, JOSEPH R | | 28-APR-2021 09:15 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 2021 04 27 Ps Praecipe for Contested Discovery Motion2.pdf | | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 57-21044057 MOTION IS CONTESTED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 10-MAY-2021 07:50 PM | ANSWER (MOTION/PETITION) FILED | HAINES ESQ, CLIFFORD E | | 11-MAY-2021 09:01 AM |
|---|---|---|---|---|

| Documents: | Click link(s) to preview/purchase the documents 00125625.PDF | | | Click HERE to purchase all documents related to this one docket entry |
|---|---|---|---|---|
| **Docket Entry:** | 57-21044057 ANSWER/RESPONSE IN OPPOSITION TO MOTION/PETITION. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 12-MAY-2021 12:01 PM | LISTED FOR DISCOVERY HEARING | | | 12-MAY-2021 12:01 PM |
|---|---|---|---|---|
| **Docket Entry:** | 57-21044057 DISCOVERY MOTION FILED SCHEDULED FOR A HEARING ON MAY 24, 2021 AT 09:00 AM IN REMOTE HEARING VIA ADVANCED COMMUN. TECH. | | | |

| 14-MAY-2021 12:30 AM | NOTICE GIVEN-DISCOVERY HEARING | | | 14-MAY-2021 12:30 AM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 18-MAY-2021 04:00 PM | ANSWER TO COUNTERCLAIM FILED | PODRAZA JR, JOSEPH R | | 18-MAY-2021 05:54 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents Answer with New Matter to Am Counterclaim in Local 98 - Battles.pdf | | | Click HERE to purchase all documents related to this one docket entry |
| **Docket Entry:** | ANSWER TO JEANETTE BATTLE AND CHARLES BATTLE COUNTERCLAIM FILED. (FILED ON BEHALF OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98) | | | |

| 24-MAY-2021 02:44 PM | OTHER EVENT CANCELLED | NEW, ARNOLD L | | 24-MAY-2021 02:44 PM |
|---|---|---|---|---|
| **Docket Entry:** | *none.* | | | |

| 07-JUN-2021 04:03 PM | REPLY TO NEW MATTER | HAINES ESQ, CLIFFORD E | | 07-JUN-2021 07:30 PM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents 00126289.PDF | | | Click HERE to purchase all documents related to this one docket entry |
| **Docket Entry:** | REPLY TO NEW MATTER OF ROBERT THOMPSON, ROBERT BARK AND IBEW LOCAL 98 FILED. (FILED ON BEHALF OF JEANETTE BATTLE AND CHARLES BATTLE) | | | |

| 14-JUN-2021 11:09 AM | ORDER ENTERED/236 NOTICE GIVEN | NEW, ARNOLD L | | 14-JUN-2021 11:09 AM |
|---|---|---|---|---|
| **Documents:** | Click link(s) to preview/purchase the documents ORDER_55.pdf | | | Click HERE to purchase all documents related to this one docket entry |
| **Docket Entry:** | 57-21044057 IT IS HEREBY ORDERED AND DECREED SAID MOTION IS DENIED FOR THE REASONS SET FORTH IN THE ACCOMPANYING OPINION...................BY THE COURT: NEW, J. 06/14/2021. | | | |

| 14-JUN-2021 11:09 AM | NOTICE GIVEN UNDER RULE 236 | | | 15-JUN-2021 07:18 AM |
|---|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 15-JUN-2021 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 14- | | | |

| | | | | |
|---|---|---|---|---|
| | JUN-2021. | | | |

| | | | | |
|---|---|---|---|---|
| 14-JUN-2021 11:09 AM | OPINION FILED/236 NOTICE GIVEN | NEW, ARNOLD L | | 14-JUN-2021 12:00 AM |

| **Documents:** | ⚞ Click link(s) to preview/purchase the documents [ OPFLD_56.pdf ] | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
|---|---|---|

| **Docket Entry:** | 57-21044057 OPINION FILED SEE ATTACHED ORDER.................BY THE COURT: NEW, J. 06/14/2021. |
|---|---|

| | | | | |
|---|---|---|---|---|
| 14-JUN-2021 11:09 AM | NOTICE GIVEN UNDER RULE 236 | | | 14-JUN-2021 02:45 PM |

| **Docket Entry:** | NOTICE GIVEN ON 14-JUN-2021 OF OPINION FILED/236 NOTICE GIVEN ENTERED ON 14-JUN-2021. |
|---|---|

▶ Case Description     ▶ Related Cases     ▶ Event Schedule     ▶ Case Parties     ▶ Docket Entries

Search Home

# Exhibit "J"

HAINES & ASSOCIATES
By: Clifford E. Haines, Esquire
(Attorney I.D. NO. 09882)
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
chaines@haines-law.com
Tel.: (215) 246-2200
Fax: (215) 246-2211

<table>
<tr><td colspan="2" align="center">NOTICE TO PLEAD</td></tr>
<tr><td><strong>To: Plaintiffs</strong></td><td></td></tr>
<tr><td colspan="2">You are hereby notified to file a written response to the enclosed New Matter and Counterclaim within twenty (20) days from the date of service hereof or a judgment may be entered against you.</td></tr>
<tr><td>By:  <em>/s/ Clifford E. Haines</em></td><td></td></tr>
<tr><td>Clifford E. Haines</td><td></td></tr>
</table>

*Filed and Attested by the Office of Judicial Records 04 JAN 2021 09:27 am G. IMPERATO*

*Attorneys for Charles and Jeanette Battle*

## IN THE PENNSYLVANIA COURT OF COMMON PLEAS
## OF PHILADELHIA COUNTY

| | | |
|---|---|---|
| IBEW, LOCAL 98, ROBERT BARK,<br>and ROBERT THOMPSON, | : | July Term 2020 |
| | : | No. 001106 |
| Plaintiffs, | : | |
| | : | |
| CHARLES BATTLE, JEANETTE<br>BATTLE, ADMINISTRATOR<br>www.thetruthaboutyourlocal.com<br>www.truthaboutyourlocal.com,<br>COMMENT,<br>www.thetruthaboutyourlocal.com<br>www.truthaboutyourlocal.com,<br>*et al.,* | : : : : | |
| Defendants. | : | |

## ANSWER, NEW MATTER, AND COUNTERCLAIM OF
## DEFENDANTS CHARLES BATTLE AND JEANETTE BATTLE

Defendants Charles Battle and Jeanette Battle (collectively, "Mr. and Mrs. Battle," or "the Battle Defendants"), by their undersigned attorneys, Haines & Associates, hereby answer the Complaint of Plaintiffs IBEW, Local 98 ("Local 98"), Robert Bark, and Robert Thompson (collectively, the "Plaintiffs"), submit their New Matter and Counterclaim in response to the Complaint and, in support thereof, aver as follows:

## ANSWER

### Introduction

1.      Denied.  The allegations of this paragraph set forth Plaintiffs' characterization of their lawsuit and/or conclusions of law, which require no response, and are accordingly denied. Moreover, to the extent that this paragraph is directed to "Defendants," a term encompassing Defendants other than Mr. and Mrs. Battle, no response is required.

### Parties

2.      Admitted in part, denied in part.  Admitted only that Local 98 is a local affiliate of the International Brotherhood of Electrical Workers, with offices located at 1701 Spring Garden Street, Philadelphia, PA 19130.  The Battle Defendants lack knowledge or information sufficient to form a belief as to the truth of the characterizations in this paragraph regarding Plaintiff Union's "mission" and community activities, which are therefore denied.

3.      Admitted in part, denied in part.  Admitted only that Robert Bark is associated with, and an agent of, Local 98 and maintains a business address at 1701 Spring Garden Street, Philadelphia, PA 19130.  The Battle Defendants lack knowledge or information sufficient to form a belief as to the truth of the characterizations in this paragraph regarding whether Bark is an "officer" of Local 98, and if and when he served as Local 98's "Business Agent."  Those characterizations are accordingly denied.

4.      Admitted in part, denied in part. Admitted only that Robert Thompson is associated with, and an agent of, Local 98 and maintains a business address at 1701 Spring Garden Street, Philadelphia, PA 19130.  The Battle Defendants lack knowledge or information sufficient to form a belief as to the truth of the characterizations in this paragraph regarding whether Thompson is an "officer" of Local 98, and if and when he served as on Local 98's

Case ID: 200701106

"Examining Board" and/or as Local 98's "Business Agent."   Those characterizations are accordingly denied.

5.     Admitted in part, denied in part.   It is specifically denied that Mrs. Battle played any role in the creation or administration of the two websites.   Admitted that the Battle Defendants are husband and wife; that they are adult citizens and residents of Pennsylvania residing at 8710 Lykens *Lane*, Philadelphia, PA 19128; that Mr. Battle is a member of Local 98; that a third-party web designer created the websites  at Mr. Battle's request; that Mr. Battle carried out some editorial and/or administrative tasks with respect to the websites after users of the websites posted comments and those comments were deemed to be inconsistent with the purpose and/or rules of the use of the websites and/or were offensive; and that, to the extent that Mr. Battle concealed his own identity, he did so out of fear of reprisals by Local 98 and/or its officers, employees and/or agents. By way of further answer, Mr. Battle does not know the identity of those who posted the comments on the websites about which Plaintiffs complaint. The remaining allegations in this paragraph constitute conclusions of law, which require no response, and are accordingly denied.

6.     Denied.   To the extent this paragraph is directed to unidentified Defendants ("Defendant Administrators"), other than Mr. and Mrs. Battle, no response is required.   To the extent the paragraph is directed to the Battle Defendants, they state the following:   since Plaintiffs have not identified the "Defendant Administrators" they have joined as Defendants, the Battle Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Mr. and Mrs. Battle know their identities, and that allegation is therefore denied.

3

7.     Denied.  To the extent that this paragraph is directed to unidentified Defendants ("Defendant Comment(s)"), other than Mr. and Mrs. Battle, no response is required.  To the extent the paragraph is directed to the Battle Defendants, they state the following: while Plaintiffs have not identified the "Defendant Comment(s)" who they have joined as Defendants, the Battle Defendants deny that they know the identity of any of those posting comments on the two websites. The Battle Defendants likewise deny that Mrs. Battle played any role in the creation or administration of the two websites.  Furthermore, to the extent that the paragraph alleges that Mr. and Mrs. Battle conspired or collaborated with "Defendant Comment(s)" and/or "each other administrator of the websites," any such allegations constitute conclusions of law, which require no response, and are accordingly denied.

8.     Denied.  This paragraph is not comprehensible to Battle Defendants.  To the extent that it is intended by Plaintiffs as a characterization of their lawsuit, no responsive pleading is denied, and the paragraph is accordingly denied.  To the extent that it is intended as a characterization of the conduct of Defendants other than the Battle Defendants, no response is required.  To the extent that it is intended, in part, to allege that Mr. and Mrs. Battle conspired or collaborated with any unidentified Defendant, any such allegation constitutes a conclusion of law which requires no response, and is accordingly denied.  By way of further answer, The Battle Defendants likewise deny that Mrs. Battle played any role in the creation or administration of the two websites.

**Jurisdiction and Venue**

9.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no

Case ID: 200701106

response.  To the extent that it encompasses the Battle Defendants, the paragraph constitutes a conclusion of law, which requires no response, and is accordingly denied.

10.    Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that it encompasses the Battle Defendants, the paragraph contains conclusions of law, which require no response, and are accordingly denied.

**Facts**

11.    Admitted in part, denied in part.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, the Battle Defendants admit only that the email attached as Exhibit A was sent by Mr. Battle, using Mrs. Battle's email account, in retaining a web designer to create the first website; Mrs. Battle played no role in the creation or administration of the two websites.  Exhibit A is a written document, which is the best exemplar of that which it may contain, and any attempt by Plaintiffs to characterize its content is denied. The remainder of the paragraph constitutes conclusions of law, which require no response and are accordingly denied.

12.    Denied as stated.  The websites allowed for anonymous postings to be made, but to the extent that the Complaint insinuates anything nefarious or untoward or that anyone was lured into making a post for any other reason that for fair comment and the expression of opinion about working in the union, the allegation is specifically denied.

13.    Admitted in part, denied in part.  Denied that the websites encouraged the posting of comments disparaging of Local 98 and its officials; rather, the websites expressly offered members the chance to let Local 98's leadership know what they thought about union-related

Case ID: 200701106

issues. While it is admitted that some posted comments were removed from the websites by Mr. Battle,  it is denied that he removed all comments favorable to Local 98 and its officials, while retaining all comments impugning the union and its officials.

14.     Denied.  The "representations" attached as Exhibit B are written documents, which are the best exemplars of that which they may contain and any attempt by Plaintiffs to characterize their content is denied.  Moreover the allegations in this paragraph constitute conclusions of law, which require no response, and are accordingly denied.

15.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, the "statements" attached as Exhibit B are written documents, which are the best exemplars of that which they may contain and any attempt by Plaintiffs to characterize their content is denied.  Moreover, each allegation in the entire paragraph (subparts a. through f.) constitutes a conclusion of law, which requires no response, and is therefore denied.

16.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, the "statements" attached as Exhibit B are written documents, which are the best exemplars of that which they may contain and any attempt by Plaintiffs to characterize their content is denied.  Moreover, each allegation in the entire paragraph (subparts a. through b.) constitutes a conclusion of law, which requires no response, and is therefore denied.

17.     Denied.  The allegations in this paragraph constitute conclusions of law, which require no response and are therefore denied.

Case ID: 200701106

18.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, the "statements" attached as Exhibit B are written documents, which are the best exemplars of that which they may contain and any attempt by Plaintiffs to characterize their content is denied.  Moreover, each allegation in the entire paragraph (subparts a. through h.) constitutes a conclusion of law, which requires no response, and is therefore denied.

19.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, the allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

20.     Denied.  The allegation in this paragraph constitutes a conclusion of law, which requires no response and is therefore denied.

21.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, except for the last sentence, the allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.  With respect to the last sentence in the paragraph, the referenced "postings" are written documents, which are the best exemplars of that which they may contain and any attempt by Plaintiffs to characterize their content is denied.

22.     Denied. The allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

Case ID: 200701106

23.     Denied.   The allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

24.     Denied.   The allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

### Count I Defamation
### (All Plaintiffs v. All Defendants)

25.     The Battle Defendants hereby incorporate by reference their responses to all paragraphs above, as if fully set forth here.

26.     Admitted in part, denied in part.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response.  To the extent that the term encompasses the Battle Defendants, they admit only that this action was commenced by writ of summons in or about July 2020.  The allegation is not sufficiently specific to allow them to admit or deny whether Mr. Battle "authored" any particular statement or comment. The Battle Defendants deny that Mrs. Battle played any role in the creation or administration of the two websites. Any posted "statements" that may be the subject of the Complaint are written documents which are the best exemplars of that which they may contain and any attempt by Plaintiffs to characterize their content is denied. Moreover, the allegation that the Battle Defendants "published" the "statements" constitutes a conclusion of law, which requires no response, and is therefore denied.

27.     Denied.   The allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

28.     Denied.   The allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

Case ID: 200701106

29.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response. To the extent that the term encompasses the Battle Defendants, the allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

30.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response. To the extent that the term encompasses the Battle Defendants, the allegations in the entire paragraph (subparts a. through f.) constitute conclusions of law, which require no response, and are therefore denied.

31.     Denied.  The allegations in this paragraph constitute conclusions of law, which require no response, and are therefore denied.

32.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response. To the extent that the term encompasses the Battle Defendants, the allegations in the paragraph constitute conclusions of law, which require no response, and are therefore denied.

33.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response. To the extent that the term encompasses the Battle Defendants, the allegations in the paragraph constitute conclusions of law, which require no response, and are therefore denied.

34.     Denied.  This paragraph uses the term "Defendants."  To the extent that the latter term encompasses Defendants other than Mr. and Mrs. Battle, the paragraph requires no response. To the extent that the term encompasses the Battle Defendants, the allegations in the paragraph constitute conclusions of law, which require no response, and are therefore denied.

Case ID: 200701106

WHEREFORE, the Battle Defendants respectfully request that judgment be entered in their favor, and against Plaintiffs, that Plaintiffs' Complaint be dismissed with prejudice, and that the Battle Defendants be awarded such other and further relief as the Court deems appropriate.

## NEW MATTER

35.     The Battle Defendants hereby incorporate by reference their responses to all paragraphs above, as if fully stated here.

36.     Plaintiffs' Complaint fails to state a claim for which relief can be granted.

37.     Plaintiffs' Complaint fails to set forth their claim with sufficient particularity.

38.     Plaintiff's claim may be barred, in whole or part, by the doctrines of waiver and/or estoppel.

39.     Plaintiffs have not suffered any damages, injuries and/or losses.

40.     To the extent that Plaintiffs did suffer damages, injuries and/or losses, no action or inaction on the part of the Battle Defendants caused or contributed in any manner to such damages, injuries and/or losses.

41.     To the extent that Plaintiffs did suffer damages, injuries, and/or losses, any such damages, injuries, and/or losses were caused entirely by the acts or omissions of Plaintiffs themselves, or of other persons or entities over which the Battle Defendants had no control.

42.     To the extent that Plaintiffs did suffer damages, injuries, and/or losses, they failed to mitigate any such damages, injuries, and/or losses.

43.     To the extent that Plaintiffs did suffer damages, injuries, and/or losses, any recovery on their part should be adjusted or reduced by the recovery due the Battle Defendants on any counterclaims set forth below.

44.     The Complaint fails to sufficiently plead a claim of defamation against the Battle Defendants.

10

Case ID: 200701106

45.     Mrs. Battle played no role in creating or administering the websites identified by Plaintiffs.

46.     Neither of the Battle Defendants authored or posted the anonymous comments referenced by Plaintiffs in the Complaint; they did not contribute to or develop such comments; and they never saw or authorized any such comments prior to the comments being posted on the websites.

47.     The Complaint contains no facts which, if proven, would establish the actual malice necessary to make out Plaintiffs' defamation claim.

48.     The Complaint contains no facts which, if proven, would establish that the relied-on statements are false.

49.     The Complaint contains no facts which, if proven, would establish that the relied-on statements are capable of a defamatory meaning.

50.     The Complaint contains no facts, which, if proven, would establish that particular persons reading the statements relied on by Plaintiffs would know the statements were intended to apply to particular Plaintiffs and would understand them to be defamatory.

51.     The Complaint contains no facts, which, if proven, would establish that the statements relied on by Plaintiffs caused them harm.

52.     Certain of the statements relied on by Plaintiffs are not "of and concerning" one or more of Plaintiffs.

53.     Plaintiff's Complaint fails to allege facts sufficient to support an award of punitive damages, and the imposition of punitive damages in this case would violate the Constitutions of the United States and the Commonwealth of Pennsylvania.

Case ID: 200701106

54.     To the extent that any Battle Defendant participated in the creation or administration of the two websites referenced in Plaintiffs' Complaint, that Defendant has absolute immunity against Plaintiffs' defamation claim, pursuant to the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230.

55.     To the extent that any Battle Defendant participated in the creation or administration of the two websites referenced in Plaintiffs' Complaint, that Defendant was a "provider or user of an interactive computer service" under the CDA, and, as a matter of law, is not liable for information created and/or developed and posted by third parties.

56.     Plaintiffs' claims are barred, in whole or part, by the doctrine of unclean hands.

57.     Charles Battle does not waive his right to commence an action against Plaintiffs in the federal district court for the Eastern District of Pennsylvania, to the extent that litigation of this action by Plaintiffs constitutes a breach of the union member Bill of Rights set forth in 29 U.S.C. § 411.

58.     The Battle Defendants plead each and every defense, objection, and avoidance that may apply in this action.

59.     The Battle Defendants reserve the right to amend this pleading and to add any other New Matter after they have had an opportunity to discover all facts relevant to this action.

## COUNTERCLAIM

Charles Battle and Jeanette Battle ("Mr. and Mrs. Battle," or "Counterclaim-Plaintiffs") hereby incorporate by reference their answers and New Matter contained in the preceding paragraphs, as if fully stated here, and assert the following Counterclaim against IBEW, Local 98 ("Local 98"), Robert Bark, and Robert Thompson (collectively, "Counterclaim-Defendants"):

12

**Parties**

60.     Counterclaim-Plaintiffs Mr. and Mrs. Battle, husband and wife, are citizens of Pennsylvania, residing at 8710 Lykens Lane, Philadelphia, PA 19128.

61.     Mr. and Mrs. Battle have been sued by Counterclaim-Defendants for defamation, arising from certain postings made by third-parties to two websites with which Mr. Battle had involvement.

62.     Counterclaim-Defendant Local 98 is a local affiliate of the International Brotherhood of Electrical Workers labor union, with its principal office located at 1701 Spring Garden Street, Philadelphia, PA 19130.  Mr. Battle is a member of Local 98.

63.     Counterclaim-Defendants Robert Bark and Robert Thompson are citizens of Pennsylvania, and hold positions as officials and/or agents of Local 98.

64.     The business address for both Mr. Bark and Mr. Thompson is the same: 1701 Spring Garden Street, Philadelphia, PA 19130.

**Venue**

65.     Venue is proper in this Court, because the cause of action set forth in the Counterclaim arose in Philadelphia County, and/or a transaction or occurrence took place in Philadelphia County, out of which the cause of action arose.

**Introduction**

66.     In litigating their defamation action against Mr. and Mrs. Battle, Counterclaim-Defendants have engaged in an abuse of process, using the legal process as a tactical weapon against the Battle Defendants.

67.     More specifically, Counterclaim-Defendants have used the legal process primarily to accomplish the following purposes for which the process was not designed:  to coerce Mr.

Case ID: 200701106

Battle into abandoning his attempt to run for union office; to coerce  Mr. (and Mrs.) Battle to abandon any further attempts to aid and encourage communications on issues relating to the union and its members, without fear of reprisal; to coerce Mr. Battle into abandoning his challenge to the most recent "election" of Local 98 officers, and his attempt to obtain a new election supervised by the Department of Labor; and to coerce Mr. Battle into abandoning any plan to bring a direct action against Counterclaim-Defendants under the federal Bill of Rights for labor union members, 29 U.S.C. § 411.

68.    To the extent that other members of Local 98 become aware of the foregoing use of process by Counterclaim-Defendants for the purposes of coercion, those members may likewise be intimidated into refraining from exercising their rights as union members.

### Factual Background

69.    Counterclaim-Defendants' use of process for the purpose of coercion arises from the following factual background.

70.    John Dougherty, widely viewed as the boss, chief, or leader, of Local 98, has served as its "Business Manager," since approximately 1993.

71.    On January 30, 2019, after an investigation into corruption in Local 98, the United States Attorney's Office brought an indictment against Dougherty, along with five associated Local 98 officials (including its president), a Philadelphia councilman, and a local business owner.

72.    Among other things, Dougherty was charged with 34 counts of embezzlement and theft, involving hundreds of thousands of dollars in labor union assets.

14

73.     Since the indictment, nothing has been done by either Local 98, or the International Brotherhood of Electrical Workers, to remove Dougherty from his office, or protect the members of Local 98 from its allegedly corrupt administration.

74.     Indeed, since the indictment, on information and belief, Dougherty has additionally made himself Local 98's Financial Secretary.

75.     On June 6, 2020, Mr. Battle wrote to the United States Department of Labor (the "Department"), describing the foregoing indictment and requesting that the Department immediately intervene in, and/or postpone the upcoming Local 98 election, the process of which was scheduled to begin with nominations for office on June 9, 2020.

76.     According to Mr. Battle, Local 98's Business Manager ["Dougherty"] was rushing the election through, in order to guarantee that his ultimate control of union finances will continue.

77.     As related by Mr. Battle, the members of Local 98 have no idea how their money is being spent, and are not permitted to question Dougherty without fear of reprisal.

78.     Among other things, Mr. Battle complained of an atmosphere, in which, as a result of Dougherty's power and influence, most members are intimidated into not participating in the voting process, and those that do believe they must vote for a candidate backed by Dougherty or face reprisal.

79.     On behalf of all local members, Mr. Battle requested that the Department either postpone the Local 98 election until after the trial of Dougherty and the others indicted, or completely regulate and oversee the entire Local 98 election process.

80.     Mr. Battle planned to run for the position of president of Local 98 in 2020.  It was known, among Local 98 members, that Mr. Battle planned to run for office.

15

81.     On nomination night, June 9, 2020, Mr. Battle went to the Local 98 headquarters, hoping to be nominated to run for office.

82.     However, despite having carefully followed the guidelines set forth in the "Notice of Nominations and Elections and Election of Officers and Election Board of IBEW Local 98" (the "Notice"), Mr. Battle was coerced or intimidated into abandoning his intention to run or accept a nomination for office, as a result of a posted sign with misleading wording, as well as incorrect information provided at the headquarters by an individual who also served as an attorney representing Local 98.

83.     The misleading sign and incorrect information caused Mr. Battle to believe that Local 98 had improperly added new requirements for nominations, beyond those listed in the Notice, such that Mr. Battle could not be nominated because he failed to bring with him other Local 98 members to nominate him and/or second his nomination.

84.     The Local 98 election, scheduled for July 2020, was never held.  Allegedly, on June 9, 2020, no more than one candidate was nominated for each office, and all such nominees were deemed elected.

85.     On June 12, 2020, the Department responded to Mr. Battle's previous letter, cautioning that Mr. Battle's complaint to the Department could not be accepted until he had first received a final decision by the Local 98 Third District Vice President, Michael Welsh.

86.     On or about June 16, 2020, Mr. Battle wrote to Welsh, appealing the election results, and requesting a new election process controlled by the Department.

87.     Among other things, in his appeal to Welsh, Mr. Battle described the events he personally experienced on June 9, 2020, as well as: the general atmosphere of intimidation surrounding the nomination process; examples of others intimidated from running for office, or

16

Case ID: 200701106

from supporting Mr. Battle; including efforts by Bark to intimidate him by coming to Battle's home a few days before the election.

88.     Welsh rejected Mr. Battle's appeal, by letter dated July 31, 2020, a copy of which was provided to the Department by Mr. Battle.

89.     While the Department's Office of Labor Management Standards has been investigating Mr. Battle's complaint and request for a new, supervised election, the Department has not yet decided whether to bring suit based on that complaint.

90.     Should the Department decline to bring suit, Mr. Battle may appeal any such decision in a court of law, and intends to do so.

91.     In the meantime, in order to provide a channel for members of Local 98 to discuss and communicate regarding issues relating to the union and its members, without fear of reprisal, Mr. Battle retained a third-party web designer to set up a website [www.the truthaboutyourlocal.com] to which Local 98 members could post comments anonymously to let the Local 98 leadership know what they were thinking on union-related issues.

92.     Mr. Battle used his wife's email account to correspond with the web designer; Mrs. Battle had no involvement with the website or its successor.

93.     The website did not set forth any requirement that posted comments impugn the union or its officials, and Mr. Battle did not create or develop any of the anonymous comments that Plaintiffs were later to point to as "defamatory." Unless a comment is openly identified as having been authored by Battle, it was not.

94.     Mr. Battle did not act to omit only posted comments that were favorable to Local 98 or its officials and retain only comments unfavorable to Local 98.

17

Case ID: 200701106

95.    Mr. Battle caused the second, successor website to be created after the third-party website designer was contacted with threats by Local 98 officials and/or their attorneys.

96.    The second website [www.truthaboutyourlocal.com] was hosted on a different computer server.

97.    Within a month of the set-up of the websites, Counterclaim-Defendants commenced legal process against Mr. and Mrs. Battle.

98.    The legal process commenced against Mr. and Mrs. Battle was contrary to federal law in the form of both the Communications Decency Act, and the Bill of Rights for labor union members, 29 U.S.C. § 411, and in order to accomplish purposes for which the process was not designed.

**COUNT I**
**ABUSE OF PROCESS**
**(Against All Counterclaim-Defendants)**

99.    Mr. and Mrs. Battle hereby incorporate by reference all previous paragraphs of this Counterclaim, as if fully stated here.

100.    In litigating their defamation action against Mr. and Mrs. Battle, Counterclaim-Defendants have perverted a legal process, by using it primarily to accomplish a purpose for which it was not designed: coercion.

101.    Counterclaim-Defendants have used the legal process improperly in order to accomplish the following goals, which are not authorized goals of the process: to coerce Mr. Battle into ceasing his efforts to have the Department of Labor hold new, supervised union elections; to coerce Mr. Battle to abandon any attempt to nominate himself for union office; to coerce Mr. (and Mrs.) Battle to abandon any further attempts to aid and encourage communications on issues relating to the union and its members without fear of reprisal; and to

Case ID: 200701106

coerce Mr. Battle to abandon any plans to file a direct court action against Counterclaim-Defendants, pursuant to the federal Bill of Rights for union members.

102.    Under Pennsylvania law, the foregoing conduct by Counterclaim-Defendants constitutes the abuse of process.

103.    Counterclaim-Defendants' abuse of process has caused harm to Mr. and Mrs. Battle; at a minimum, they have been forced to incur costs, expenses, and/or attorney fees, and their reputation has been harmed.

104.    In light of the foregoing harm caused to Mr. and Mrs. Battle, they are entitled to be compensated in the form of an award of damages.

105.    Because the actions of Counterclaim-Defendants was and is willful, wanton, outrageous and malicious, the imposition of punitive damages is additionally warranted.


[SPACE INTENTIONALLY BLANK]

Case ID: 200701106

WHEREFORE, Counterclaim-Plaintiffs Mr. and Mrs. Battle demand judgment against Counterclaim-Defendants Local 98, Robert Bark, and Robert Thompson in an amount of compensatory damages in excess of fifty thousand dollars ($50,000), together with interest, costs of suit, and punitive damages, as well as all additional and further relief this Court deems appropriate.

Respectfully submitted,

**HAINES & ASSOCIATES**

Dated: January 4, 2021

By: */s/ Clifford E. Haines*
CLIFFORD E. HAINES
(Attorney I.D. NO. 09882)
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
chaines@haines-law.com
Tel.: (215) 246-2200
Fax: (215) 246-2211
*Attorneys for Defendants and Counterclaim-Plaintiffs, Charles and Jeanette Battle*

20

## VERIFICATION

I, Charles Battle, hereby verify that the factual statements appearing in the foregoing Answer, New Matter and Counterclaim, except where in the exclusive knowledge of my wife, Jeanette Battle, are true and correct to the best of my knowledge, information, and belief.  I understand that these statements are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.


Dated:  December 30, 2020

_Charles Battle_

Charles Battle

## VERIFICATION

I, Jeanette Battle, hereby verify that the factual statements appearing in the foregoing Answer, New Matter and Counterclaim, except where in the exclusive knowledge of my husband, Charles Battle, are true and correct to the best of my knowledge, information, and belief. I understand that these statements are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.


Dated:  December 30, 2020

Jeanette Battle

## CERTIFICATE OF SERVICE

I, Clifford E. Haines, of Haines & Associates, hereby certify that, on or about this date and at my direction, a true and correct copy of the foregoing Answer, New Matter, and Counterclaim was served on counsel for Plaintiffs, by electronic filing, and email or first-class mail, at the following address:

> Joseph R. Podraza, Jr., Esquire
> William H. Trask, Esquire
> LAMB McERLANE PC
> One South Broad Street, Suite 1500
> Philadelphia, PA 19107
> jpodraza@lambmcerlane.com
> wtrask@lambmcerlane.com

Dated: January 4, 2021                 /s/ Clifford E. Haines
                                       CLIFFORD E. HAINES

Exhibit "K"



**Anonymous**

21 JUN 2020   REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/DEAR-MR-BUSINESS-MANAGER/?REPLYTOCOM=863#RESPOND)

I think somebody did fuck you in the ass but it wasn't Larry as much as you wish it was. The only ass that Larry may ever have fucked was your mothers.



## Anonymous

20 JUN 2020   REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/WOW-
13/?REPLYTOCOM=746#RESPOND)

Who cares if he's gay
We all know he is not
But Why are we giving $120,000.00 to the
LGBTQ ?
Ohhhh that's why his daughter is a carpet
muncher



## Anonymous

21 JUN 2020   REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/CLICK-ON-
GET-THE-TRUTH-TO-SEE-ALL-PAGES/?REPLYTOCOM=802#RESPOND)

Somewhere in Docville... John is screaming nonsense at one or multiple people, Foy is counting his money under his bed, Tara is eating a chocolate cake with a bottle of wine, Marita is taking it up the ass by her new lawyer boyfriend and everyone else is crying in their Target sheets paid for by Local 98!



**Anonymous**

21 JUN 2020    REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/DEAR-MR-
BUSINESS-MANAGER/?REPLYTOCOM=881#RESPOND)

Father of the year! How is Marita doing? Did she
dumped your stupid ass for a black man.

## Anonymous

1 JUL 2020   REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/BREAKING-FAKE-NEWS-RUN-MARITA-RUN/?REPLYTOCOM=2627#RESPOND)



Nice email doc.
Like you have anything to do with those fucking projects.
Your starry eyed drooling moron 2 streeters no doubt believe you as the lap up your watery sperm. We dont.
Youre a peice of shit and your gonna get washed away



## Anonymous

15 JUN 2020    ·REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/OK-JD-HERES-TWO-QUESTIONS-YOU-CAN-ANSWER/?REPLYTOCOM=268#RESPOND)

This guy wined and dined my wife after board meetings and then fucked her. He ruined our lives....POS! Can't wait to see him in cuffs, instead of my ex wife.



## Anonymous

2 JUL 2020    REPLY

(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/BREAKING-
FAKE-NEWS-RUN-MARITA-RUN/?REPLYTOCOM=2670#RESPOND)

Gus, You fugazi FUCK, If I end up in the can because of your bullshit you are going to wish you never met me MOTHERFUCKER! I will palm your head with my hand and wash my ass with your face everyday that we are together. GOT IT. Your a fake! period. You fucked up alot of peoples lives with your false dreams. and you better hope i dont end up in the same place as you you fucker.





## Anonymous

5 JUL 2020    REPLY
(HTTPS://WWW.TRUTHABOUTYOURLOCAL.COM/LOCAL98/BREAKING-
FAKE-NEWS-RUN-MARITA-RUN/?REPLYTOCOM=2734#RESPOND)

Shutup docsucking dicklick. You probobly cant
wire a fucking 3way you worthless piece of
2street dogshit

# Exhibit "L"

7:30       .ıll 5G E 🔋

🔒 aboutyourlocal.com

**liml**

JUNE 12, 2021 AT 9:11 AM

media beautiful nude males bleach hentai vid cig clack cock gay bars upstate ny absence adult store.

free tranny hardcore porn vids hot facial babes the internet
is for porn wow target pink breast cancer bracelet cum fart
cocktails porn.
kayla prettyman girlfriend handjobs clips gauge xxx movie blonds anal intercourse do i look like
a slut uh huh shut up free sexy thongs pics.
asian masturbation torrent adult vidos clips fictional boob menot squirt compilation free porn vids wholesale
asian dvd.
free quicktime hardcore find 40mm vintage bugle beads
ryan lochte ass girl suckling oldmans cock sandylee teen uk.

nude skinny teens free movies girls lick girls videos picture sexy tom welling huge tit stepmom blackmale handjob beay garrett nude.
the pill and breast growth free homemade porn movie galleries orgasm solo xxx internal vaginal cysts asian photo booths.
free proper lady sex videos sun video adult anal angel eyes jonathan ansell gay winthrop breast imaging.

🔒 aboutyourlocal.com

nude crash golden shower gallarys.

best celeb doggy fuck scenes naked nutball uoo chambre dhote gay latin ass 40 inches.

hot models in lingerie frohl lick npa
erotic stories friend escort sensor brake control.
angelina gullit naked shemale danielle foxxx videos lxo ginger lee lesbian adult protective services montgomery county.

rebecca night naked teacher sexual conduct bzq free sex on a plane head masturbation red.

brother fucks sisters ass julies first threesome mmf story
okl tracey adams porn star couples sex fun.
girl fucked by a 100 dudes bras 44dd sexy gxr
hot blonde pussy sex ca gay medieval.
all about nudes inappropriate sexual fantasies wlh tanned nude women lingerie sex with sokings.

paul mccartney can fuck off why is sex taboo in us ezq erotic molester ped story teen beautie.
best sex joke free sexy granny porn tog free tube swinger
milf rachel jones naked.
sex moves the russian milf big tits tube dcf tight virgin pussies big boobed annika.

pee dee literary council lack of focus adult medical condition black granny tgps

7:31                                    5G E

🔒 aboutyourlocal.com

nude celebrity free pictures.

world record vaginal insertion no sex
abstinence https://tinyurl.com/yjhc6pw5
cheap mother fucker shitty asshole pictures.

urologists who perform adult circumcisions
real shock porn photos
https://cutt.ly/pcgxYeG shemale female anal
transgender in obama admin.
ever try to get someone spanked dan nude
radcliff https://tinyurl.com/yf3nxk3k smelly
sexy feet toys
teen titans.
vintage stereo store the outpost strip club
https://cutt.ly/BcOlkM4 bbw free
thumbnails japanese glue girl fetish.
super hot girl gets fucked vintage triumph
clothing https://tinyurl.com/yfoc4mdq
mothers daughters fucking erotic novel
reading.
candi apple porn star large anal beads
woman https://tinyurl.com/yg4hxcy2 hentai
gallery zip adult medical release
forms.
film et videos porno vanessa hudgenns nude
free pics legal https://bit.ly/30EYE3i big
shemale penises
free interracial cuckhold.
sent nude picture spiderman fuck the lady
https://tinyurl.com/ycftpf7d ukraine
mailorder sex tequila jade pornstar clips.
tight crotch rope bondage alison sex videos
https://bit.ly/3fGUgYS agency dubai escort
female
in mature woman fuck story

🔒 aboutyourlocal.com

siouxsie fuck turkish porn teens
https://tinyurl.com/ydmo94sg girl sucks dick
for job best shag porno.
7 inch dick good i fucked my daughter's best
friend https://bit.ly/3ey0pYB sexy free
online stories bleach comic hentai.
drugged naked teens vintage tattoo jerry
sailot https://bit.ly/2OqWp1f gonzo mature
porn massive cock vids.

buy gay porn on dvd gay japanese comic
pregnancy and vaginal pulling adult club fun
winnipeg aid to teen mothers.

craft jack ass free handjob video download
website free real wife naked video jessica
simpson totally naked i just love being
naked.

pros and cons of abstinence only sex
education fucked up
facials stars large labia being fucked pee
hiding fey nude hardcore.

young teen seducion ameture home made
teens fucking plumper fucked emma watson
completely naked why does my anus itch.

bump inside of vagina dominance and
bondage vintage rolls royce hire private
escort nj naked pictures
of real teachers.
farming naked sexy asses in shorts merideth
viera upskirts
sims 2 nude patch downloads vintage roll
top desk

7:58

🔒 aboutyourlocal.com

https://bit.ly/3unp6ec forced female orl
orgasm dvd
boob girl mako makos makos shooter.
safe sex postitions during pregnancie nudist
photo tasteful https://tinyurl.com/yg39zvgn
young
drunk teens fuck while sleeping sex fucking
teachers.

billy bob thornton penis how big post naked
sister https://cutt.ly/AxyHxsY teenage
masturbating boy
twinks juvenial lingerie.
areola scars from breast enlargement law
banning gay marriage
https://tinyurl.com/yjdaksxq fucking to pay
rent pics porn blog myvidster.

crazy asian lady at milfs getting nude
https://tinyurl.com/yfta52z5 erotic comics
tickling links gay bisexual stories.

vintage women with victory rolls ashlynn
asian https://tinyurl.com/ygxxgbav who the
fuck is that youtube film
porno produzione.

sherwood singers the young swingers echo
vallye sex clip big
love margene bikini lindfjeld naked girls
screaming while getting fucked.

really nice young blow job wrestling on
trampoline naked allentown bethlehem
asian girls cumshot suprice non-download
free 3d virtual sex games

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | : : : : | |
| *Plaintiff*, | : : | CIVIL ACTION NO. 2:21-cv-00096 |
| v. | : : | |
| LOCAL 98, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | : : : : | Hon. Gerald Austin McHugh |
| *Defendant*. | : : | |

## CERTIFICATE OF SERVICE

This is to certify that in this case a complete copy of the foregoing document was served upon the following counsel by email through the court's electronic filing system:

Lauren E. DeBruicker, Esquire
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Ste 1250
Philadelphia, PA 19106
Lauren.debruicker@usdoj.gov

*Attorney for Plaintiff*

Dated: July 29, 2021          **LAMB McERLANE PC**

By: */s/ Joseph R. Podraza, Jr.*
Joseph R. Podraza, Jr., Esq. (PA 53612)
*jpodraza@lambmcerlane.com*
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 609-3170 (Direct)
(610) 430-8000 (Main)